No. 21-11747-EE

===========================================

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

―――――――――

UNITED STATES OF AMERICA,
                    *Plaintiff/Appellee,*

v.

ROBERT DANIEL SOLOVE
                    *Defendant/Appellant.*

―――――――――

On Appeal from the United States District Court
For the Southern District of Florida

―――――――――

APPENDIX OF THE APPELLANT
ROBERT DANIEL SOLOVE

―――――――――

**MICHAEL CARUSO**
**Federal Public Defender**
**BONNIE PHILLIPS-WILLIAMS**
**Assistant Federal Public Defender**
**Attorneys for Appellant**
**150 West Flagler Street, Suite 1500**
**Miami, Florida 33130**
**Tel. (305) 530-7000**

===========================================

# INDEX OF APPENDIX

Docket Sheet ...................................................................... DKT

Criminal Complaint ......................................................... DE 1

Indictment ...................................................................... DE 8

Motion to Suppress ......................................................... DE 15

Response in Opposition ................................................... DE 17

Order Denying Motion to Suppress .................................. DE 19

Superseding Information ................................................. DE 38

Plea Agreement ............................................................... DE 46

Transcript of Change of Plea .......................................... DE 50

Judgment ........................................................................ DE 68

Notice of Appeal ............................................................. DE 69

Certificate of Service ......................................................

**DKT**

APPEAL,WM

# U.S. District Court
## Southern District of Florida (West Palm Beach)
## CRIMINAL DOCKET FOR CASE #: 9:20-cr-80025-DMM-1

Case title: USA v. Solove

Magistrate judge case number: 9:20-mj-08082-DLB

Date Filed: 03/03/2020

Date Terminated: 05/20/2021

---

**Guardian Ad Litem**

**Elaine Martens**

---

**Guardian Ad Litem**

**Christine Cave**

---

Assigned to: Judge Donald M.
Middlebrooks
Referred to: Magistrate Judge William
Matthewman

Appeals court case number: 21-11747-E
USCA

**Defendant (1)**

**Robert Daniel Solove**
26203-104
*English; YOB 1992*
*TERMINATED: 05/20/2021*

represented by **Noticing FPD-WPB**
(561) 833-6288
Email: wpb_ecf@fd.org
*TERMINATED: 02/21/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender Appointment*

**Scott G. Berry**
Federal Public Defender
450 Australian Avenue
Suite 500
West Palm Beach, FL 33401
561-833-6288
Email: scott_berry@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender Appointment*

**Pending Counts**                                    **Disposition**

| | |
|---|---|
| 18:2251(a) and (e) - SELLING OR BUYING OF CHILDREN (1s-2s) | AMENDED: Imprisonment: SIX HUNDRED (600) MONTHS. This term consists of 360 months as to Count 1s and 2s to run concurrently with each other and 240 months as to Count 3s, 4s and 5s, to run concurrently with each other and consecutively to Counts 1s and 2s. SUPERVISED RELEASE: for a term of LIFE. PRIOR JUDGMENT: IMPRISONMENT: for a total term of 360 months as to Counts 1s and 2s to run concurrently with each other and 240 months as to Counts 3s, 4s and 5s to run concurrently with each other and consecutively to Counts 1s and 2s SUPERVISE RELEASE: for a term of LIFE |
| 18:2252(a)(2) and (b)(1) - ACTIVITIES RE MATERIAL CONSTITUTING/CONTAINING CHILD PORNO (3s-4s) | AMENDED: Imprisonment: SIX HUNDRED (600) MONTHS. This term consists of 360 months as to Count 1s and 2s to run concurrently with each other and 240 months as to Count 3s, 4s and 5s, to run concurrently with each other and consecutively to Counts 1s and 2s. SUPERVISED RELEASE: for a term of LIFE. PRIOR JUDGMENT: IMPRISONMENT: for a total term of 360 months as to Counts 1s and 2s to run concurrently with each other and 240 months as to Counts 3s, 4s and 5s to run concurrently with each other and consecutively to Counts 1s and 2s SUPERVISED RELEASE: for a term of LIFE |
| 18:2252(a)(4)(B) & (b)(2) - ACTIVITIES RE MATERIAL CONSTITUTING/CONTAINING CHILD PORNO (5s) | AMENDED: Imprisonment: SIX HUNDRED (600) MONTHS. This term consists of 360 months as to Count 1s and 2s to run concurrently with each other and 240 months as to Count 3s, 4s and 5s, to run concurrently with each other and consecutively to Counts 1s and 2s. SUPERVISED RELEASE: for a term of LIFE. PRIOR JUDGMENT: IMPRISONMENT: for a total term of 360 months as to Counts 1s and 2s to run concurrently with each other and 240 months as to Counts 3s, 4s and 5s to run concurrently with each other and consecutively to Counts 1s and 2s SUPERVISED RELEASE: for a term of LIFE |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:2251(a) and (e) - SELLING OR BUYING OF CHILDREN (1) | DISMISSED |
| 18:2252(a)(2) and (b)(1) - ACTIVITIES RE MATERIAL CONSTITUTING/CONTAINING CHILD PORNO (2-3) | DISMISSED |
| 18:2252(b)(2) - ACTIVITIES RE MATERIAL CONSTITUTING/CONTAINING CHILD PORNO (4-5) | DISMISSED |
| 18:2252A(g) - ACTIVITIES RE MATERIAL CONSTITUTING/CONTAINING CHILD PORNO (6s) | DISMISSED |
| 18:2252(a)(2) and (b)(1) - ACTIVITIES RE MATERIAL CONSTITUTING/CONTAINING CHILD PORNO (7s-11s) | DISMISSED |
| 18:2251(a) and (e) - SELLING OR BUYING OF CHILDREN (12s-13s) | DISMISSED |
| 18:2422(b) - COERCION OR ENTICEMENT OF FEMALE (14s) | DISMISSED |
| 18:1470 - TRANSFER OF OBSCENE MATERIALS TO MINORS (15s) | DISMISSED |
| 18:2251(a) and (e) - SELLING OR BUYING OF CHILDREN (16s-17s) | DISMISSED |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| 18:2251A.F (18:2251; 18:2252(a)(2) & (b) (1); 18:2252(a)(4)(B) & (b)(2)) | |

**Plaintiff**

| | |
|---|---|
| **USA** | represented by **Gregory Schiller**<br>U.S. Attorney's Office<br>500 S. Australian Ave.<br>Suite 400<br>West Palm Beach, FL 33401<br>954-789-6285<br>Email: gregory.schiller@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained*<br><br>**Danielle Nicole Croke**<br>US Attorney's Office, Southern District of Florida<br>500 S. Australian Avenue, 4th Floor<br>West Palm Beach, FL 33401<br>561.209.1035<br>Email: danielle.croke@usdoj.gov<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 02/20/2020 | 1 | CRIMINAL COMPLAINT as to Robert Daniel Solove (1). (spe) [9:20-mj-08082-DLB] (Entered: 02/20/2020) |
| 02/20/2020 | 2 | PAPERLESS Minute Order for proceedings held before Magistrate Judge Dave Lee Brannon: Initial Appearance as to Robert Daniel Solove held on 2/20/2020. Date of Arrest or Surrender: 2/20/2020.Defendant present and sworn. Court advised defendant of charges, maximum penalties and rights. Defendant questioned regarding appointment of counsel and found to be indigent. FPD appointed. Government requested pre-trial detention and three days to prepare; defendant requested to 2/26/2020 to prepare. Total time in court: 7 minutes. Preliminary/Arraignment set for 3/5/2020 at 10:00 AM in West Palm Beach Division before WPB Duty Magistrate. Detention Hearing set for 2/26/2020 at 10:00 AM in West Palm Beach Division before WPB Duty Magistrate. Attorney Appearance(s): Gregory Schiller (AUSA); Scott Berry (AFPD). Attorney added: Noticing FPD-WPB for Robert Daniel Solove. (Digital 10:31:07) Signed by Magistrate Judge Dave Lee Brannon on 2/20/2020. (spe) [9:20-mj-08082-DLB] (Entered: 02/20/2020) |
| 02/21/2020 | 3 | Notice of Assignment of Assistant Federal Public Defender as to Robert Daniel Solove. Attorney Scott G. Berry added. Attorney Noticing FPD-WPB terminated.. Attorney Scott G. Berry added to party Robert Daniel Solove(pty:dft). (Berry, Scott) [9:20-mj-08082-DLB] (Entered: 02/21/2020) |
| 02/21/2020 | 4 | Invocation of Right to Silence and Counsel by Robert Daniel Solove (Berry, Scott) [9:20-mj-08082-DLB] (Entered: 02/21/2020) |
| 02/21/2020 | 5 | DEMAND for Disclosure of Expert Witness Summaries as to Robert Daniel Solove (Berry, Scott) [9:20-mj-08082-DLB] (Entered: 02/21/2020) |
| 02/26/2020 | 6 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Dave Lee Brannon: Detention Hearing as to Robert Daniel Solove held on 2/26/2020. Defendant present with counsel. Government requested pre-trial detention. Court took judicial notice of Criminal Complaint and PTS report. Government proceeded by proffer. Witness Special |

| | | |
|---|---|---|
| | | Agent Brian Stafford sworn and testimony taken by defense counsel. The Court ordered defendant detained. Written order to be issued. Total time in court: 29 minutes. Attorney Appearance(s): Gregory Schiller (AUSA); Scott G. Berry (AFPD). (Digital 10:55:33) (spe) [9:20-mj-08082-DLB] (Entered: 02/26/2020) |
| 02/26/2020 | 7 | PRETRIAL DETENTION ORDER as to Robert Daniel Solove. Signed by Magistrate Judge Dave Lee Brannon on 2/26/2020. *See attached document for full details.* (spe) [9:20-mj-08082-DLB] (Entered: 02/27/2020) |
| 03/03/2020 | 8 | INDICTMENT as to Robert Daniel Solove (1) count(s) 1, 2-3, 4-5 w/forfeiture. (spe) (Additional attachment(s) added on 3/3/2020: # 1 Restricted Unredacted Indictment) (spe). (Entered: 03/03/2020) |
| 03/05/2020 | 9 | PAPERLESS Minute Order for proceedings held before Magistrate Judge William Matthewman: Waiver of Appearance at Arraignment submitted and approved by the Court. **ARRAIGNMENT** as to Robert Daniel Solove (1) Count 1,2-3,4-5 held on 3/5/2020. Reading of Indictment Waived. Not Guilty plea entered. Jury trial demanded. Standing Discovery Order requested. Total time in court: 2 minutes. Attorney Appearance(s): AUSA Gregory Schiller, Robert Adler, AFPD. (Digital 10:11:11) <br><br> PAPERLESS STANDING DISCOVERY ORDER: The defendant(s) having been arraigned this date in open Court, it is Ordered that within 14 days of the date of this order that all parties to this action shall review and comply with Southern District of Florida Local Rules 88.10 (Criminal Discovery), and 88.9(c) (Motions in Criminal Cases). Upon a sufficient showing, the Court may at any time, upon a properly filed motion, order that the discovery or inspection provided for by this Standing Order be denied, restricted or deferred, or make such other order as is appropriate. It is expected by the Court, however, that counsel for both sides shall make a good faith effort to comply with the letter and spirit of this Standing Order. It shall be the continuing duty of counsel for both sides to immediately reveal to opposing counsel all newly discovered information or other material within the scope of Local Rule 88.10. Signed by Magistrate Judge William Matthewman on 3/5/2020. (kza) (Entered: 03/05/2020) |
| 03/05/2020 | 10 | WAIVER of Appearance for Arraignment by Robert Daniel Solove (kza) (Entered: 03/05/2020) |
| 03/06/2020 | 11 | ORDER SETTING JURY TRIAL as to Robert Daniel Solove : Calendar Call set for 4/22/2020 at 11:00 AM in West Palm Beach Division before Judge Donald M. Middlebrooks. Jury Trial set for 4/27/2020 at 09:00 AM in West Palm Beach Division before Judge Donald M. Middlebrooks. Signed by Judge Donald M. Middlebrooks on 3/6/2020. *See attached document for full details.* (gm1) <br><br> **Pattern Jury Instruction Builder -** To access the latest, up to date changes to the 11th Circuit Pattern Jury Instructions go to https://pji.ca11.uscourts.gov or click here. (Entered: 03/06/2020) |
| 03/16/2020 | 12 | NOTICE OF ATTORNEY APPEARANCE Danielle Nicole Croke appearing for USA. *As to forfeiture related matters.* Attorney Danielle Nicole Croke added to party USA(pty:pla). (Croke, Danielle) (Entered: 03/16/2020) |
| 03/19/2020 | 13 | First RESPONSE to Standing Discovery Order by USA as to Robert Daniel Solove (Schiller, Gregory) (Entered: 03/19/2020) |
| 04/02/2020 | 14 | Unopposed MOTION to Continue Trial by Robert Daniel Solove. Responses due by 4/16/2020 (Berry, Scott) (Entered: 04/02/2020) |
| 04/02/2020 | 15 | MOTION to Suppress Illegally Obtained Evidence by Robert Daniel Solove. (Berry, Scott) (Entered: 04/02/2020) |

| | | |
|---|---|---|
| 04/03/2020 | 16 | ORDER CONTINUING TRIAL as to Robert Daniel Solove Re: 14 Unopposed MOTION to Continue Trial . The Jury Trial is reset for 7/27/2020 at 09:00 AM in West Palm Beach Division before Judge Donald M. Middlebrooks. The deadline for timely acceptance of responsibility is extended to June 30, 2020 by 2:00 pm. - Motions terminated: 14 Unopposed MOTION to Continue Trial filed by Robert Daniel Solove. Signed by Judge Donald M. Middlebrooks on 4/3/2020. *See attached document for full details.* (gm1) (Entered: 04/03/2020) |
| 04/14/2020 | 17 | RESPONSE in Opposition by USA as to Robert Daniel Solove re 15 MOTION to Suppress Illegally Obtained Evidence Replies due by 4/21/2020. (Attachments: # 1 Exhibit Kik Emergency Request) (Schiller, Gregory) (Entered: 04/14/2020) |
| 04/20/2020 | 18 | Reply *to Government's Response to Defendant's Motion to Suppress Illegally Obtained Evidence* by Robert Daniel Solove to 17 Response in Opposition (Berry, Scott) (Entered: 04/20/2020) |
| 04/29/2020 | 19 | ORDER denying 15 Motion to Suppress as to Robert Daniel Solove (1). Signed by Judge Donald M. Middlebrooks on 4/29/2020. *See attached document for full details.* (jao) (Entered: 04/29/2020) |
| 05/14/2020 | 20 | MOTION to Appoint Guardian Ad Litem as to MV1 by USA as to Robert Daniel Solove. Responses due by 5/28/2020 (Attachments: # 1 Exhibit 1 - Resume, # 2 Exhibit 2 - Foster Children's Project, # 3 Text of Proposed Order)(Schiller, Gregory) (Entered: 05/14/2020) |
| 05/15/2020 | 21 | ORDER APPOINTING GUARDIAN AD LITEM AS TO MV1; granting 20 Motion for ORDER APPOINTING GUARDIAN AD LITEM AS TO MV1 as to Robert Daniel Solove (1). Signed by Judge Donald M. Middlebrooks on 5/15/2020. *See attached document for full details.* (jao) (Entered: 05/15/2020) |
| 05/19/2020 | 22 | MOTION to Appoint Guardian Ad Litem as to MV2 by USA as to Robert Daniel Solove. Responses due by 6/2/2020 (Attachments: # 1 Exhibit CV, # 2 Text of Proposed Order) (Schiller, Gregory) (Entered: 05/19/2020) |
| 05/20/2020 | 23 | ORDER granting 22 Motion to Appoint Guardian Ad Litem as to MV2 as to Robert Daniel Solove (1). Signed by Judge Donald M. Middlebrooks on 5/20/2020. *See attached document for full details.* (jas) (Entered: 05/20/2020) |
| 05/20/2020 | 24 | NOTICE of Compliance *of Filing Notice of Acceptance as Guadian Ad Litem on Behalf of Christine Cave* by USA as to Robert Daniel Solove re 23 Order on Motion for Miscellaneous Relief (Schiller, Gregory) (Entered: 05/20/2020) |
| 05/26/2020 | 25 | NOTICE *of Compliance of Filing Notice of Acceptance as Guadian Ad Litem* by Elaine Martens as to Robert Daniel Solove re 21 Order on Motion for Miscellaneous Relief, (Schiller, Gregory) (Entered: 05/26/2020) |
| 06/09/2020 | 26 | Second RESPONSE to Standing Discovery Order by USA as to Robert Daniel Solove (Schiller, Gregory) (Entered: 06/09/2020) |
| 06/10/2020 | 27 | Unopposed MOTION to Continue Trial by USA as to Robert Daniel Solove. Responses due by 6/24/2020 (Schiller, Gregory) (Entered: 06/10/2020) |
| 06/11/2020 | 28 | ORDER CONTINUING TRIAL as to Robert Daniel Solove Re: 27 Unopposed MOTION to Continue Trial . The Jury Trial is set for 11/2/2020 at 09:00 AM in West Palm Beach Division before Judge Donald M. Middlebrooks. - Motions terminated: 27 Unopposed MOTION to Continue Trial filed by USA. Signed by Judge Donald M. Middlebrooks on 6/11/2020. *See attached document for full details.* (gm1) (Entered: 06/11/2020) |
| 07/21/2020 | 29 | Agreed MOTION for Protective Order *Re: Discovery* by USA as to Robert Daniel Solove. |

Responses due by 8/4/2020 (Schiller, Gregory) (Entered: 07/21/2020)

| 07/21/2020 | 30 | Agreed MOTION for Protective Order by USA as to Robert Daniel Solove. Responses due by 8/4/2020 (Attachments: # 1 Text of Proposed Order)(Schiller, Gregory) (Entered: 07/21/2020) |
|---|---|---|
| 07/22/2020 | 31 | STIPULATED PROTECTIVE ORDER re 30 Stipulated Motion for Protective Order as to Robert Daniel Solove (1). Signed by Judge Donald M. Middlebrooks on 7/22/2020. *See attached document for full details.* (gm1) (Entered: 07/22/2020) |
| 07/22/2020 | 32 | Third RESPONSE to Standing Discovery Order by USA as to Robert Daniel Solove *Pursuant to Protective Order (DE 31)* (Schiller, Gregory) (Entered: 07/22/2020) |
| 09/29/2020 | 33 | MOTION For Consent To Enter A Nolo Contendere Plea by Robert Daniel Solove. Responses due by 10/13/2020 (Berry, Scott) (Entered: 09/29/2020) |
| 10/05/2020 | 34 | RESPONSE in Opposition by USA as to Robert Daniel Solove re 33 MOTION For Consent To Enter A Nolo Contendere Plea Replies due by 10/13/2020. (Schiller, Gregory) (Entered: 10/05/2020) |
| 10/09/2020 | 35 | ORDER denying 33 Motion for Consent to Enter a Nolo Contendere Plea as to Robert Daniel Solove (1). Signed by Judge Donald M. Middlebrooks on 10/9/2020. *See attached document for full details.* (jao) (Entered: 10/09/2020) |
| 10/13/2020 | 36 | Unopposed MOTION to Continue Trial by Robert Daniel Solove. Responses due by 10/27/2020 (Berry, Scott) (Entered: 10/13/2020) |
| 10/14/2020 | 37 | ORDER CONTINUING TRIAL as to Robert Daniel Solove Re: 36 Unopposed MOTION to Continue Trial . Jury Trial is reset for 5/10/2021 at 09:00 AM in West Palm Beach Division before Judge Donald M. Middlebrooks. - Motions terminated: 36 Unopposed MOTION to Continue Trial filed by Robert Daniel Solove. Signed by Judge Donald M. Middlebrooks on 10/14/2020. *See attached document for full details.* (gm1) (Entered: 10/14/2020) |
| 01/19/2021 | 38 | SUPERSEDING INFORMATION as to Robert Daniel Solove (1) count(s) 1s-2s, 3s-4s, 5s, 6s, 7s-11s, 12s-13s, 14s, 15s, 16s-17s w/forfeiture. (spe) (Entered: 01/19/2021) |
| 01/28/2021 | 39 | NOTICE OF HEARING as to Robert Daniel Solove - Arraignment on Superseding Information set for 2/17/2021 at 10:00 AM in West Palm Beach Division before WPB Duty Magistrate. (spe) (Entered: 01/28/2021) |
| 01/28/2021 | 40 | NOTICE OF CHANGE OF PLEA HEARING as to Robert Daniel Solove: Change of Plea Hearing set for 2/18/2021 at 10:00 AM in West Palm Beach Division VIA VIDEOCONFERENCING before Judge Donald M. Middlebrooks. (gm1) (Entered: 01/28/2021) |
| 02/17/2021 | 41 | RE-NOTICE OF HEARING as to Robert Daniel Solove: Arraignment is reset for 3/4/2021 at 10:00 AM in West Palm Beach Division VIA VIDEOCONFERENCING before Judge Donald M. Middlebrooks. (gm1) (Entered: 02/17/2021) |
| 02/17/2021 | 42 | PAPERLESS Minute Entry for proceedings held by Zoom video conference before Magistrate Judge Bruce E. Reinhart: Status Conference Re: Arraignment on Superseding Information as to Robert Daniel Solove held on 2/17/2021. Defendant not present. The Court was informed by the U.S. Marshals that the Defendant remains in quarantine. Hearing reset.( Arraignment on Superseding Information reset for 2/24/2021 10:00 AM in West Palm Beach Division before WPB Duty Magistrate.) Total time in court: 2 minutes. Attorney Appearance(s): Gregory Schiller, Scott G. Berry (Digital 10:11:34) (tmn) (Entered: 02/17/2021) |

USCA11 Case: 21-11747　Document: 22　Date Filed: 08/12/2021　Page: 11 of 137

| | | |
|---|---|---|
| 02/17/2021 | 43 | RE-NOTICE OF CHANGE OF PLEA HEARING as to Robert Daniel Solove: Change of Plea Hearing set for 3/4/2021 at 10:00 AM in West Palm Beach Division VIA VIDEOCONFERENCING before Judge Donald M. Middlebrooks. (gm1) (Entered: 02/17/2021) |
| 02/20/2021 | | Terminate Arraignment set before Duty Magistrate Judge on 2/24/2021. Arraignment reset before District Judge Middlebrooks on 3/4/2021, per DE 41. (tmn) (Entered: 02/20/2021) |
| 03/04/2021 | 44 | PAPERLESS Minute Entry for proceedings held before Judge Donald M. Middlebrooks: **ARRAIGNMENT** as to Robert Daniel Solove (1) Count 1s-2s,3s-4s,5s,6s,7s-11s,12s-13s,14s,15s,16s-17s held on 3/4/2021. All parties appeared via videoconferencing. Attorney Appearance(s): Gregory Schiller, AUSA and Scott G. Berry, AFPD. Total time in court: 5 minutes. Court Reporter: Glenda Powers, 305-523-5022 / Glenda_Powers@flsd.uscourts.gov. (gm1) (Entered: 03/04/2021) |
| 03/04/2021 | 45 | PAPERLESS Minute Entry for proceedings held before Judge Donald M. Middlebrooks: Change of Plea Hearing as to Robert Daniel Solove held on 3/4/2021. Robert Daniel Solove (1) Guilty Count 1s-2s,3s-4s,5s. All parties appeared via videoconferencing. The Defendant appeared via zoom from the WPB cell block and signed the waiver of indictment and plea agreement. Attorney Appearance(s): Gregory Schiller,AUSA and Scott G. Berry, AFPD. Also present via Zoom: Special Agent, Brian Stafford, Guardian ad Litems, Christine Cave and Elaine Martens. The Defendant requests that the sentencing hearing take place in-person. Sentencing is set for Thursday, May 20, 2021 at 10:00 am. Total time in court: 40 minutes. Court Reporter: Glenda Powers, 305-523-5022 / Glenda_Powers@flsd.uscourts.gov. (gm1) (Entered: 03/04/2021) |
| 03/04/2021 | 46 | PLEA AGREEMENT as to Robert Daniel Solove. (gm1) (Entered: 03/04/2021) |
| 03/04/2021 | 47 | NOTICE OF SENTENCING HEARING as to Robert Daniel Solove: Sentencing set for 5/20/2021 at 10:00 AM in West Palm Beach Division before Judge Donald M. Middlebrooks. (gm1) (Entered: 03/04/2021) |
| 03/04/2021 | 49 | WAIVER OF INDICTMENT by Robert Daniel Solove (gm1) (Entered: 03/16/2021) |
| 03/05/2021 | 48 | Notice of Presentence Investigation Assignment of Robert Daniel Solove to US Probation Officer Frances Weisberg in the West Palm Beach U.S. Probation Office and he/she can be contacted at 561-804-6899 or Frances_Weisberg@flsp.uscourts.gov. (sys) (Entered: 03/05/2021) |
| 04/07/2021 | 50 | TRANSCRIPT of Change of Plea as to Robert Daniel Solove held on March 4, 2021 before Judge Donald M. Middlebrooks, 1 - 41 pages, Court Reporter: Glenda Powers, 305-523-5022 / Glenda_Powers@flsd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/28/2021. Redacted Transcript Deadline set for 5/10/2021. Release of Transcript Restriction set for 7/6/2021. (gps) (Entered: 04/07/2021) |
| 04/13/2021 | 51 | DRAFT Disclosure of Presentence Investigation Report of Robert Daniel Solove. This is a limited access document. Report access provided to attorneys Danielle Nicole Croke, Gregory Schiller, Scott G. Berry by USPO (Attachments: # 1 Position of Parties)(bma) (Entered: 04/13/2021) |
| 04/26/2021 | 52 | OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT by Robert Daniel Solove *Defendant's Objections to Presentence Investigation Report* (Berry, Scott) (Entered: 04/26/2021) |
| 04/26/2021 | 53 | ORDER RESETTING SENTENCING **TIME CHANGE ONLY** AND NOTICE TO THE PARTIES REGARDING SENTENCING as to Robert Daniel Solove. Counsel are |

| | | |
|---|---|---|
| | | advised that the Court intends on going forward with the sentencing at 01:30 PM in-person at 701 Clematis Street, Courtroom #1 (Fourth Floor), West Palm Beach, Florida. Any objections to the Presentence Investigation Report and/or sentencing memoranda shall be filed prior to the scheduled hearing. If the parties anticipate that a witness and/or victim(s) will be appearing by videoconferencing, please advise my Courtroom Deputy five days prior to the hearing so that she can provide you with the videoconferencing information. In order to maintain social distancing, all persons entering the courthouse must follow the attached Courtroom Rules and Procedures due to COVID-19. Signed by Judge Donald M. Middlebrooks on 4/26/2021. *See attached document for full details.* (gm1) (Entered: 04/26/2021) |
| 05/10/2021 | 54 | NOTICE *OF FILING OF MINOR VICTIM 2'S VICTIM IMPACT STATEMENT* by USA as to Robert Daniel Solove (Schiller, Gregory) (Entered: 05/10/2021) |
| 05/10/2021 | 55 | MOTION for Downward Departure *Motion for Downward Variance* by Robert Daniel Solove. Responses due by 5/24/2021 (Berry, Scott) (Entered: 05/10/2021) |
| 05/10/2021 | | SYSTEM ENTRY - Docket Entry 56 restricted/sealed until further notice. (dj) (Entered: 05/10/2021) |
| 05/10/2021 | | SYSTEM ENTRY - Docket Entry 57 restricted/sealed until further notice. (dj) (Entered: 05/10/2021) |
| 05/11/2021 | | SYSTEM ENTRY - Docket Entry 58 restricted/sealed until further notice. (dj) (Entered: 05/11/2021) |
| 05/11/2021 | | SYSTEM ENTRY - Docket Entry 59 restricted/sealed until further notice. (dj) (Entered: 05/11/2021) |
| 05/11/2021 | 60 | FINAL Addendum 1 Disclosure of Presentence Investigation Report of Robert Daniel Solove. This is a limited access document. Report access provided to attorneys Danielle Nicole Croke, Gregory Schiller, Scott G. Berry by USPO (Attachments: # 1 Addendum) (bma) (Entered: 05/11/2021) |
| 05/13/2021 | 61 | RESPONSE in Opposition by USA as to Robert Daniel Solove re 55 MOTION for Downward Departure *Motion for Downward Variance* Replies due by 5/20/2021. (Attachments: # 1 Exhibit Victim Impact Statement of "AprilBlonde", # 2 Exhibit List of Sentencing Cases) (Schiller, Gregory) (Entered: 05/13/2021) |
| 05/17/2021 | | SYSTEM ENTRY - Docket Entry 62 restricted/sealed until further notice. (nc) (Entered: 05/17/2021) |
| 05/17/2021 | | SYSTEM ENTRY - Docket Entry 63 restricted/sealed until further notice. (nc) (Entered: 05/17/2021) |
| 05/20/2021 | 64 | STIPULATION REGARDING RESTITUTION by USA as to Robert Daniel Solove (gm1) (Entered: 05/20/2021) |
| 05/20/2021 | 65 | ORDER ON RESTITUTION as to Robert Daniel Solove re 64 Stipulation Regarding Restitution filed by USA. Signed by Judge Donald M. Middlebrooks on 5/20/2021. *See attached document for full details.* (gm1) (Entered: 05/20/2021) |
| 05/20/2021 | 66 | PAPERLESS Minute Entry for proceedings held before Judge Donald M. Middlebrooks: Sentencing held in-person on 5/20/2021 as to Robert Daniel Solove. Attorney Appearance(s): Gregory Schiller, AUSA, Scott G. Berry, AFPD and Francis Weisberg, U.S. Probation. Witness sworn and testified: Dr. Michael Brannon (by videoconferencing). Sentence imposed: 600 Months imprisonment, Life supervised release, stipulated restitution and $500 special assessment. Total time in court: 1 hour(s) : 45 minutes. Court |

Reporter: Ilona Lupowitz, 305-523-5634 / Ilona_lupowitz@flsd.uscourts.gov. (gm1) (Entered: 05/20/2021)

| 05/20/2021 | 68 | JUDGMENT as to Robert Daniel Solove (1), Count(s) 1, 12s-13s, 14s, 15s, 16s-17s, 2-3, 4-5, 6s, 7s-11s, DISMISSED; Count(s) 1s-2s, 3s-4s, 5s, IMPRISONMENT: for a total term of 360 months as to Counts 1s and 2s to run concurrently with each other and 240 months as to Counts 3s, 4s and 5s to run concurrently with each other and consecutively to Counts 1s and 2s SUPERVISE RELEASE: for a term of LIFE Restitution: $1,337,800.00 Assessment: $500.00. Closing Case for Defendant. - Motions terminated: 55 MOTION for Downward Departure *Motion for Downward Variance* filed by Robert Daniel Solove, 56 SEALED MOTION TO SEAL, 58 SEALED MOTION To Seal Exhibit A, 67 Third Party MOTION for Forfeiture of Property *Preliminary Order of Forfeiture* filed by USA, 62 SEALED MOTION to Seal by Robert Daniel Solove. Signed by Judge Donald M. Middlebrooks on 5/20/2021. *See attached document for full details.* (dj) (Entered: 05/21/2021) |
| --- | --- | --- |
| 05/21/2021 | 67 | Third Party MOTION for Forfeiture of Property *Preliminary Order of Forfeiture* by USA as to Robert Daniel Solove. Responses due by 6/4/2021 (Attachments: # 1 Text of Proposed Order)(Croke, Danielle) (Entered: 05/21/2021) |
| 05/21/2021 | 69 | NOTICE OF APPEAL by Robert Daniel Solove Re: 68 Judgment,,,. Filing fee $ 505.00.. USA/FPD Filer - No Filing Fee Required. Within fourteen days of the filing date of a Notice of Appeal, the appellant must complete the Eleventh Circuit Transcript Order Form regardless of whether transcripts are being ordered [Pursuant to FRAP 10(b)]. For information go to our FLSD website under Transcript Information. (Berry, Scott) (Entered: 05/21/2021) |
| 05/21/2021 | 70 | Case Reassignment of Paired Magistrate Judge to Magistrate Judge William Matthewman. Magistrate Judge Dave Lee Brannon no longer assigned to case. (vjk) (Entered: 05/21/2021) |
| 05/24/2021 | 71 | PRELIMINARY ORDER OF FORFEITURE as to Robert Daniel Solove (1) re 67 Motion for Preliminary Order of Forfeiture. Signed by Judge Donald M. Middlebrooks on 5/24/2021. *See attached document for full details.* (mc) (Entered: 05/24/2021) |
| 05/24/2021 | | Transmission of Notice of Appeal and Docket Sheet as to Robert Daniel Solove to US Court of Appeals re 69 Notice of Appeal - Final Judgment. Notice has been electronically mailed. (hh) (Entered: 05/24/2021) |
| 05/25/2021 | 72 | Acknowledgment of Receipt of NOA from USCA as to Robert Daniel Solove re 69 Notice of Appeal - Final Judgment, date received by USCA: 5/24/2021. USCA Case Number: 21-11747-E. (apz) (Entered: 05/25/2021) |
| 05/27/2021 | 73 | TRANSCRIPT INFORMATION FORM as to Robert Daniel Solove re 69 Notice of Appeal - Final Judgment, filed by Robert Daniel Solove. Change of Plea transcript(s) ordered. Order placed by Scott Berry. Email sent to Court Reporter Coordinator. (Berry, Scott) (Entered: 05/27/2021) |
| 05/27/2021 | 74 | TRANSCRIPT INFORMATION FORM as to Robert Daniel Solove re 69 Notice of Appeal - Final Judgment, filed by Robert Daniel Solove. Sentencing transcript(s) ordered. Order placed by Scott Berry. Email sent to Court Reporter Coordinator. (Berry, Scott) (Entered: 05/27/2021) |
| 06/01/2021 | 75 | COURT REPORTER ACKNOWLEDGMENT as to Robert Daniel Solove re 74 Transcript Information Form, 69 Notice of Appeal - Final Judgment,. Court Reporter: Ilona Lupowitz, 305-523-5634 / Ilona_lupowitz@flsd.uscourts.gov. (ilz) (Entered: 06/01/2021) |

USCA11 Case: 21-11717    Document: 33    Date Filed: 08/12/2021    Page: 14 of 137

| | | |
|---|---|---|
| 06/03/2021 | 76 | TRANSCRIPT NOTIFICATION as to Robert Daniel Solove - Transcript(s) ordered on: May 27, 2021 by Scott Berry, Esq. has/have been filed by Court Reporter: Glenda Powers, 305-523-5022 / Glenda_Powers@flsd.uscourts.gov re 69 Notice of Appeal - Final Judgment,. (gps) (Entered: 06/03/2021) |
| 06/15/2021 | 77 | AMENDED JUDGMENT as to Robert Daniel Solove (1), Count(s) 1, 12s-13s, 14s, 15s, 16s-17s, 2-3, 4-5, 6s, 7s-11s, DISMISSED; Count(s) 1s-5s, AMENDED: Imprisonment: SIX HUNDRED (600) MONTHS. This term consists of 360 months as to Count 1s and 2s to run concurrently with each other and 240 months as to Count 3s, 4s and 5s, to run concurrently with each other and consecutively to Counts 1s and 2s. SUPERVISED RELEASE: for a term of LIFE. Signed by Judge Donald M. Middlebrooks on 6/14/2021. *See attached document for full details.* (pes) (Entered: 06/15/2021) |
| 06/26/2021 | 78 | TRANSCRIPT of Sentencing as to Robert Daniel Solove held on 5/20/2021 before Judge Donald M. Middlebrooks, 1-65 pages, re: 69 Notice of Appeal - Final Judgment, Court Reporter: Ilona Lupowitz, 305-523-5634 / Ilona_lupowitz@flsd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/19/2021. Redacted Transcript Deadline set for 7/27/2021. Release of Transcript Restriction set for 9/24/2021. (ilz) (Entered: 06/26/2021) |
| 06/26/2021 | 79 | Corrected Transcript (NOTE: ADDED INDEX PAGE) and Notice of Correction of Sentencing as to Robert Daniel Solove held on 5/20/2021 before Judge Donald M. Middlebrooks, 1-66 pages, re: 78 Transcript - Appeal,, 69 Notice of Appeal - Final Judgment, Court Reporter: Ilona Lupowitz, 305-523-5634 / Ilona_lupowitz@flsd.uscourts.gov. (ilz) (Entered: 06/26/2021) |
| 06/28/2021 | 80 | TRANSCRIPT NOTIFICATION as to Robert Daniel Solove - has/have been filed by re 74 Transcript Information Form, 69 Notice of Appeal - Final Judgment, 75 Court Reporter Acknowledgment. (ilz) (Entered: 06/28/2021) |
| 07/01/2021 | 81 | SERVICE (Proof) by Publication by USA as to Robert Daniel Solove Last Publication date 6/28/2021. Claims/Positions/Written Defenses/Answers/etc., due by 7/28/2021. (Attachments: # 1 Advertisement & Certification Report) (Croke, Danielle) (Entered: 07/01/2021) |
| 08/09/2021 | 82 | NOTICE *on Final Forfeiture* by USA as to Robert Daniel Solove (Croke, Danielle) (Entered: 08/09/2021) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/11/2021 11:03:01 | | |
| **PACER Login:** | fpd00017 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 9:20-cr-80025-DMM |
| **Billable Pages:** | 12 | **Cost:** | 1.20 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Always |

**DE - 1**

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  20-MJ-8082-DLB |
| ROBERT DANIEL SOLOVE, | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

FILED BY ___SP___ D.C.

FEB 2 0 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  February 13 and February 19, 2020  in the county of _____ Palm Beach _____ in the

____ Southern ____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251 | Production of Child Pornography |
| 18 U.S.C. § 2252(a)(2) & (b)(1) | Distribution of Child Pornography |
| 18 U.S.C. § 2252(a)(4)(B) & (b)(2) | Possession of Child Pornography |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Brian J. Stafford, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 02/20/2020 _____

_____
*Judge's signature*

City and state: _____ West Palm Beach, Florida _____

Hon. Dave Lee Brannon, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brian J. Stafford, being duly sworn, hereby depose and state as follows:

1.     I am a Special Agent with the United States Department of Homeland Security,
Homeland Security Investigations ("HSI"). I have been employed with HSI since March of 2007.
I have a Bachelor of Science degree in Criminology from Florida State University and have
successfully completed the Criminal Investigator Training Program and Special Agent Training
at the Federal Law Enforcement Training Center in Glynco, Georgia. I am currently assigned to
the HSI, Assistant Special Agent in Charge, West Palm Beach, Florida ("ASAC/WP"). While
employed by the HSI, I have investigated a variety of federal criminal violations, including but
not limited to; crimes against children, matters related to child pornography, sexual exploitation
of minors and child pornography using facilities of interstate or foreign commerce. Moreover, I
am a federal law enforcement officer engaged in enforcing criminal laws of the United States,
including 18 U.S.C. §§ 2251 and 2252, et seq.

2.     In this capacity, I have investigated child exploitation and internet crimes against
children cases. I have participated in investigations of persons suspected of violating federal
child pornography laws, including Title 18, United States Code, Sections 2251, 2252 and 2252A.
These investigations have included the use of surveillance techniques, undercover activities, the
interviewing of subjects and witnesses, and the planning and execution of arrest, search, and
seizure warrants. In the course of these investigations, I have reviewed still images and videos
containing child pornography and images depicting minor children engaged in sexually explicit
conduct on all forms of electronic media including computers, digital cameras, and wireless
telephones, and have discussed and reviewed these materials with other law enforcement
officers. I have also participated in training programs for the investigation and enforcement of

federal child pornography laws relating to the use of computers for production, receiving, transmitting, and storing child pornography.

3.     The facts set forth in this affidavit are based upon my personal knowledge, information obtained from others involved in this investigation, including other law enforcement officers, my review of documents and information gained through training and experience. Since this affidavit is being submitted for the limited purpose of establishing probable cause to support a Criminal Complaint, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only those facts I believe are necessary to establish probable cause to believe that **Robert Daniel Solove** (hereinafter referred to as "**SOLOVE**") has violated Title 18 United States Code, Section 2251 (production of child pornography), Title 18, United States Code, Section 2252(a)(2) and (b)(1) (distribution of child pornography), and Title 18, United States Code, Section 2252(a)(4)(B) and (b)(2) (possession of child pornography).

4.     On February 14, 2020, an HSI Chattanooga, Tennessee online undercover agent (UC) made contact with an individual utilizing the KIK username *rsolove99* after he posted a picture of what appeared to be a female child approximately 2 to 3 years old in appearance. The image, IMG_3125.JPG, shows the child on her back lying next to a Minnie Mouse pillow, with a Disney pacifier in her mouth. The child is unclothed from the waist down with her genitals exposed to the camera. The image was posted in a group chat room (Room A) known for being utilized to trade child sexual abuse material (CSAM).

5.     The KIK user was using the name *Rob s* in the group chats. The UC asked *Rob s* if he knew the child; *Rob s* responded that she was not his daughter but some other Kik user's daughter. *Rob s* posted two videos of what appeared to be the same child using her hand to sexually manipulate a grown man's erect penis.

6.     Later in private messages between the UC and the _Rob s_, he admitted that the child previously discussed was his daughter and that he lied about it the first time. The UC asked _Rob s_ if he would send a picture of himself with his daughter face to face to prove he was being truthful. _Rob s_ then posted a picture of himself and what appeared to be the same child, in a selfie, IMG_3118.JPG, side by side. The picture appeared to have been taken live with the Kik Messenger application.

7.     On February 14, 2020, Kik provided that the username _rsolove99_ used WIFI IP address 107.207.119.150 on February 14, 2020 to engage in these communications. A query in the American Registry for Internet Numbers (ARIN) showed the IP address as being registered to AT&T Corporation.

8.     On February 17, 2020, AT&T provided that IP address 107.207.119.150 for the date of February 14, 2020, was assigned to subscriber C.B. at 9340 Ketay Circle, Boca Raton, FL 33428 with phone number 561-926-xxxx.[1]

9.     On February 18, 2020, HSI agents observed C.B.'s grey four-door Volkswagen, Florida license plate number GFXC42, at the target residence. A search in Driver And Vehicle Information Database (D.A.V.I.D.) of C.B's driver's license plate has the vehicle registered at the target address. In addition, a search of D.A.V.I.D. revealed that SOLOVE, DOB xx/xx/1992, had a valid Florida driver's license registered to the Ketay Circle address as well. SOLOVE's Florida driver's license picture appeared to be the person identifying himself in KIK as _Rob s_.

10.     On the morning of February 19, 2020, Special Agents assigned to HSI West Palm Beach, FL, along with the Palm Beach Sheriff's Office, executed a search warrant at the Ketay Circle address. When agents knocked and announced the search warrant at the residence, C.B. answered the door. A child (Minor Victim 1) could be heard crying in another room. Special

---

[1] The name of the subscriber and phone number has been redacted to protect the person's true identity.

Agents accompanied C.B. to where Minor Victim 1 was in a play-pen. Minor Victim 1 was without pants or a diaper, and had a substantial amount of blood visible. C.B. stated the child was co-sleeping with her and her husband and believed the child had wet through the diaper and was in the process of changing her. C.B. and her husband (D.B.) are the grandparents of Minor Victim 1. Emergency Medical Service (EMS) were immediately contacted, and an ambulance responded.

11.     SOLOVE and his girlfriend (mother of Minor Victim 1), A.H., were called down from their living area in the residence on the second floor of the residence and secured while the residence was secured.

12.     The paramedics responding to the medical emergency advised law enforcement that, after a cursory exam of Minor Victim 1, that she needed to be transferred to a hospital to be examined by a doctor. EMS transported Minor Victim 1 with A.H. and a female agent to the hospital.

13.     Law enforcement transferred SOLOVE to Palm Beach Sheriff's Office for a recorded interview. In a post *Miranda* interview, SOLOVE claimed that he had been collecting child pornography and sporadically sending it to someone on KIK to "bust" these individuals for being pedophiles. SOLOVE claimed he wanted to make "millions" on YouTube posting videos like "Chris Hansen."

14.     SOLOVE stated that the images described above in the Kik chat conversation on February 14, 2020 were of his daughter, that he would use her as "bait" to catch pedophiles online, and that he has sent them to other KIK users. The image, IMG_3125.JPG, described above (depicting a child on her back, exposing her vagina, with the Minnie Mouse pillow in the background) is of his one and one-half year old daughter (Minor Victim 1), but he had

manipulated the image using an app that came pre-installed on his phone. SOLOVE claimed that he took a picture of Minor Victim 1 fully clothed, but manipulated it to make it look like she was exposing her vagina. When asked about the video (described above) of his daughter manipulating an adult male penis, SOLOVE claimed he took a video of Minor Victim 1 "shaking a bottle" and a video of himself manipulating his penis, put both videos together, and created the child pornography video.

15.     When asked what age the children have to be to be considered child pornography, SOLOVE stated he believed 15 years old and under is child pornography. SOLOVE provided that 18 years is the age when a person legally becomes an adult.

16.     SOLOVE had two (2) cellular phones belonging to him: one was not password protected; the other was password protected and SOLOVE provided the password when requested by law enforcement. An on scene preview of SOLOVE's cellular phones revealed many images and videos of child pornography that SOLOVE had acquired from different websites on the Internet. The following are descriptions of a sampling of such videos found on SOLOVE's Glazy S9 cellular phone:

a.  Title: 2017_2649.avi

    Description: This 4 minute and 7 second long video displays an approximately 10-year-old female who appears to be web-camming with the person ho is recording the scene. The female is seen rubbing a food-substance on her vagina while a dog licks it off her.

b.  Title: !!!!!PTHC 2013 (8yo girl) little devil 1 (GOOD)_xvid.avi

    Description: This 1 minute and 32 second long video displays an approximately 8 year old nude female, squatting over the ground. A nude adult male with his

penis exposed approaches the female. The female then sits on the male's lap and proceeds to manually manipulate the male's penis.

c. Title: pedomom.Little.Boy.Fucks.4Yo.Girl.Licks.Moms.Pussy_R@Ygold.Pthc.

Pedo. Hussyfan.Babyshivid.Zadoom.Child.avi

Description: This 2 minute and 30 second long video displays at 10-12 year old clothed female who rolls over on a bed, when a similar-aged, and naked, male begins wrestling with the female. The male pulls off the females clothing and inserts his penis into her anus.

17.     Based upon the foregoing facts, and my training and experience, I submit that there is probable cause to believe that Robert Daniel SOLOVE did commit the offenses of production, distribution and possession of child pornography in Palm Beach County, Florida, a location within the jurisdiction of the United States District Court for the Southern District of Florida, in violation of Title 18, United States Code, Section 2251 (production of child pornography), Title 18, United States Code, Section 2252(a)(2) (distribution of child pornography), and Title 18, United States Code, Section 2252(a)(4)(B) & (b)(2) (possession of child pornography).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

BRIAN J. STAFFORD
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Subscribed and sworn to before me this _20_ day of February 2020.

DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** **ROBERT DANIEL SOLOVE**

**Case No:** **20-MJ-8082-DLB**

Count #: 1

Production of Child Pornography

Title 18, United States Code, Section 2251(a)

**\*Max. Penalty:**   30 Years' Imprisonment (15 year minimum mandatory), $250,000 fine,
Supervised Release of 5 Years to Life, $5000 Special Assessment, $100 Assessment, Restitution


Count #: 2

Distribution of Child Pornography

Title 18, United States Code, Section 2252(a)(2) & (b)(1)

**\*Max. Penalty:**   20 Years' Imprisonment (5 year minimum mandatory), $250,000 fine,
Supervised Release of 5 Years to Life, $5000 Special Assessment, $100 Assessment, Restitution


Count #: 3

Possession of Child Pornography

Title 18, United States Code, Section 2252(a)(4)(B) & (b)(2)

**\*Max. Penalty:**   20 Years' Imprisonment, $250,000 fine, Supervised Release of 5 Years to
Life, $5000 Special Assessment, $100 Assessment, Restitution


**\*Refers only to possible term of incarceration, fines, special assessments, does not include
possible restitution, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 20 - MJ- 8082- DLB

### BOND RECOMMENDATION

DEFENDANT: Robert Daniel Solove

Pre-Trial Detention

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: Gregory Schiller

AUSA:

Last Known Address: 9340 Ketay Circle
Boca Raton, FL

What Facility:

Agent(s): HSI Brian Stafford

(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

No.        20-MJ-8082-DLB

UNITED STATES OF AMERICA

V.

ROBERT DANIEL SOLOVE,

        Defendant.

_____ /

## CRIMINAL COVER SHEET

1.    Did this matter originate from a matter pending in the Northern Region of the United
      States Attorney's Office prior to October 14, 2003?        _____ Yes    ___x___ No

2.    Did this matter originate from a matter pending in the Central Region of the United States
      Attorney's Office prior to September 1, 2007?        _____ Yes    ___x___ No


                              Respectfully Submitted,

                              ARIANA FAJARDO ORSHAN
                              UNITED STATES ATTORNEY


                        By:   */s/ Gregory Schiller*_____
                              GREGORY SCHILLER
                              Assistant United States Attorney
                              Florida Bar No. 0648477
                              U.S. ATTORNEY'S OFFICE - SDFL
                              500 S. Australian Ave.,
                              West Palm Beach, FL 33401
                              (561) 209-1045
                              Gregory.Schiller@usdoj.gov

**DE - 8**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cr-80025-Middlebrooks/Brannon

18 U.S.C. § 2251
18 U.S.C. §§ 2252(a)(2) & (b)(1)
18 U.S.C. §§ 2252(a)(4)(B) & (b)(2)
18 U.S.C. § 2253

UNITED STATES OF AMERICA

vs.

ROBERT DANIEL SOLOVE,

Defendant.

_____/

FILED BY _5P_____ D.C.

MAR 0 3 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

INDICTMENT

The Grand Jury charges that:

COUNT 1
18 U.S.C. §§ 2251(a) and (e)

As early as on or about July 16, 2018, and no later than on or about February 14, 2020, the

exact dates being unknown to the Grand Jury, in Palm Beach County, in the Southern District of

Florida, the defendant,

ROBERT ~~RICHARD~~ DANIEL SOLOVE

did use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the

purpose of producing any visual depiction of such conduct, and such visual depiction was produced

using materials that had been mailed, shipped, and transported in interstate and foreign commerce

by any means, in violation of Title 18, United States Code, Sections 2251(a) and (e).

## COUNT 2
## 18 U.S.C. §§ 2252(a)(2) & (b)(1)

On or about January 3, 2020, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

### ROBERT DANIEL SOLOVE,

did knowingly distribute any visual depiction, using any means and facility of interstate and foreign commerce, and that had been shipped and transported in and affecting interstate and foreign commerce, and the production of such visual depiction involved the use of a minor engaged in sexually explicit conduct, as defined in Title 18, United State Code, Section 2256(2), and such visual depiction was of such conduct, in violation of Title 18, United States Code, Sections 2252(a)(2) and (b)(1).

## COUNT 3
## 18 U.S.C. §§ 2252(a)(2) & (b)(1)

On or about February 14, 2020, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

### ROBERT DANIEL SOLOVE,

did knowingly distribute any visual depiction, using any means and facility of interstate and foreign commerce, and that had been shipped and transported in and affecting interstate and foreign commerce, and the production of such visual depiction involved the use of a minor engaged in sexually explicit conduct, as defined in Title 18, United State Code, Section 2256(2), and such visual depiction was of such conduct, in violation of Title 18, United States Code, Sections 2252(a)(2) and (b)(1).

2

## COUNTS 4 – 5
## 18 U.S.C. §§ 2252(a)(4)(B) & (b)(2)

On or about February 19, 2020, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

### ROBERT DANIEL SOLOVE,

did knowingly possess the following matters, which contained any visual depiction that had been shipped and transported using any means and facility of interstate and foreign commerce, and in and affecting interstate and foreign commerce, and which was produced using materials which had been so shipped and transported, by any means, including by computer, and the production of such visual depiction having involved the use of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2), and such visual depiction was of such conduct, in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and (b)(2), to wit:

| Count | Device / Matter |
|-------|------------------|
| 4 | Samsung Galaxy J7 Star Cellular Phone |
| 5 | Samsung Galaxy S9 Cellular Phone |

Pursuant to Title 18, United States Code, Section 2252(b)(2), it is further alleged that such visual depiction involved a prepubescent minor and a minor who had not attained twelve years of age.

### FORFEITURE

1.      The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ROBERT DANIEL SOLOVE,** has an interest.

3

2.     Pursuant to Title 18, United States Code, Section 2253, upon conviction of any offense in violation of Title 18, United States Code, Section 2252, as alleged in this Indictment, defendant **ROBERT DANIEL SOLOVE,** shall forfeit to the United States:

(a)     any visual depiction described in Title 18, United States Code, Sections 2251, 2251A, 2252, 2252A, 2252B, or 2260 or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of Chapter 110 of Title 18, United States Code;

(b)     any property, real or personal, constituting or traceable to gross profits or other proceeds which the defendant obtained from the offense(s); and

(c)     any property, real or personal, used or intended to be used to commit or to promote the commission of the offense(s) or any property traceable to such property;

3.     The property which is subject to forfeiture includes, but is not limited to:

(a). one (1) Samsung Galaxy J7 Star Cellular Phone; and

(b). one (1) Samsung Galaxy S9 Cellular Phone.

All pursuant to Title 18, United States Code, Section 2253, and the procedures set forth at Title 21, United States Code, Section 853.

ᵔ   FOREPERSON

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

GREGORY SCHILLER
ASSISTANT UNITED STATES ATTORNEY

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO. 20-cr-80025-Middlebrooks/Brannon

v.

ROBERT DANIEL SOLOVE

**CERTIFICATE OF TRIAL ATTORNEY***

_____Defendant._____/

**Superseding Case Information:**

Court Division: (Select One)

| | | | |
|---|---|---|---|
| ___ Miami | ___ Key West | | |
| ___ FTL ✓ | ___ WPB | ___ FTP | |

New defendant(s)          Yes ____  No ____
Number of new defendants  ____
Total number of counts    ____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)   No
   List language and/or dialect   _____

4. This case will take __5__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)

   | | | |
   |---|---|---|
   | I   | 0 to 5 days      | ✓ |
   | II  | 6 to 10 days     | |
   | III | 11 to 20 days    | |
   | IV  | 21 to 60 days    | |
   | V   | 61 days and over | |

   (Check only one)

   | | |
   |---|---|
   | Petty   | |
   | Minor   | |
   | Misdem. | |
   | Felony  | ✓ |

6. Has this case previously been filed in this District Court?   (Yes or No)   No
   If yes: Judge _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   Yes
   If yes: Magistrate Case No.   20-MJ-8082-DLB
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of   2/19/2020
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?   Yes ____   No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   Yes ____   No ✓

GREGORY SCHILLER
ASSISTANT UNITED STATES ATTORNEY
FL Bar/Court I.D. No. 0648477

*Penalty Sheet(s) attached

REV 8/13/2018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**PENALTY SHEET**

**Defendant's Name:** **ROBERT DANIEL SOLOVE**

**Case No:** 20-cr-80025-Middlebrooks/Brannon

Count #: 1

Production of Child Pornography

Title 18, United States Code, Section 2251(a)

**\*Max. Penalty:** 30 Years' Imprisonment (15 year minimum mandatory), \$250,000 fine, Supervised Release of 5 Years to Life, \$5000 Special Assessment, \$100 Assessment, Restitution

Counts #: 2 - 3

Distribution of Child Pornography

Title 18, United States Code, Section 2252(a)(2) & (b)(1)

**\*Max. Penalty:** 20 Years' Imprisonment (5 year minimum mandatory), \$250,000 fine, Supervised Release of 5 Years to Life, \$5000 Special Assessment, \$100 Assessment, Restitution

Count #: 4 - 5

Possession of Child Pornography

Title 18, United States Code, Section 2252(a)(4)(B) & (b)(2)

**\*Max. Penalty:** 20 Years' Imprisonment, \$250,000 fine, Supervised Release of 5 Years to Life, \$5000 Special Assessment, \$100 Assessment, Restitution

**\*Refers only to possible term of incarceration, fines, special assessments, does not include possible restitution, parole terms, or forfeitures that may be applicable.**

**DE - 15**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   20-80025-CR-MIDDLEBROOKS

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

ROBERT DANIEL SOLOVE,

     Defendant.

_____:

## **MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE**

Armed only with an Internet Protocol address ("IP address"), law enforcement has the capacity to build a detailed profile of the person using that address.  They need no special equipment or software to create the profile.  A simple internet search of the user's IP address may reveal their political inclinations, state of health, sexuality, religious sentiments, and a range of other personal characteristics, preoccupations and individual interests.  Open source tools exist for this purpose and are widely available on the internet.  An IP address can provide a window to an internet user's life.

Here, the government's warrantless seizure of Mr. Solove's IP address violated his Fourth Amendment rights, and this Court should suppress all subsequently seized evidence as fruit of the poisonous tree.  Accordingly, the Defendant, Robert Daniel Solove, through counsel, moves this Court to suppress the evidence illegally obtained in violation of his Fourth Amendment rights.

1

### Statement of Facts

Law enforcement executed a search warrant at 9340 Ketay Circle in Boca Raton, Florida, the residence of Robert Solove. They seized various electronic devices, including two cellular phones belonging to Mr. Solove.  They also saw, photographed, and otherwise documented injuries to Mr. Solove's prepubescent daughter.  A later search of the electronic devices yielded child pornography images and videos.  They also found evidence suggesting Mr. Solove posted an image and videos of child pornography in a chatroom.  During and following the execution of the search warrant, law enforcement interrogated Mr. Solove and obtained statements from him.  The Government intends to use all of this evidence against him at trial.

Five days prior to the search, an undercover Homeland Security Investigations (HSI) agent made contact with an unknown individual through an online chat application called KiK Messenger ("KiK").  The KiK user, under usernames *rsolove99* and *Rob_s*, posted an image and videos depicting child pornography in a group chat room.  The undercover agent asked the user about the child depicted and ultimately learned she was the user's daughter.  The user sent a picture of himself and his daughter to the agent as proof the child in the image and videos was his own.

Shortly thereafter, law enforcement submitted an "emergency disclosure request" to Medialab Inc., the parent company for KiK, requesting any IP addresses used by the individual associated with the *rsolove99* and *Rob_s* usernames.  In response, Medialab Inc. provided records for the 30-day period prior to the request, including, among other things, the IP address used to post the child pornography.

Law enforcement then used the IP address to learn[1] the physical location of the device used to post the images: 9340 Ketay Circle, Boca Raton, Florida. They conducted surveillance at the Ketay Circle address to confirm the subscriber lived there. A separate records check revealed Mr. Solove registered his driver's license to the same address. His driver's license photo looked like the same person in the photograph the KiK user sent to the undercover agent.

Without obtaining the IP address from Medialab Inc, law enforcement could not have obtained a search warrant because they would not have been able to describe the particular area they wanted to search. In other words, until they obtained the IP address, they neither knew who had posted the image and videos nor the physical location of the device used to post them.

## Memorandum of Law

**The government's procurement of Mr. Solove's Internet Protocol address through Kik, without a warrant, violated his reasonable privacy expectation under the Fourth Amendment.**

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend IV; *Katz v. United States*, 389 U.S. 347, 353 (1967). Under the Fourth Amendment, a search occurs when the government intrudes into an area in which a person has a reasonable expectation of privacy. *Kyllo v. United States*, 533 U.S. 27, 33 (2001).

---

[1] First, they queried the IP address in the American Registry for Internet Numbers and determined it was registered with AT&T. Then, they contacted AT&T and requested subscriber information for the account associated with that IP address. The subscriber information included the subscriber's name and home address.

In *Riley v. California*, 537 U.S. 373, 401 (2014), the Supreme Court held that law enforcement must generally secure a warrant prior to searching a cell phone, even when that cell phone was seized incident to arrest. While the Court previously permitted a search of items found on an arrestee incident to arrest, a cell phone was different because the user could store varied and vast amounts of information on such a device. *Id*. at 393. The Court reasoned that permitting law enforcement to search the phone effectively permitted them to reconstruct the user's private life. *Id*. at 394-96. ("An Internet search and browsing history . . . could reveal an individual's private interests or concerns.") The only adequate procedure, it held, was "accordingly simple—get a warrant." *Id*. at 403.

Allowing access to an internet user's IP address is analogous. In addition to learning the user's specific location at the time of use, law enforcement can also use an IP address to monitor a user's online future activity and recover the user's internet history. One study found that a simple internet search of a user's IP address "may reveal their political inclinations, state of health, sexuality, religious sentiments, and a range of other personal characteristics, preoccupations and individual interests." *What an IP Address Can Reveal About You: A report prepared by the Technology Analysis Branch of the Office of the Privacy Commissioner of Canada*, Office of the Privacy Commissioner of Canada, May 2013, https://www.priv.gc.ca/en/opc-actions-and-decisions/research/explore-privacy-research/2013/ip_201305/ (last viewed on April 1, 2020). The logical extension of *Riley* requires a warrant to obtain an IP address.

Mr. Solove acknowledges the Eleventh Circuit, in an unpublished opinion, has found a defendant did not have a reasonable expectation of privacy in his IP address because he should have known his Internet Service Provider had his information and might provide it to police. *United States v. Beckett*, 369 F. App'x. 52, 56 (11th Cir. 2010). It noted, "[t]he Supreme Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.'" *Id*. (quoting *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979)).  This "third party doctrine" has been widely acknowledged regarding IP addresses. *See, e.g., United States v. Christie*, 624 F.3d 558 574 (3rd Cir. 2010) ("no reasonable expectation of privacy exists in an IP address, because that information is also conveyed to and, indeed, from third parties, including ISPs"); *United States v. Forrester,* 512 F.3d 500, 510 (9th Cir. 2008) (warrantless government surveillance of email to/from addresses and   IP addresses do   not   constitute search because   defendant voluntarily turned over the information in order to direct the third party server).

However, the Supreme Court recently addressed the "third party doctrine" in *Carpenter v. United States*, ___ U.S. ___, 138 S.Ct. 2206 (2018). It refused to extend *Smith v. Maryland* to an individual's sensitive information regarding physical movements.  *Id*. at 2216. The Court reasoned that the data the government sought "provides an intimate window into a person's life, revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations." *Id*. at 2217 (quotation marks and citations omitted).  An IP address provides access to the same information and should be protected similarly.

## CONCLUSION

The failure of law enforcement to obtain a warrant prior to requesting subscriber information from KiK violated Mr. Solove's rights under the Fourth Amendment. As a result, law enforcement was able to obtain Mr. Solove's IP address, connect it to his physical address, and secure a search warrant. Without this invasion of Mr. Solove's privacy, law enforcement would not have been able to obtain a warrant because they would not have been able to determine the particular location to search. As such, this Court should suppress all evidence obtained from this violation.

## REQUEST FOR HEARING

The parties dispute whether the Fourth Amendment protects against disclosure of an IP address without a warrant. Counsel requests a hearing to present testimony regarding why there is a reasonable expectation of privacy in an IP address. Counsel expects the hearing will take approximately one hour.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 88.9

In good faith, counsel has discussed this matter with Assistant United States Attorney Greg Schiller and certifies the parties are unable to resolve the issues raised in this motion.

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

*s/Scott Berry*
Scott Berry
Assistant Federal Public Defender
450 S. Australian Ave.
Suite 500
West Palm Beach, FL 33401
Telephone No. (561) 833-6288

CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Scott Berry*
Scott Berry

**DE - 17**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  20CR80025DMM

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| ROBERT DANIEL SOLOVE, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE

The defendant has filed a motion to suppress all evidence in this case alleging that law enforcements acquiring of the Defendant's subscriber information and IP address violated the Fourth Amendment, such that law enforcement used a summons or subpoena in lieu of a search warrant.  This information was part of the totality of evidence that led to the execution of a search warrant at the defendant's residence for child pornography.   The defendant's contention is incorrect and contrary to established federal law.  This Court should deny the motion to suppress without a hearing.

### Factual Summary

On February 14, 2020, an undercover Homeland Security Investigations (HIS) special agent in Tennessee (UC) was within a "KiK chat room" predicated for individuals who trade child pornography.  A user named *Rob S* posted child pornography in the same KiK chat room.  During a private chat with the UC, user *Rob S* shared more images and videos of child pornography involving the same pre-pubescent child.  In the videos, the child manually manipulated an adult male's penis.  User *Rob S* advised the UC that in fact he was the child's father.  User *Rob S* then shared a photograph of himself with the child together to prove that fact.  The child appeared very

young, approximately 2-3 years old.

Believing that a child was in extreme danger, being sexually abused, and that user *Rob S* was producing child pornography of the child, the UC executed an emergency request to KiK for the IP address of user *Rob S* the same day, February 14, 2020 (Exhibit 1 – redacted).   KiK responded to the request on Monday February 17, 2020 and provided the IP addresses user *Rob S* used.   The response include the first and last name that *Rob S* created, which happened to be his real name: Robert Solove.  *The* UC identified the IP addresses belonged to AT&T.  That same day, the UC telephoned AT&T in an emergency request for the subscriber information of the IP addresses.   AT&T provided the physical residential address Boca Raton, Florida, where the IP addresses were being used, but were listed under the defendant's girlfriend's mother's name.   The defendant lived at the residence.

The UC immediately reached out to HSI West Palm Beach to advise the same.  The next day, Tuesday, February 18, 2020, agents obtained a search warrant based upon this information, signed by a United States Magistrate Judge in West Palm Beach for digital devices in relation to child pornography.   Law enforcement executed the same on the following morning at the Defendant's residence, finding digital devices containing child pornography.  Additionally, agents found the defendant's 1.5 years-old-daughter with substantial injuries.  The defendant was arrested and charged with production, distribution and possession of child pornography.

The defendant now challenges the government's use of subpoena process to obtain the subscriber information and IP address used to identify his location for the purposes of obtaining a search warrant for his residence.[1]  First, law enforcement acted under an appropriate federal statute

---

[1] Although in this case, the UC was provided the subscriber information identifying the defendant's location without an actual physical subpoena, the service provider, AT&T, provided the same in due to the exigent circumstances of the likelihood of serious bodily injuries occurring.  The argument made by the defendant follows the same analysis and so this response will be argued as if an actual subpoena had been served.

to request the IP address and subscriber information.  Second, the defendant did not have a reasonable expectation of privacy in his IP address information.  Third, he does not have standing to contest the issue.  Finally, even if law enforcement violated the law (which it did not), suppression is not a remedy.

Memorandum of Law

### 1.  Law Enforcement May Statutory Request Subscriber Information

To obtain evidence from an Internet Service Provider (ISP) or Electronic Service Provider (ESP), a law enforcement officer must, at a minimum, follow the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §2510 *et seq*.  In 1986, to address the advances in electronic communications technology, Congress amended the ECPA to add the Stored Wire and Electronic Communications Act (SCA), 18 U.S.C. § 2701 *et seq*.  Congress added the SCA provisions to the ECPA because the Fourth Amendment does not accord an e-mail or internet customer any right of privacy in communications stored by an ISP or ESP.  Section 2703(c)(2) provides that a governmental entity can obtain the following records "of a subscriber to or customer of" a provider an ISP or ESP (i.e. subscriber information) using a subpoena:

> (A) name; (B) address; (C) local and long distance telephone connection records, or records of session times and durations; (D) length of service (including start date) and types of service utilized; (E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address[2]; and (F) means and source of payment for such service (including any credit card or bank account number)[.]

18 U.S.C. § 2703(c)(2).  In this case, the UC utilized the emergency process and later a Grand Jury subpoena was used to obtain the very information authorized by 18 U.S.C. § 2703(c)(2).

---

[2] Temporarily assigned network addresses are Internet Protocol (IP) addresses. The Cable Communications Policy Act, 47 U.S.C.§ 551, sets forth various restrictions governing law enforcement access to records maintained by a cable company.  In 2001, the Cable Act was amended to clarify that the provisions of the Electronic Communications Privacy Act, Pub. L. No. 99-508, 100 Stat. 1848 ("ECPA"), including 18 U.S.C. § 2703(c)(2), apply to entities such as AT&T, who provide cable access to the Internet. *See* 47 U.S.C. § 551(c)(2)(D).

Investigators may obtain disclosure pursuant to § 2703(c)(2) using any federal or state grand jury or trial subpoena or an administrative subpoena authorized by a federal or state statute. *See* 18 U.S.C. § 2703(c)(2); *see also* 5 U.S.C. app. 3 § 6(a)(4), which authorizes subpoenas under the Inspector General Act.  Further, 18 U.S.C. § 2702(c)(4) allows for ISP/ESPs to "divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by subsection (a)(1) or (a)(2))…to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency."  It is under this provision which law enforcement acted in this case.

Courts throughout the nation have allowed the use of subpoenas for child exploitation offenses.  See *United States v. LaFortune*, 520 F.3d 50 (1st Cir. 2008); *United States v. Beach*, 275 Fed. Appx. 529 (6th Cir. 2008); *Bednarski v. United States*, 481 F.3d 530 (7th Cir.2007); *United States v. Cartier*, 543 F.3d 442 (8th Cir. 2008); *United States v. Craighead*, 539 F.3d 1073 (9th Cir. 2008); *United States v. Sloan*, 307 Fed. Appx. 88, 92 (9th Cir. 2009); *United States v. Bobb*, 577 F.3d 1366, n.1 (11th Cir. 2009) (where the Court upheld the FBI's use of a subpoena for subscriber information pursuant to 18 U.S.C. § 2703(c)(2).

In *United States v. Cray*, 673 F.Supp.2d 1368, 1376-7 (S.D. Ga. 2009) a defendant charged with child pornography offenses made a nearly identical argument to this defendant and lost.  The district court held:

> Contrary to Cray's assertion, under 19 U.S.C. § 1509, a Customs Summons may be used in an investigation or inquiry conducted for the purpose of insuring compliance with the laws of the United States. As noted by the government, ICE utilized the subject Customs Summonses to gather documents and information relevant to an investigation of the likely importation of child pornography images which (1) had file names with the country names of "asia" and "brasil" in them; and (2) depicted child victims from Poland and the United Kingdom.

*Cray*, at 1376-7.   The Court further recognized that summons are routinely used to obtain subscriber data for suspected child pornography offenders, *Id.* at 1377, n.11, and held it was lawful to do so.   Therefore, statutorily, the government did not violate federal law by executing the subpoena, or in this case, an exigent request, on an ISP/ESP for IP address and subscriber information.

### 2.   The Defendant Does Not Have A Legitimate Expectation Of Privacy

There is no expectation of privacy in an IP address of subscriber information.   The Eleventh Circuit rejected a defendant's argument that he had a reasonable expectation of privacy in "information concerning the connection logs and IP address associated with [defendant's] screen name" that the government attained through information requests to ISP/ESPs.   *United States v. Beckett*, 369 Fed.App'x 52, 54-55 (11th Cir. 2010) (denying a motion to suppress and finding that the Fourth Amendment was not implicated by an emergency request under 18 U.S.C. § 2702(c)(4)).   Noting that law enforcement did not obtain any information related to content, the Court held "identifying information transmitted during internet usage and phone calls that is necessary for the ISPs and phone companies to perform their services." *Id.* at 56.   Accordingly, *Beckett* held that "[i]t is unreasonable for [the defendant] to have been unaware that such information was being transmitted to the ISPs and phone companies and so he 'assumed the risk that the company would reveal to police the [information].'" *Id.* (citing *Smith*, 442 U.S. at 744). *See also United States v. Wheelock*, 772 F.3d 825, 828 (8th Cir. 2014) (defendant "cannot claim a reasonable expectation of privacy in [the] government's acquisition of his subscriber information, including his IP address and name from third-party service providers," where that information had been "revealed to a third party").

The defendant here similarly had no expectation of privacy in the subpoenaed records. There is no reasonable expectation of privacy in a person's Internet subscriber records. *United States v. Kennedy*, 81 F.Supp. 2d 1103, 1110 (D. Kan 2000); *United States v. Cox*, 190 F.Supp.2d 330, 332 (N.D.N.Y. 2002)("criminal defendants have no Fourth Amendment privacy interest in subscriber information given to an internet service provider"); and Freedman v. America Online, 412 F.Supp.2d 174, 183 (D. Conn. 2005)(same).

The defendant tries to analogize his objection to the ruling in *Riley v. California*, 573 U.S. 37 (2014) in which the Supreme Court held that law enforcement needed probable cause to search a person's phone incident to arrest. A cellular phone contains many aspects of the user's personal life including communication, internet history, banking and medical information, and more. But to say this case would then require law enforcement to obtain a search warrant for subscriber and IP address information is not what the Supreme Court intended or even addressed. The defendant's reliance on the *Riley* Court's statement, "[a]n Internet search and browsing history, for example, can be found on an Internet-enabled phone and could reveal an individual's private interests or concerns" leaves much from the Court's reasoning. *Id*. at 395. The Court was limiting their statements specifically to what could be found on an individual's cellular phone, and was not expanding this to all Internet usage; it never mentioned subscriber information held by 3rd parties.[3]

---

[3] The defendant's quote on "browsing history" immediately precedes another quote from the Supreme Court, *nearly eight pages later* in the opinion, e.g. "accordingly simple – get a warrant." DE 15 at 4. But these quotes do not apply to or deal with each other. In fact, the entire quotation actually states, "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." *Id*. at 403. Thus, again, *Riley*'s need for a warrant is limited to searching a cellular phone, not obtaining subscriber or IP address information from a 3rd party. Further, the defendant suggests, "law enforcement can also use an IP address to monitor a user's online future activity and recover the user's internet history." DE 15 at 4. This is only partially true, and depends on many variables. If a user maintains the same IP address (i.e. not using Wi-Fi outside of one's home or a hotspot on a cellular phone, and having the home IP address remain constant in perpetuity) and makes known the websites and applications he uses, law enforcement could begin to use appropriate service of process (typically a search warrant) to reach the defendant's proposed level of surveillance.

Recently the Supreme Court took up the issue of third party information. The Supreme Court held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI [cell-site location information]." *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018). *Carpenter* concerned cell-site locational data that convey "a detailed and comprehensive record of [a] person's movements," not IP addresses. *Id*.

*Carpenter*, addressed the issue of cell site data, which is used to target the location of an individual. The cell site data at issue in *Carpenter* is vastly different from the very limited IP address information provided by AT&T. The *Carpenter* Court held that a person has no legitimate expectation of privacy in information voluntarily provided to third parties, "even if the information is revealed on the assumption that it will be used only for a limited purpose." *Id.* at 2216 (quoting *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) and *United States v. Miller*, 425 U.S. 435, 443 (1976)). However, *Carpenter* recognized there are limits to the third party doctrine where the records convey "a detailed and comprehensive record of a person's movements." *Id.* at 2217. Account subscriber IP address information does not contain detailed information about a person's movements. The third-party doctrine continues to apply to "business records that might incidentally reveal location information," including telephone numbers and bank records. *Id.* at 2220. In fact, the information provided by KiK and AT&T in this case said virtually nothing about the defendant's location. Rather, it simply provided the subscriber's name and IP address (KiK), and address and subscriber name (AT&T) for which particular IP addresses were assigned; and did not even identify the defendant.[4] Therefore, the subscriber information and IP addresses provided by KiK and AT&T falls well within the third-party doctrine.

---

[4] The subscriber of the IP address was in fact the defendant's girlfriend's mother. It was only after receiving this information, did law enforcement identify the defendant as likely living at the residence from Florida driver's license records, which included his photograph; the latter of which was a match to the photograph KiK user *Rob S* sent in the private message to the UC.

In *United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018), the Court held that the ESP's records fell within the scope of the third-party doctrine: "[the ESP's] records revealed only that the IP address was associated with the Contreras's Brownwood residence. They had no bearing on any person's day-to-day movement. Contreras lacked a reasonable expectation of privacy in that information."

Since *Carpenter* however, defendants have tried to use the Supreme Court's limited holding on cell-site location information to restrict the government's subpoena of subscriber information, but failed.

The 1st Circuit analyzed the *Carpenter* decision in *United States v. Morel*, 922 F.3d 1, 8– 9 (1st Cir.), *cert. denied*, 140 S. Ct. 283, 205 L. Ed. 2d 146 (2019) finding that the Supreme Court did not announce a wholesale abandonment of the third-party doctrine, which states that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties ... 'even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed,'" *citing United States v. Miller*, 425 U.S. 435, 443, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976)).  In fact, as noted by *Morel*, *Carpenter* "declined to extend the third-party doctrine to the months of CSLI gathered by law enforcement in that case," *Morel* at 9 *citing Carpenter*, 138 S.Ct. at 2216,

In *United States v. Carter*, 792 Fed.Appx. 366 (6th Cir. 2019), the Court declined to entertain the defendant's argument that law enforcement need obtain an IP address by an administrative subpoena rather than by a search warrant relying upon the Supreme Court's decision in *Carpenter*.  Sixth Circuit precedent had "already held that the good-faith exception to the exclusionary rule applies to searches that complied with the Stored Communications Act."  *Id*. at 369 citing *United States v. Carpenter*, 926 F.3d 313, 318 (6th Cir. 2019).

Likewise, the Ninth Circuit has denied arguments identical to that of the defendant.  At least as since 2008, the Court concluded that internet users have no expectation of privacy in the IP addresses of the websites they visit because "they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information." *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008).  In 2019, considering *Carpenter,* the Ninth Circuit, upheld its *Forrester*, holding that "[i]n *Carpenter*, the Court made it clear that its decision was a "narrow one" that did not express views on matters not before the Court."  *United States v. VanDyck*, 776 Fed.App'x 495, 496 (9th Cir. 2019), *citing Carpenter*, 138 S.Ct. at 2220.  The Ninth Circuit found *Forrester* "not clearly irreconcilable with *Carpenter*." *Id*. Thus, it is clear that Solove's reliance on *Carpenter* to expand the standard of inquiry of cell-cite location data to that of subscriber information (which could be false) or IP addresses, which does not even identify a particular user of the IP address, fails.

Therefore, it is clear that because the defendant did not have a reasonable expectation of privacy in his subscriber information and IP address, such that it rose to the level of necessitating the government to obtain a search warrant, his Fourth Amendment rights were not violated.

### 3.  The Defendant Has No Standing

The defendant claims that the government needed a search warrant rather than a subpoena or summons to obtain subscriber information concerning his IP address.  In relation to his lack of privacy, he does not have standing to assert this claim.  In *United States v. Plunk*, 153 F.3d 1011 (9th Cir. 1998), *amended*, 161 F.3d 1195 (9th Cir. 1998), *cert. denied*, 526 U.S. 1060 (1999), *abrogated on other grounds by*, *United States v. Hankey*, 203 F.3d 1160, 1169 and n.7 (9th Cir. 2000), the Drug Enforcement Administration issued an administrative subpoena to McCaw Communications to obtain Plunk's telephone records.  *Id.*, 153 F.3d at 1019.  In a later criminal

case, Plunk challenged the validity of the subpoena.  The Ninth Circuit held that Plunk lacked

standing to assert the challenge, as he had no expectation of privacy in the subpoenaed records.

> [T]he subpoena was "not directed at [Plunk], but rather at third party businesses";
> consequently, Plunk does not have the requisite standing to challenge its issuance
> under the Fourth Amendment "unless he [can] demonstrate that he had a legitimate
> expectation of privacy attaching to the records obtained." *United States v. Phibbs*,
> 999 F.2d 1053, 1077 (6th Cir. 1993).  Under long standing Ninth Circuit precedent,
> individuals possess no reasonable expectation of privacy in telephone records. *See,
> e.g., United States v. Lustig*, 555 F.2d 737, 747 n.10 (9th Cir. 1977).  Plunk is thus
> without Fourth Amendment standing to challenge the subpoena.

*Id.* at 1020.  *C.f. States v. Miller*, 425 U.S. 435, 443 (1976)(account holder lacks standing to

challenge subpoena to bank as bank records are business records as to which he has no expectation

of privacy).

### 4.  <u>Suppression Not A Remedy</u>

Even if the Government improperly used 18 U.S.C. §§ 2702(c)(4) or 2703(c)(2), as the

defendant alleges, suppression is not an available remedy.  Any protection is statutorily created,

and in this case was governed by ECPA.[5]  The SCA, 18 U.S.C. §§ 2701-2711, enacted as part of

ECPA, provides that the exclusive remedies for a violation of the statute are a civil remedy against

the ISP.  *See*, 18 U.S.C. §§ 2707; *United States v. Smith*, 155 F.3d 1051, 1055 (9th Cir. 1998) (Act

"expressly rules out exclusion as a remedy").  A violation of 18 U.S.C. § 2702(c)(4) may only be

addressed by a civil action against a provider, a civil action against the United States or an

employee of the United States, or an administrative complaint against the employee.  *See* 18 U.S.C.

§§ 2707, 2712.  The SCA states, "the remedies and sanctions described in this chapter are the only

judicial remedies and sanctions for nonconstitutional violations of this chapter." 18 U.S.C. § 2708.

---

[5] In enacting ECPA, Congress "intended to strike 'a fair balance between the privacy expectations of American citizens and the legitimate needs of law enforcement agencies.'"  *Organization JD Ltda. v. United States Dept. of Justice*, 124 F.3d 354 (2nd Cir. 1997), *quoting* S. REP. 99-541 at 3559 (1986).

Numerous courts have recognized that a violation of the SCA is a "nonconstitutional violation" and that suppression is not a remedy for any such violation. *See Huon v. Mudge*, 597 Fed. Appx. 868, 875 (7th Cir. 2015) (suppression is not a remedy for an alleged violation of the ECPA/SCA); *United States v. Guerrero*, 768 F.3d 351, 358 (5th Cir. 2014) (concluding that exclusionary rule is inapplicable to violations of Stored Communication Act); *United States v. Clenney*, 631 F.3d 658, 666–67 (4th Cir. 2011) (same); *United States v. Smith*, 155 F.3d 1051, 1056 (9th Cir. 1998) (same); *United States v. Perrine*, 518 F.3d 1196, 1201–02 (10th Cir. 2008) (same). The defendant is not entitled to a remedy expressly prohibited by the statute he claims that the Government violated.

## Conclusion

In short, the defendant's claim lacks merit. The defendant lacks standing to challenge the validity of the summons issued to a third party for information as to which he had no privacy rights. The summons was, in any event, lawful. Finally, even if law enforcement exceeded its authority (which it did not), suppression of the evidence is not available as a remedy. Defendant's claim thus should be rejected in its entirety and no hearing is necessary.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY


By:    s/*Gregory Schiller*
Gregory Schiller
Assistant United States Attorney
Florida Bar No. 0648477
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
Tel: (561) 209-1045
Email: gregory.schiller@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 14, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/*Gregory Schiller*
Gregory Schiller
Assistant United States Attorney

**DE - 19**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 20-80025-CR-MIDDLEBROOKS

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ROBERT DANIEL SOLOVE,

      Defendant.

_____/

**<u>ORDER ON MOTION TO SUPPRESS</u>**

THIS CAUSE is before the Court upon a Motion to Suppress Illegally Obtained Evidence filed by Defendant Robert Daniel Solove on April 2, 2020. (DE 15). The Plaintiff, United States of America ("the Government"), responded on April 14, 2020. (DE 17). Defendant replied on April 20, 2020. (DE 18). For the following reasons, Defendant's Motion is Denied.

**I.    BACKGROUND**

Defendant is charged with production, possession, and distribution of child pornography in violation of 18 U.S.C. §§ 2251-2252, which allegedly includes pornographic content involving his 1.5-year-old daughter. (DE 1 ¶¶ 5-6). On February 14, 2020, a Homeland Security Investigations ("HSI") online undercover agent ("HSI Agent") in Chattanooga, Tennessee made contact with an individual utilizing Kik Interactive Inc. ("Kik"), an online chat platform. (DE 1 ¶ 4). The individual, who went by the username "rsolove99," posted a picture of a young female child exposing her genitals ("the child"). (DE 1 ¶ 4). The image was posted in a group chat room known for being utilized to trade child sexual abuse material. *Id.* On February 14, 2020, the user

rsolove99, now using the username Rob_s, [1] shared two videos of what appeared to be the same child manipulating an adult penis. (DE 1 ¶ 5). Rob_s then stated in the chat that the child in the videos was his daughter and posted a picture of them together as proof. (DE 1 ¶ 6). The picture appeared to have been taken live, using the camera in the Kik messaging app. *Id.*

Based on this conduct, on that same day, February 14, 2020, the HSI Agent submitted an "Emergency Disclosure Request" to Kik. The HSI Agent requested that Kik disclose the IP address for user "rsolove99." In making this request, the HSI Agent completed a form with five questions: 1) What is the nature of the emergency involving death or serious physical injury?; 2) Whose death or serious physical injury is threatened?; 3) What is the imminent nature of the threat?; 4) What specific information are you requesting from Kik?;[2] and 5) Please explain how the information you are requesting will assist in averting the specified emergency. (DE 17-1). The HSI Agent stated that the child in the picture and videos appeared to be a real individual (apparently as opposed to a computer-generated image) who was in direct contact with the Kik user. *Id.* The HSI Agent specified that "HSI would like to receive this information as fast as possible so that IP records can be located . . . to obtain the potential residence of this individual in order to [effectuate] the safe removal of the child." *Id.*

Kik responded to the request on February 17, 2020, providing the user rsolove99's IP address. (DE 17 at 2). The HSI Agent then submitted an emergency request to AT&T for the subscriber information associated with that IP address. *Id.* In this manner, the HSI Agent was able

---

[1] It appears from the Affidavit in Support of Criminal Complaint that it was clear to law enforcement that rsolove99 and Rob_s were the same individual with the same IP address. As this is not disputed by Defendant and is not relevant to the present inquiry, I take this as true for the purposes of this Motion.

[2] This question goes on to ask for additional detail about the type of information provided.

to obtain Defendant's physical address. *Id.* The HSI Agent "immediately" conveyed that information to Homeland Security in West Palm Beach. *Id.* The next day, February 18, 2020, agents in West Palm Beach obtained a search warrant for Defendant's digital devices. *Id.* In support of this warrant, the West Palm Beach agents used the information conveyed to them by the HSI Agent. *Id.* The following morning, February 19, 2020, agents entered Defendant's home, apparently for the dual purpose of protecting the child from serious physical injury, as well as obtaining digital devices which were believed to contain child pornography. *Id.*

Defendant now challenges the Government's process for obtaining the IP address from Kik, and argues that all information which followed from this allegedly improper search should be suppressed as fruit of the poisonous tree. (DE 15 at 3). Specifically, Defendant states that "[w]ithout obtaining the IP address from [Kik], law enforcement could not have obtained a search warrant because they would not have been able to describe the particular area they wanted to search. In other words, until they obtained the IP address, they neither knew who had posted the image and videos nor the physical location of the device used to post them." *Id.*

## II.  DISCUSSION

The Fourth Amendment to the United States Constitution protects the people "against unreasonable searches and seizures." U.S. Const. amend. IV. Absent an exception, a warrant supported by probable cause is required before the Government can conduct a search. *See* U.S. Const. amend. IV; *United States v. Place,* 462 U.S. 696, 701 (1983). To be considered a "search," the government must intrude upon something which the defendant has sought to "preserve [] as private" and that expectation of privacy must be one which "society is prepared to recognize as reasonable*." Carpenter v. U.S.*, 138 S. Ct. 2206, 2213 (2018) (quoting *Smith v. Maryland*, 442 U.S. 735, 735 (1979)).

Defendant alleges that his IP address should be suppressed because the Government acted improperly by obtaining it from Kik without a warrant. The Government argues that Defendant lacked the requisite reasonable expectation of privacy in his IP address under the so-called third-party doctrine. *See Smith*, 442 U.S. at 743-44 (noting that the Supreme Court has "consistently . . . held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties"). Defendant apparently acknowledges that he voluntarily disclosed his IP address to Kik, but argues that the Supreme Court's recent decision in *Carpenter* establishes an exception to the third-party doctrine which would apply to the information at issue here, and thus the Government should have obtained a warrant.

In *Carpenter*, the defendant argued that the Government had violated his Fourth Amendment rights by obtaining his cell-site location information ("CSLI") from his wireless telecommunications carrier. *Id.* at 2211. CSLI is a time-stamped record of which cell-site is closest to the cell-phone. *Id.* It is recorded "several times a minute" whenever the cell phone signal is on, even if the owner of the phone is not actively using it. *Id.*

The CSLI data acquired in *Carpenter* depicted the defendant's movements across nearly 13,000 specific location points over a 127-day span. *Id.* at 2212. The government argued that as defendant had voluntarily allowed his phone to connect to the cell-sites, the third-party doctrine applied, and thus the defendant did not have a reasonable expectation of privacy in his CSLI. *Id.* at 2219. The Supreme Court held, however, that the government's acquisition of the CSLI from the carrier *did* constitute a search, for which the government needed a warrant. *Id.* at 2217-20.

4

The Supreme Court explained that, due to the detailed location information that CSLI conveyed, as well as the fact that a cell phone user transmits that information simply by possessing a phone, if the government could access CSLI without a warrant, the result would be that "[o]nly the few without cell phones could escape . . . tireless and absolute surveillance." *Id.* at 2218. Therefore, the Supreme Court declined to extend the third-party doctrine to the CSLI at issue and instead determined that the defendant had a reasonable expectation of privacy in the CSLI that he sought to suppress. *Id.* at 2219-20.

Here, Defendant contends that the IP address data that the government acquired from Kik without a warrant is not materially different from the CSLI at issue in *Carpenter*. He notes that his IP address, like the CSLI in *Carpenter*, allowed the Government to learn his physical location. For that reason, he argues, *Carpente*r establishes that the Government needed a warrant to acquire his IP address from Kik.

However, the key distinction between *Carpenter* and the present case is that here Defendant *affirmatively chose* to utilize the Kik application. The defendant in *Carpenter*'s phone "pinged" the nearest cell phone tower without any action on his part. Therefore, the *Carpenter* Court held that the information at issue was "not truly 'shared' as one normally understands the term." *Id.* at 2220. This is because carrying a cell-phone is "indispensable to participation in modern society." *Id.* There is virtually no action an individual can take on a cell phone without generating comprehensive CSLI which provides a map of one's daily movements. . *Id.* In contrast, here Defendant specifically chose to engage in activity on the Kik platform, a platform which is certainly not indispensable to participation in daily life.

Further, the IP address data that the Government acquired from Kik does not itself convey any information about Defendant's location. An IP address is a series of numbers associated with a device which accessed a wireless network. CSLI, on the other hand, directly conveys the phone user's approximate location at each period in time in which it is recorded. *Id.* at 2211-12.

Therefore, I find that the Government was not required to obtain a warrant to access Defendant's IP address. This conclusion is in accord with the Eleventh Circuit's decision regarding IP addresses in relation to the third-party doctrine, albeit an unpublished decision issued before *Carpenter. See U.S. v. Beckett*, 369 Fed. Appx. 52 (11th Cir. 2010). There, the Eleventh Circuit held that the defendant "could not have had a reasonable expectation of privacy in the information that was obtained from [his internet service provider]." *Id.* at 56. This is because it would be "unreasonable" for the defendant to be "unaware that such information was being transmitted" and thus he "assumed the risk that the company would reveal to police the [information]." *Id.* (quoting *Smith,* 442 U.S. at 744, 99 S.Ct. at 2582). Here too, I find that it would be unreasonable to conclude that Defendant did not know that his information was being transmitted to Kik, particularly as he created a username.

My decision is also consistent with the two Courts of Appeal opinions to have directly considered this issue in the wake of *Carpenter. See U.S. v. Hood*, 920 F.3d 87, 88 (1st Cir. 2019); *United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018).

Accordingly, I find that pursuant to *Smith v. Maryland*, the Defendant had no expectation of privacy in his IP address maintained with Kik, a third party with which Defendant knowingly shared this information. Therefore the Fourth Amendment was not implicated by the HIS Agent's actions, and no search warrant was necessary.

### III.    CONCLUSION

Based upon the foregoing, and after careful consideration of the Parties' written submissions, the record, and applicable law, it is **ORDERED and ADJUDGED** that Defendant's Motion to Suppress Illegally Obtained Evidence (DE 15) is **DENIED**.

**SIGNED** in Chambers at West Palm Beach, Florida this 29th day of April, 2020.

_____

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

**DE - 38**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. _____**20-CR-80025-DMM(s)**_____
18 U.S.C. §§ 2251(a) & (e)
18 U.S.C. §§ 2252(a)(2) & (b)(1)
18 U.S.C. §§ 2252(a)(4)(B) & (b)(2)
18 U.S.C.  § 2252A(g)
18 U.S.C.  § 2422(b)
18 U.S.C.  § 1470

**UNITED STATES OF AMERICA**

vs.

**ROBERT DANIEL SOLOVE,**
      **Defendant.**
_____/

## SUPERSEDING INFORMATION

The United States Attorney charges that:

### COUNT 1
### 18 U.S.C. §§ 2251(a) and (e)
### (Production of Child Pornography – MV1)

From on or about January 1, 2020, through on or about January 29, 2020, in Palm Beach

County, in the Southern District of Florida, the defendant,

### ROBERT DANIEL SOLOVE,

did employ, use, persuade, induce, entice, and coerce MV1, a minor, to engage in sexually explicit

conduct for the purpose of producing any visual depiction of such conduct, and such visual

depiction was produced and transmitted using materials that had been mailed, shipped, and

transported in and affecting interstate and foreign commerce by any means, including by computer,

and such visual depiction was transported and transmitted using any means and facility of interstate

and foreign commerce and in and affecting interstate and foreign commerce, in violation of Title

18, United States Code, Sections 2251(a) and (e).

### COUNT 2
### 18 U.S.C. §§ 2251(a) and (e)
### (Production of Child Pornography – MV2)

On or about January 21, 2020, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

### ROBERT DANIEL SOLOVE,

did employ, use, persuade, induce, entice, and coerce MV2, a minor, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, and such visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and such visual depiction was transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, in violation of Title 18, United States Code, Sections 2251(a) and (e).

### COUNTS 3-4
### 18 U.S.C. §§ 2252(a)(2) & (b)(1)
### (Distribution of Child Pornography)

On or about the dates and approximate times enumerated as to each count listed below, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

### ROBERT DANIEL SOLOVE,

did knowingly distribute any visual depiction, using any means and facility of interstate and foreign commerce, and that had been shipped and transported in and affecting interstate and foreign commerce, and the production of such visual depiction involved the use of a minor engaged in sexually explicit conduct, as defined in Title 18, United State Code, Section 2256(2), and such visual depiction was of such conduct:

| Count | Date and Approximate Time | File Type | Destination |
|-------|---------------------------|-----------|-------------|
| 3 | January 30, 2020 at 9:56pm EST | One (1) video of MV1 | Detroit, MI |
| 4 | February 14, 2020 at 11:29am EST | Two (2) images of MV1 | Chattanooga, TN |

In violation of Title 18, United States Code, Sections 2252(a)(2) and (b)(1).

## COUNT 5
## 18 U.S.C. §§ 2252(a)(4)(B) & (b)(2)
## (Possession of Child Pornography)

On or about February 19, 2020, in Palm Beach County, in the Southern District of Florida, the defendant,

## ROBERT DANIEL SOLOVE,

did knowingly possess matter, which contained any visual depiction that had been shipped and transported using any means and facility of interstate and foreign commerce, and in and affecting interstate and foreign commerce, and which was produced using materials which had been so shipped and transported, by any means, including by computer, and the production of such visual depiction having involved the use of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2), and such visual depiction was of such conduct, in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and (b)(2).

Pursuant to Title 18, United States Code, Section 2252(b)(2), it is further alleged that such visual depiction involved a prepubescent minor and a minor who had not attained twelve years of age.

## COUNT 6
## 18 U.S.C. §§ 2252A(g)
## (Child Exploitation Enterprise)

From on or about January 29, 2020, and continuing through on or about January 31, 2020, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**ROBERT DANIEL SOLOVE,**

and other persons known and unknown, knowingly engaged in a child exploitation enterprise, in

that the defendant committed violations of Chapter 110 of Title 18 of the United States Code, that

is, Title 18, United States Code, Section 2252, as part of a series of felony violations constituting

three or more separate incidents and involving more than one victim, and committed those offenses

in concert with three or more other persons, in violation of Title 18, United States Code, Section

2252A(g).

## COUNTS 7-11
### 18 U.S.C. §§ 2252(a)(2) & (b)(1)
### (Distribution of Child Pornography)

On or about the dates and approximate times enumerated as to each count listed below, in

Palm Beach County, in the Southern District of Florida, the defendant,

**ROBERT DANIEL SOLOVE,**

did knowingly distribute any visual depiction, using any means and facility of interstate and

foreign commerce, and that had been shipped and transported in and affecting interstate and

foreign commerce, and the production of such visual depiction involved the use of a minor engaged

in sexually explicit conduct, as defined in Title 18, United State Code, Section 2256(2), and such

visual depiction was of such conduct:

| Count | Date and Approximate Time | File Type | Destination |
|-------|---------------------------|-----------|-------------|
| 7 | January 29, 2020 at 10:38am | Two (2) videos of MV2 | Detroit, MI |
| 8 | January 29, 2020 at 1:30pm | One (1) image of unknown child 1 | Detroit, MI |
| 9 | January 29, 2020 at 10:38pm | One (1) video of unknown child 2 | Detroit, MI |
| | | | |
| 10 | February 14, 2020 at 11:30am | Two (2) videos & one (1) image of MV1 | Chattanooga, TN |
| 11 | February 15, 2020 at 11:43pm | One (1) video of unknown child 3 | Chattanooga, TN |

In violation of Title 18, United States Code, Sections 2252(a)(2) and (b)(1).

4

### COUNTS 12–13
### 18 U.S.C. §§ 2251(a) and (e)
### (Production of Child Pornography – MV1)

From on or about the dates enumerated, through on or about the dates enumerated, as to each count listed below, in Palm Beach County, in the Southern District of Florida, the defendant,

### ROBERT DANIEL SOLOVE,

did employ, use, persuade, induce, entice, and coerce MV1, a minor, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, and such visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and such visual depiction was transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce:

| Count | Date Range | File Description, Title or Type |
|-------|------------|-------------------------------|
| 12 | January 1, 2020 – January 29, 2020 | One (1) image of MV1 |
| 13 | July 16, 2018 – December 31, 2019 | Three (3) images of MV1 |

In violation of Title 18, United States Code, Sections 2251(a) and (e).

### COUNT 14
### 18 U.S.C. § 2422(b)
### (Enticement of Minor to Engage in Sexual Activity)

From in or around May 2019, through on or about February 18, 2020, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

### ROBERT DANIEL SOLOVE,

using a facility and means of interstate commerce, that is, the Internet, knowingly persuaded, induced, enticed, and coerced an individual, MV2, who had not attained the age of eighteen years, to engage in sexual activity for which any person can be charged with a criminal offense under Florida state law, in violation of Title 18, United States Code, Section 2422(b).

5

### COUNT 15
### 18 U.S.C. § 1470
### (Transferring Obscene Material to Minors)

Between on or about January 12, 2020, and on or about February 8, 2020, in Palm Beach

County, in the Southern District of Florida, and elsewhere, the defendant,

### ROBERT DANIEL SOLOVE,

did, by means of interstate commerce, knowingly transfer obscene matter to an individual, MV2,

who had not attained the age of 16 years, knowing that MV2 had not attained the age of 16 years,

in violation of Title 18, United States Code, Section 1470.

### COUNTS 16–17
### 18 U.S.C. §§ 2251(a) and (e)
### (Production of Child Pornography – MV2)

On or about the dates enumerated as to each count listed below, in Palm Beach County, in

the Southern District of Florida, and elsewhere, the defendant,

### ROBERT DANIEL SOLOVE,

did employ, use, persuade, induce, entice, and coerce MV2, a minor, to engage in sexually explicit

conduct for the purpose of producing any visual depiction of such conduct, and such visual

depiction was produced and transmitted using materials that had been mailed, shipped, and

transported in and affecting interstate and foreign commerce by any means, including by computer,

and such visual depiction was transported and transmitted using any means and facility of interstate

and foreign commerce and in and affecting interstate and foreign commerce:

| Count | Date |
|-------|------|
| 16 | January 12, 2020 |
| 17 | February 8, 2020 |

In violation of Title 18, United States Code, Sections 2251(a) and (e).

## FORFEITURE

1.      The allegations of this Superseding Information are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ROBERT DANIEL SOLOVE,** has an interest.

2.      Pursuant to Title 18, United States Code, Section 2253, upon conviction of any offense in violation of Title 18, United States Code, Section 2252, as alleged in this Superseding Information, defendant **ROBERT DANIEL SOLOVE,** shall forfeit to the United States:

(a)      any visual depiction described in Title 18, United States Code, Sections 2251, 2251A, 2252, 2252A, 2252B, or 2260 or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of Chapter 110 of Title 18, United States Code;

(b)      any property, real or personal, constituting or traceable to gross profits or other proceeds which the defendant obtained from the offense(s); and

(c)      any property, real or personal, used or intended to be used to commit or to promote the commission of the offense(s) or any property traceable to such property;

3.      The property which is subject to forfeiture includes, but is not limited to:

(a)      one (1) Samsung Galaxy J7 Star Cellular Phone; and

(b)      one (1) Samsung Galaxy S9 Cellular Phone.

All pursuant to Title 18, United States Code, Section 2253, and the procedures set forth at Title 21, United States Code, Section 853.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

GREGORY SCHILLER
ASSISTANT UNITED STATES ATTORNEY

7

UNITED STATES OF AMERICA

CASE NO. 20-CR-80025-DMM

v.

## CERTIFICATE OF TRIAL ATTORNEY*

ROBERT DANIEL SOLOVE

**Superseding Case Information:**

_____ Defendant. /

**Court Division**: (Select One)

___ Miami    ___ Key West
___ FTL    ✓ WPB    ___ FTP

New defendant(s)    Yes ___    No ___ ✓
Number of new defendants    0
Total number of counts    17

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    No
   List language and/or dialect    _____

4. This case will take   0   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

(Check only one)

|  |  |  |
|---|---|---|
| I | 0 to 5 days | ✓ |
| II | 6 to 10 days | |
| III | 11 to 20 days | |
| IV | 21 to 60 days | |
| V | 61 days and over | |

(Check only one)

|  |  |
|---|---|
| Petty | |
| Minor | |
| Misdem. | |
| Felony | |

6. Has this case previously been filed in this District Court?    (Yes or No)    Yes
   If yes: Judge Middlebrooks    Case No. 20-CR-80025-DMM
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?    (Yes or No)    Yes
   If yes: Magistrate Case No.    20-MJ-8082-DLB
   Related miscellaneous numbers:    _____
   Defendant(s) in federal custody as of    2/19/2020
   Defendant(s) in state custody as of    _____
   Rule 20 from the District of    _____

Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?    Yes ___    No ✓

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?    Yes ___    No ✓

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?    Yes ___    No ✓

*Gregory Schiller*

ASSISTANT UNITED STATES ATTORNEY
GREGORY SCHILLER
FL Bar No. 06648477

*Penalty Sheet(s) attached

REV 6/5/2020

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:  ROBERT DANIEL SOLOVE**

**Case No:    20-CR-80025-DMM (s)**

Counts #: 1, 2, 12, 13, 16, 17

Production of Child Pornography

Title 18, United States Code, Section 2251(a)

**\*Max. Penalty:**  30 Years' Imprisonment (15 year minimum mandatory), \$250,000 fine,
Supervised Release of 5 Years to Life, \$5000 Special Assessment, \$100 Assessment, Restitution

Counts #: 3, 4, 7 – 11

Distribution of Child Pornography

Title 18, United States Code, Section 2252(a)(2) & (b)(1)

**\*Max. Penalty:**  20 Years' Imprisonment (5 year minimum mandatory), \$250,000 fine,
Supervised Release of 5 Years to Life, \$5000 Special Assessment, \$100 Assessment, Restitution

Count #: 6

Child Exploitation Enterprise

Title 18, United States Code, Section 2252A(g)

**\*Max. Penalty:**  Life Imprisonment (20 year minimum mandatory), \$250,000 fine, Supervised
Release of 5 Years to Life, \$5000 Special Assessment, \$100 Assessment, Restitution

Count #: 5

Possession of Child Pornography

Title 18, United States Code, Section 2252(a)(4)(B) & (b)(2)

**\*Max. Penalty:**   20 Years' Imprisonment, $250,000 fine, Supervised Release of 5 Years to Life, $5000 Special Assessment, $100 Assessment, Restitution

Count #: 14

Coercion and Enticement of Minors

Title 18, United States Code, Section 2422

**\*Max. Penalty:**   Life (10 year minimum mandatory), $250,000 fine, Supervised Release of 5 Years to Life, $5000 Special Assessment, $100 Assessment, Restitution

Count #: 15

Transfer Obscene Material to Minors

Title 18, United States Code, Section 1470

**\*Max. Penalty:**   10 Years' Imprisonment, $250,000 fine, Supervised Release of 5 Years to Life, $5000 Special Assessment, $100 Assessment, Restitution

   **\*Refers only to possible term of incarceration, fines, special assessments, does not include possible forfeitures that may be applicable.**

**DE - 46**

Page: 74 of 137    Date Filed: 08/12/2021    Document: 22    USCA11 Case: 21-11747

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.   20-80025-CR-DMM**

**UNITED STATES OF AMERICA**

**vs.**

**ROBERT DANIEL SOLOVE**

**Defendant.**

_____/

**PLEA AGREEMENT**

The United States Attorney's Office for the Southern District of Florida ("this Office") and (hereinafter referred to as the "defendant") enter into the following agreement:

1.      The defendant agrees to plead guilty to the following counts of the Superseding Information: Counts 1 and 2, which charge the defendant with production of child pornography in violation of Title 18, United States Code, Sections 2251(a) & (e); to Counts 3 and 4, which charge the defendant with distribution of child pornography in violation of Title 18, United States Code, Sections 2252(a)(2) & (b)(1); and Count 5 which charges the defendant with possession of child pornography in violation of Title 18, United States Code, Sections 2252(a)(4)(B) & (b)(2).

2.      This is a conditional plea. Pursuant to Federal Rule of Criminal Procedure 11(a)(2), this office consents to the defendant's entry of a conditional plea of guilty and reservation of his right to seek appellate review only of the district court's denial of his motion to suppress evidence (Docket Entry 19). The defendant's motion alleged the warrantless seizure of his Internet Protocol address (IP address) and sought to suppress all physical evidence seized and his statements as fruit of the poisonous tree (Docket Entry 15). This office and the defendant agree that an order suppressing the subject evidence, or an appeal granting such relief, is case dispositive.

3.      This office agrees to seek dismissal of counts 6 – 17 of the Superseding Information, as to this defendant, after sentencing.

4.      The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

5.      The defendant also understands and acknowledges that the Court must impose, as to Counts 1 and 2, a minimum term of imprisonment of fifteen (15) years and may impose a statutory maximum term of imprisonment of up to thirty (30) years, followed by a term of supervised release of five (5) years up to life, as to each count. The defendant further understands

USCA11 Case: 21-11747     Document: 22     Date Filed: 08/12/2021     Page: 76 of 137

and acknowledges that the Court must impose, as to Counts 3 and 4, a minimum term of imprisonment of five (5) years and may impose a statutory maximum term of imprisonment of up to twenty (20) years, followed by a term of supervised release of five (5) years up to life, as to each count. The defendant further understands and acknowledges that the Court may impose, as to Count 5, a statutory maximum term of imprisonment of up to twenty (20) years, followed by a term of supervised release of five (5) years up to life, as to each count. These sentences of imprisonment may be run consecutively, for a total sentence of 120 years' imprisonment. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 as to each count, for a total maximum potential fine of $1,250,000.

6.     The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 5 of this agreement, pursuant to 18 U.S.C. Section 3013, a special assessment in the amount of $100 per count will be imposed on the defendant. The defendant agrees that this special assessment shall be paid at the time of sentencing. If the defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

7.     The defendant further understands and acknowledges that, pursuant to Title 18, United States Code, Section 3014, a special assessment in the amount of $5,000 will be imposed on the defendant if he is not indigent and is pleading guilty, in Counts 1, 2, 3, 4 and 5, to offenses under Chapter 110 (relating to sexual exploitation and other abuse of children). The defendant agrees that this special assessment shall not be payable until the defendant has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim-compensation arising from the criminal conviction, upon which this special assessment is based.

USCA11 Case: 21-11747   Document: 22   Date Filed: 08/12/2021   Page: 77 of 137

8.     The defendant understands and acknowledges that, in addition to any sentence imposed under paragraph 5 of this agreement, pursuant to 18 U.S.C. §§ 2259 and 2259A, the Court shall order the defendant to pay restitution because he is pleading guilty to an offense under Chapter 110.  The parties agree that any restitution ordered by the Court under 18 U.S.C. §§ 2259 and 2259A, shall include defendant's total offense conduct.

9.     Pursuant to 18 U.S.C. § 3663A(a)(3), the parties agree that restitution is not limited to Counts 1, 2, 3, 4 and 5, the offenses of conviction in this case.   The defendant agrees to pay restitution to Minor Victim 1 and Minor Victim 2, as well as any other victims identifiable prior to the imposition of sentence, even if not listed in the Superseding Information, which represents the full amount of those victims' losses as that term is defined in 18 U.S.C. § 2259(b)(3).  The defendant further agrees that restitution is due pursuant 18 U.S.C. § 3663A(c)(1), for offenses and identifiable victims who have suffered a physical injury or pecuniary loss other than those he is pleading guilty to, but nonetheless gave rise to this plea agreement.

10.     The parties further understand and acknowledge that the amount of restitution the defendant will be ordered to pay will be calculated pursuant to 18 U.S.C. §§ 2259 and 2259A.  Specifically, the Court will first determine the full amount of each victim's losses that were incurred, or are reasonably projected to be incurred by the victim, as a result of the trafficking of child pornography depicting the victim.  The parties understand and acknowledge that, once the full amount of the victim's losses is determined, the Court will then order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000.  The parties further understand and acknowledge that any individual victim's total aggregate recovery shall not exceed the full amount of that victim's demonstrated losses.

USCA11 Case: 21-11747   Document: 22   Date Filed: 08/12/2021   Page: 78 of 137

11.     This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background.   Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

12.     This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.   This Office, however, will not be required to make this motion and this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official

USCA11 Case: 21-11747   Document: 22   Date Filed: 08/12/2021   Page: 79 of 137

13.     The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety.   The defendant understands and acknowledges, as previously acknowledged in paragraph 4 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

14.     Defendant agrees to forfeit to the United States voluntarily and immediately all of his right, title and interest to the following property which is subject to forfeiture pursuant to Title 18, United States Code, Section 2253:

    a.   one (1) Samsung Galaxy J7 Star Cellular Phone; and

    b.   one (1) Samsung Galaxy S9 Cellular Phone.

The defendant agrees that the above-listed assets represent property used or intended to be used to commit, facilitate, or promote the commission of the offense as alleged in Counts 1 – 6 of the superseding information.

15.     Defendant further agrees to fully cooperate and assist the Government in the forfeiture of the listed property and to take whatever steps are necessary to pass clear title to the United States, including, but not limited to, the surrender of documents of title, execution of any documents necessary to transfer his interest in the above property to the United States, execution

USCA11 Case: 21-11747   Document: 22   Date Filed: 08/12/2021   Page: 80 of 137

of a consent to forfeiture or other documents as may be needed to fully accomplish the forfeiture and vest title in the United States.   Defendant further knowingly and voluntarily waives the following rights as to property subject to forfeiture: (1) all constitutional, legal and equitable defenses to the forfeiture of the assets in any judicial or administrative proceeding; (2) any judicial or administrative notice of forfeiture and related deadlines; (3) any jeopardy defense or claim of double jeopardy, whether constitutional or statutory; (4) any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the property by the United States; and (5) any right to appeal any order of forfeiture entered by the Court pursuant to this plea agreement. Defendant further understands that the forfeiture of the property shall not be treated as satisfaction or offset against any fine, restitution, cost of imprisonment, or any other penalty this court may impose on the defendant.

16.    The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case.   Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, including the dismissal of counts 6 – 17 of the Superseding Information, the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing.   The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291.   However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be

USCA11 Case: 21-11747   Document: 22   Date Filed: 08/12/2021   Page: 81 of 137

released from the above waiver of appellate rights.   By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney.   The defendant further agrees, together with this Office, to request that the Court enter a specific finding that the defendant's waiver of his right to appeal the sentence imposed in this case was knowing and voluntary.   Notwithstanding this waiver of defendant's right to appeal any sentence imposed, the defendant reserves the right to appeal the order denying his motion to suppress (Docket Entry 19), pursuant to paragraph 2 of this agreement.

17.    Defendant understands that by pleading guilty, he will be required to register as a sex offender upon his release from prison as a condition of supervised release pursuant to 18 U.S.C. § 3583(d).   Defendant also understands that independent of supervised release, he will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout defendant's life.   Defendant understands that he shall keep his registration current, shall notify the state sex offender registration agency or agencies of any changes to defendant's name, place of residence, employment, or student status, or other relevant information. Defendant shall comply with requirements to periodically verify in person defendant's sex offender registration information.   Defendant understands that he will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon defendant's release from confinement following conviction.

18.    As a condition of supervised release, defendant shall register with the state sex offender registration in the state of Florida, and shall also register with the state sex offender registration agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer.   Defendant shall comply with all requirements of federal and

USCA11 Case: 21-11747    Document: 22    Date Filed: 08/12/2021    Page: 82 of 137

state sex offender registration laws, including the requirement to update defendant's registration information.   Defendant shall provide proof of registration to the Probation Officer within 72 hours of release from imprisonment.

19.   This is the entire agreement and understanding between this Office and the defendant.   There are no other agreements, promises, representations, or understandings.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date:   1/28/2021                    By:   _Gregory Schiller_
                                           GREGORY SCHILLER
                                           ASSISTANT UNITED STATES ATTORNEY

Date:   1/28/21                      By:   _____
                                           SCOTT BERRY
                                           ATTORNEY FOR DEFENDANT

Date:   _____             By:   _____
                                           ROBERT DANIEL SOLOVE
                                           DEFENDANT

**DE - 50**

```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                     WEST PALM BEACH DIVISION

 3                  CASE NO. 9:20-CR-80025-DMM-1

 4
      UNITED STATES OF AMERICA
 5                                      Davie, Florida

 6           vs.                        March 4, 2021
                                        Tuesday
 7
      ROBERT DANIEL SOLOVE
 8                                      Scheduled for 10:00 a.m.
                                        9:58 a.m. to 10:42 a.m.
 9
                                        Pages 1 - 41
10
      ------------------------------------------------------------
11
                          CHANGE OF PLEA
12
             BEFORE THE HONORABLE DONALD M. MIDDLEBROOKS
13                  UNITED STATES DISTRICT JUDGE

14
      APPEARANCES (VIA ZOOM):
15

16    ON BEHALF OF GOVERNMENT:     GREGORY SCHILLER, AUSA
                                    United States Attorney's Office
17                                  500 S. Australian Avenue
                                    Suite 400
18                                  West Palm Beach, Florida  33401

19
      ON BEHALF OF DEFENDANT:      SCOTT G. BERRY, AFPD
20                                  Federal Public Defender's Office
                                    450 Australian Avenue
21                                  Suite 500
                                    West Palm Beach, Florida  33401
22

23    STENOGRAPHICALLY
      REPORTED BY:                 GLENDA M. POWERS, RPR, CRR, FPR
24                                  Official Court Reporter
                                    United States District Court
25                                  400 North Miami Avenue
                                    Miami, Florida  33128
```

1          (Call to the order of the Court:)

2          THE COURT:  This is the case of the United States

3     versus Robert Daniel Solove, the Case Number is 20-80025.

4          Do we have appearances?

5          MR. SCHILLER:  Good morning, Your Honor.

6          Greg Schiller on behalf of the United States; and also

7     present is Homeland Security Special Agent and Case Agent Brian

8     Stafford.  We are both appearing by video for this conference

9     this morning.

10          THE COURT:  Good morning.

11          SPECIAL AGENT STAFFORD:  Good morning, Judge.

12          MR. BERRY:  Good morning, Your Honor.  Scott Berry on

13     behalf of Robert Solove, who is appearing by video conference

14     from the Marshal's office.

15          THE COURT:  Good morning.

16          And good morning, Mr. Solove.

17          Mr. Berry, I've been given a number of documents.

18     Let me figure out what all we need to do today.  I've been

19     given a plea agreement, although the agreement is not yet

20     signed by your client, the copy I have.

21          I also have a superseding information.  I have not seen

22     a waiver of indictment, so my question is, has that been

23     executed yet, and where do we stand with arraignment and waiver

24     of indictment?

25          MR. BERRY:  Your Honor, as far as signing documents is

1    concerned, both with the plea agreement, as well as the

2    indictment waiver, I can certainly sign those on my client's

3    behalf.  I believe Mr. Solove would permit me to do that.

4         I have not been able to have him sign them because,

5    basically, of jail procedures, when I send documents to the

6    jail, they actually make a copy of the document, give it to him

7    on some sort of pink form, and then he has no way to send it

8    back to me.  And so that's why those documents have not been

9    signed yet.

10         But, as I said, if the Court would allow it, I can sign

11   both those documents on his behalf, and I can submit them.

12         THE COURT:  Okay.  Well, we can discuss those things

13   with him then today.  He's now at the courthouse in the

14   Marshal's facility.  Is there any way to get those documents to

15   him before he leaves there or are they somewhere?

16         MR. BERRY:  I believe that Genny has a copy of the plea

17   agreement that's been signed by both myself and Mr. Schiller,

18   although, she appears to be at home right no, so I don't think

19   that's going to work.  I don't know.

20         COURTROOM DEPUTY:  I can possibly e-mail it to maybe

21   one of the Marshals, and if they can print it out and have

22   Mr. Solove look at it and sign it, and then they can hold it

23   there for me, if that's possible.  I could check with them.

24         THE MARSHAL:  Genny, you can send it to me, I'll print

25   it out.

1              COURTROOM DEPUTY:  Is that Jim?

2              THE MARSHAL:  Yes, ma'am.

3              COURTROOM DEPUTY:  Okay.  I'll send it now.

4              MR. BERRY:  Judge, I can sign a waiver of indictment

5    and e-mail it to Genny now, and then she can forward that to

6    the Marshals as well, if they want to have him sign that.

7              THE COURT:  All right.  There's no arraignment.

8              MR. BERRY:  There's no arraignment.  They scheduled it

9    for this morning, instead, he was in quarantine.

10             THE COURT:  Let's then go ahead and start.

11             Genny, would you administer the oath to Mr. Solove.

12             COURTROOM DEPUTY:  Yes.  Please raise your right hand.

13   Do you swear or affirm the testimony you're about to give will

14   be the truth, the whole truth, and nothing but the truth?

15             We cannot hear you.

16             THE DEFENDANT:  Yes.

17             THE COURT:  All right.  Mr. Solove, if you would

18   prefer, and if the Marshal -- if there's no one else in that

19   room with you, I don't know what the case is, if you would like

20   to remove your mask, you can.  I guess, if there's someone

21   there, that's probably a good idea.

22             You need to speak up if you keep your mask on.

23             THE DEFENDANT:  There is somebody in here.

24             THE COURT:  Okay.  Well, we'll go forward.

25             You are now under oath, and if you answer falsely to

1    any of my questions your answers will later be used in another

2    prosecution for perjury for making a false statement.

3            Do you understand?

4            THE DEFENDANT:  Yes.

5            THE COURT:  You need to answer out loud because the

6    court reporter has to take everything down that you say.

7            First of all, we are doing this by video conference, so

8    as a result of the Corona virus, we have not been having

9    hearings in person.  We've been doing these by Zoom for

10   everyone's protection.

11           My first question to you is:  Are you prepared to go

12   forward with Zoom, or do you prefer to wait until we can have

13   an in-person hearing?

14           THE DEFENDANT:  For this, or for sentencing?

15           THE COURT:  For this.

16           THE DEFENDANT:  Yeah, I'm okay with this.

17           THE COURT:  Okay.  So you talked about that with your

18   lawyer, and you're satisfied with your decision to do this by

19   Zoom?

20           THE DEFENDANT:  Correct.

21           THE COURT:  All right.  The second thing I want to

22   discuss with you, under the United States Constitution, you

23   have a right to have charges presented to a Grand Jury, which

24   would then decide whether or not to return an indictment.

25           I think earlier in this case you were indicted pursuant

 1    to an indictment by the Grand Jury.  There is another new

 2    method of going forward with charges, that is, by way of

 3    information, where the charges are directly filed by the U.S.

 4    Attorney.  In those instances, the charges are not presented to

 5    the grand jury.

 6          The Grand Jury doesn't decide guilt or innocence, but

 7    it decides whether there's probable cause to go forward with

 8    charges.  It has been said that the grand jury performs two

 9    functions.

10          One, it stands between the Government and the accused,

11    so it's a protection for defendants.  Also, it involves

12    citizens in law enforcement and in the prosecution of crime.

13          I've been advised that you are prepared to go forward

14    by way of information at this point, rather than indictment.

15    The Grand Jury -- until very recently -- has not been meeting

16    because of the Corona virus; although, they are now meeting,

17    down in Miami, on occasion.

18          So my first question, have you discussed that with your

19    lawyer, the option of going forward by information, rather than

20    indictment?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And what's your decision in that regard?

23    Are you prepared to go forward with an information?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Okay.  Now, the next step we need to -- and

1    I understand -- usually, we have a document signed, but because

2    of the quarantine at the jail your lawyer hadn't been able to

3    get that document to you to sign.

4           Do you authorize him to sign the waiver of indictment

5    for you?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Now we need to proceed to the information.

8           Now, you're represented by counsel, Mr. Berry; is that

9    right?

10          THE DEFENDANT:  Right.

11          THE COURT:  Are you satisfied with the representation

12   Mr. Berry has provided to you?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Now I am prepared to read this superseding

15   information to you.  It charges several counts:

16          Count 1 is production of child pornography;

17          Count 2, similarly, is production of child pornography;

18          Counts 3 and 4 are distribution of child pornography;

19          Count 5 is possession of child pornography;

20          Count 6 is child exploitation enterprise;

21          Count 7 through 11, distribution of child pornography;

22          Counts 12 and 13 are production of child pornography;

23          Count 14, enticement of minor to engage in sexual

24   activity;

25          Count 15, transferring obscene material to minors;

1          Count 16 through 17 is production of child pornography.

2          And then there's a forfeiture count which seeks to have

3  you forfeit any visual depictions, the cell phone, and any

4  property used to -- or intended to be used to promote the

5  commission of these offenses or which is traceable to profits

6  or proceeds obtained from the offense.  That's, basically, a

7  summary of the superseding information.

8          Mr. Berry, does your client wish me to read this to

9  him, or did you all discuss that?

10          MR. BERRY:  We would waive formal reading.

11          We have discussed it.

12          THE COURT:  And is there -- do you enter a plea to the

13  superseding information?

14          MR. BERRY:  Yes, Your Honor.  Although, we do intend to

15  change our plea to guilty, momentarily, at this time, we will

16  enter a plea of not guilty; and just in case anything goes

17  awry, we will request trial by jury and any outstanding

18  discovery order.

19          THE COURT:  Are we then prepared to proceed with the

20  change of plea to the superseding information?

21          MR. BERRY:  We are, Your Honor.

22          THE COURT:  Okay.  Mr. Solove, having dealt with those

23  issues, we're going to move to the issue of the change of plea.

24          I'm going to ask you several questions.

25          The purpose of the questions is to make sure you

1    carefully considered your decision to plead guilty in this

2    case, to determine that you're competent to make the decision,

3    that you're aware of your rights, and that there's a reason for

4    you to plead guilty, that you did what the Government says you

5    did.  If you don't understand any of my questions, tell me.

6         If you want to stop at any point and speak with

7    Mr. Berry, you may do that.  Do you understand?

8         THE DEFENDANT:  Yes.

9         THE COURT:  First, how far did you go in school?

10        THE DEFENDANT:  High school education.

11        THE COURT:  Have you ever been treated for any mental

12   illness?

13        THE DEFENDANT:  Generalized anxiety, depression.

14        THE COURT:  Have you been hospitalized for that?

15        THE DEFENDANT:  Yes.

16        THE COURT:  How long ago?

17        THE DEFENDANT:  Over two years.

18        THE COURT:  Are you still under the care of a physician

19   with respect to that?

20        THE DEFENDANT:  Yes.

21        THE COURT:  And are you taking medication for your

22   anxiety and depression?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Has that circumstance interfered with your

25   ability to discuss this case with your lawyer, make decisions

 1 | in that -- with respect to your case?

 2 |        THE DEFENDANT:  No.

 3 |        THE COURT:  Are you taking that medication at present?

 4 |        THE DEFENDANT:  Yes.

 5 |        THE COURT:  Do you happen to recall the names of them?

 6 |        THE DEFENDANT:  Cymbalta, 20 milligrams.

 7 |        THE COURT:  Other than that, are you taking any other

 8 | medications?

 9 |        THE DEFENDANT:  No.

10 |        THE COURT:  And are you under the influence of any drug

11 | or alcohol?

12 |        THE DEFENDANT:  No.

13 |        THE COURT:  Now, I've been provided a copy of a plea

14 | agreement.  It is not yet signed, again, because of the

15 | quarantine.  But have you reviewed that plea agreement with

16 | your lawyer?

17 |        THE DEFENDANT:  Yes.

18 |        THE COURT:  Do you believe you understand it?

19 |        THE DEFENDANT:  Yes.

20 |        THE COURT:  I'm going to review aspects of it with you,

21 | and if there's any question about any part of it, please tell

22 | me.

23 |        In paragraph one, you are agreeing to plead guilty to

24 | Counts 1 and 2, 3 and 4, and 5 of the superseding information.

25 |        Counts 1 and 2 charge you with production of child

```
 1    pornography;

 2            Counts 3 and 4 charge you with distribution of child

 3    pornography;

 4            And Count 5 charges possession of child pornography,

 5    all in violation of federal law.

 6            Do you understand you're agreeing to plead guilty to

 7    those charges?

 8            THE DEFENDANT:  Yes.

 9            THE COURT:  Now, in paragraph two, there's an agreement

10    that your plea is conditional, in one respect.

11            For most issues, a plea of guilty waives your ability

12    to raise those issues after -- to appeal those issues after

13    sentencing.

14            But in this plea agreement, you are conditioning your

15    plea on the ability to appeal the motion to suppress that was

16    denied earlier in this case.  Under this plea agreement, you

17    would still be able to appeal that issue.

18            Do you understand that?

19            THE DEFENDANT:  Yes.

20            THE COURT:  All right.  And, Mr. Schiller, I don't

21    see -- it didn't seem to be carved out of the appellate waiver,

22    but it's understood that this is a carve-out from that

23    appellate waiver?

24            MR. SCHILLER:  That's correct, Judge.  Let me just look

25    at the appellate waiver section.  The last sentence of the
```

1    appellate waiver, paragraph 16, notes that:

2           Notwithstanding this waiver of defendant's right to

3    appeal any sentence imposed, the defendant reserves the right

4    to appeal the order denying the motion to suppress,

5    Docket Entry 19, pursuant to paragraph two of this agreement.

6           THE COURT:  Okay.  Great.  Thank you.

7           MR. SCHILLER:  You're welcome, sir.

8           THE COURT:  We'll get to that appellate waiver a little

9    later.

10          Paragraph three, the Government agrees to dismissal of

11   the remaining counts of the superseding indictment at

12   sentencing, that's 6 through 17.

13          Now, the sentence in this case will be imposed after

14   consideration of the Federal Sentencing Guidelines.  I'm

15   obligated to calculate a sentencing guideline range, usually a

16   sentence falls within that range.

17          I do have some discretion to vary from that range up

18   and down, but I have to take it into account, as well as other

19   laws passed by Congress related to sentencing.

20          One thing I cannot do is I cannot vary below a

21   mandatory minimum sentence, because that's set by Congress.

22   The only way I can go below that is cooperation with the

23   Government, if something is filed; otherwise, I cannot go below

24   a mandatory minimum sentence.  Do you understand?

25          THE DEFENDANT:  Yes.

1          THE COURT:  The reason I mention that is because there

2    are some in this case.

3          The possible penalties for these crimes are as follows:

4          With respect to Counts 1 and 2, there is a minimum term

5    of imprisonment of 15 years.  The maximum term of imprisonment

6    is up to 30 years.  That would be followed by a term of

7    supervised release of five years.  It could extend as much as

8    life as to each count.

9          With respect to Counts 3 and 4, there is a minimum term

10   of imprisonment of five years, a maximum term of imprisonment

11   of up to 20 years, again, that would be followed by a term of

12   supervised release of five years, up to life, as to each count.

13         With respect to Count 5, there is a maximum term of

14   imprisonment of up to 20 years, followed by a term of

15   supervised release of five years, but could extend as much as

16   life as to each count.

17         The sentence could run consecutively, for a total

18   sentence of 120 years imprisonment.

19         In addition to imprisonment and supervised release, a

20   fine of up to $250,000 could be entered as to each count, a

21   total maximum potential fine of $1,250,000.

22         Do you understand, these are the possible penalties for

23   these crimes?

24         THE DEFENDANT:  Yes.

25         THE COURT:  In paragraph six, it points out, there's a

1    special assessment of $100 payable at sentencing.

2         I think that's a total of $500.

3         And then, in paragraph seven, there is a special

4    assessment of $5,000, which will be imposed if you are not

5    indigent as to Counts 1, 2, 3, 4 and 5, because those charges

6    relate to exploitation and other abuse of children.

7         This special assessment shall not be payable until all

8    outstanding court fines, orders of restitution, and any other

9    obligation related to victim compensation have been satisfied.

10        Do you understand this with respect to these special

11   assessments?

12        THE DEFENDANT:  Yes.

13        THE COURT:  Furthermore, in paragraphs eight, nine

14   and 10, deal with restitution.  You will be ordered to pay

15   restitution to victims in this case.

16        Those paragraphs also talk about the way that victim

17   compensation is determined and how it's assessed.

18        Have you reviewed with your lawyer the provisions

19   relating to restitution?

20        THE DEFENDANT:  Yes.

21        THE COURT:  In paragraph 12, the Government agrees to

22   recommend that your guidelines be reduced by three levels for

23   acceptance of responsibility.

24        The Government won't be required to do that, however,

25   unless you make a full disclosure to the probation office of

1   the circumstances surrounding the offense, if you're found to

2   have misrepresented facts to the Government before entering

3   into this agreement or if you commit any misconduct after

4   entering into the agreement.  Do you understand?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Paragraph 14 deals with that forfeiture

7   count.  You are agreeing, in paragraph 14, that you will

8   forfeit any right, title, and interest you have in the Samsung

9   Galaxy cellular phone J7 and a Samsung Galaxy S9 cellular

10  phone.  Do you understand, you're agreeing to forfeit those to

11  the Government?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Mr. Schiller, is that all the forfeiture

14  issue involved in this?

15           COURTROOM DEPUTY:  You're on mute, Mr. Schiller, so we

16  have not heard you.

17           MR. SCHILLER:  I apologize.  Sorry about that.

18           Yes, Judge, that is all accurate, about the forfeiture;

19  although, I did note, in paragraph 14, underneath B, it notes,

20  "Counts 1 through 6."  That's a scrivener's error.  It should

21  be "1 through 5."  But everything else is correct.

22           THE COURT:  All right.  And the only forfeiture is

23  these phones?

24           MR. SCHILLER:  That's correct, Judge.

25           THE COURT:  All right.  Thank you.

1            Paragraph 16, Mr. Solove, is a very important part of

2    your plea agreement, because under federal law you have a right

3    to appeal the sentence imposed in this case.

4            However, as part of your plea agreement, you're giving

5    up your rights to appeal the sentence, including any

6    restitution orders, or to appeal the manner in which sentence

7    is imposed, unless it were to exceed the maximum permitted by

8    statute, or be a result of an upward departure or upward

9    variance from the guideline range established at sentencing.

10           The only exception to this is that provision -- we

11   talked about that earlier -- where you are reserving the right

12   to appeal the denial of the motion to suppress.

13           Other than that, you're giving up your rights to appeal

14   the sentence in this case.  Do you understand that?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Have you talked about that with your

17   lawyer, and are you satisfied with respect to that decision?

18           THE DEFENDANT:  Yes.

19           THE COURT:  In paragraph seven and 18, it says that you

20   understand you will be required as a result of pleading guilty

21   to this crime to be registered as a sex offender, and you will

22   be subject to federal and state sex offender registration

23   requirements that could extend as throughout life.

24           Do you understand that?

25           THE DEFENDANT:  Yes.

1          THE COURT:  Okay.  We've reviewed the provisions of

2     this written plea agreement.

3          Beyond this agreement, has the Government made any

4     promise to you in connection with your decision to plead

5     guilty?

6          THE DEFENDANT:  No.

7          THE COURT:  Has anyone attempted to force you to plead

8     guilty?

9          THE DEFENDANT:  No.

10         THE COURT:  Are you pleading guilty of your own free

11    will because you are guilty?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Do you understand you have a right to plead

14    not guilty; if you plead not guilty, you have a right to a

15    trial by jury.  The Government would have to prove your guilt

16    beyond a reasonable doubt.

17         You would have the right to the assistance of counsel.

18    Your lawyer could cross-examine the witnesses called by the

19    Government, present witnesses on your behalf, you could either

20    testify or chose not to testify; and if you chose not to

21    testify, that fact couldn't be used against you in the trial.

22         Do you understand you have those rights?

23         THE DEFENDANT:  Yes.

24         THE COURT:  By pleading guilty, you're giving up those

25    rights, and there will be no trial.  Do you understand?

1        THE DEFENDANT:  Yes.

2        THE COURT:  This crime's a felony.  If your plea is

3   accepted, you will be adjudged guilty of a felony and may lose

4   valuable civil rights, such as:

5        The right to vote, the right to hold office, the right

6   to own a firearm.  Do you understand?

7        THE DEFENDANT:  Yes.

8        THE COURT:  Mr. Schiller, I have not seen a written

9   factual proffer.  Is there one in this case?

10        MR. SCHILLER:  There is not one, Judge.  I'll be giving

11   an oral factual proffer.

12        THE COURT:  Mr. Solove, I'm going to ask the prosecutor

13   to describe what he would have proven at trial, had the case

14   gone to trial.  Please listen carefully, because when he's

15   finishes, I will ask you whether you did what the Government

16   says you did.  Please, proceed.

17        MR. SCHILLER:  Thank you, Judge.

18        Had this case gone to trial on the charges outlined by

19   this Court in agreement with the plea agreement in Counts 1, 2,

20   3, 4, and 5 on the superseding information, the Government

21   would have proven the following facts beyond a reasonable

22   doubt:

23        On February 14th, 2020, an HSI undercover agent, known

24   as U.C. one, in Chattanooga, Tennessee, was online in the

25   social networking application called "KIK," K-I-K.

1          KIK allowed users to chat privately or in groups and to

2   share images and videos.  U.C. one was in the group chatroom

3   utilized to trade child pornography -- that is what the room

4   was predicated for -- and more importantly, Your Honor, child

5   sexual abuse material or "CSAM."

6          U.C. one observed KIK user "RSolove99" -- later

7   identified as the defendant -- post and distribute a picture of

8   a prepubescent child -- later identified as Solove's daughter,

9   and known here as "Minor Victim One" -- at, approximately,

10  11:29 a.m., in the group chat on February 14th.

11         The image revealed Minor Victim One on her back, lying

12  naked from the waist down and her genitals exposed to the

13  camera, next to a Mickey Mouse pillow with a Disney pacifier in

14  her mouth.

15         After several minutes, some of the group members posted

16  (inaudible) of CSAM material of post and prepubescent sexual

17  abuse material.  Solove responded on occasionally, "nice," to

18  those postings.

19         After seeing this, U.C. one sent a private message to

20  Solove asking if Minor Victim One was, in fact, Solove's child.

21         Solove then distributed two videos of Minor Victim One

22  to U.C. one.  In both videos, Minor Victim One used her hand to

23  sexually manipulate Solove's erect penis.

24         Solove, at first, said Minor Victim One was not his

25  daughter, but later messaged that she was, in fact, his

1    daughter and that he lied about it the first time.

2         To prove that he was the child's father, Solove sent a

3    picture of himself and Minor Victim One side-by-side taken with

4    the front-facing camera on his phone.

5         The image was created using the KIK application or some

6    other application on the phone.

7         Solove said he was from Pennsylvania, which he

8    originally was, and denied Minor Victim One's mother knew that

9    he and Minor Victim One had quote, "done a few things," end

10   quote, sexually.

11        Solove then again posted the picture with Minor Victim

12   One's legs spread open, showing her vagina while she had the

13   pacifier in her mouth in the private chat.

14        In response to the emergency request by Homeland

15   Security Investigations, KIK provided the IP addresses and user

16   information Solove used to communicate on February 14th, 2020.

17        AT&T responded to an emergency request of these

18   IP addresses, provided that they were assigned to Minor Victim

19   One's grandmother in Boca Raton, Florida.

20        On February 19th, 2020, five days after the original

21   communication, Homeland Security investigative agents and the

22   Palm Beach County Sheriff's Office executed a federal

23   search warrant at the residence.

24        Present were Solove, Minor Victim One, the child's

25   mother, and the child's grandmother, as well as the

1   grandmother's husband.

2          Upon entering the house, Minor Victim One was

3   discovered to be 19 months old, was found without clothes or a

4   diaper on, and EMS transported her and her mother to St. Mary's

5   Hospital.  Minor Victim One required surgery to stitch her

6   vaginal and anal tears.

7          Law enforcement found the Mickey Mouse pillow and a

8   Disney pacifier from the photo.  Two cellular phones were found

9   on scene and attributable to Solove.  Those are the two phones

10  he used, agreeing to forfeit, the Galaxy J7 Star and a

11  Galaxy S9.

12         Forensic examination of Solove's Galaxy J7 Star

13  cellular phone, found on his person, revealed the phone was

14  used exclusively by him.  The phone was unlocked when found by

15  law enforcement and fully accessible to law enforcement when

16  seized.

17         Agents discovered the social networking application KIK

18  and WhatsApp; use of his specific-name e-mail accounts; use of

19  online storage application mega.NZ; and an internet account for

20  Xbox, which actually included Minor Victim One as the account

21  name.

22         Law enforcement found Solove's Galaxy S9 cellular

23  phone, which he later said he used for quote, "gaming," end

24  quote, on a fish tank in the home.  The phone was locked and

25  password protected.

1          While on scene and waiting in a marked patrol car

2    Solove provided the password.  Later in his post-Miranda

3    interview, Solove provided the same exact password to his Gmail

4    account.

5          Examination of his phone revealed hundreds of images

6    and at least eight videos of CSAM, some under the age of five,

7    many of which were obtained from a website named "mega.NZ,"

8    which is similar to Dropbox, and used quite frequently in KIK

9    by users to share child sexual abuse material.

10         Law enforcement transferred Solove to the

11   Palm Beach County Sheriff's Office for a recorded interview.

12   During the post-Miranda interview, Solove admitted the images

13   from the February 14th, 2020, KIK chat were of his daughter and

14   that he had sent them to other KIK users.

15         Solove specifically admitted the image and videos sent

16   on February 14th, 2020, were, in fact, his daughter, Minor

17   Victim One.

18         The investigation revealed that the photographs and

19   videos of Minor Victim One were produced sometime between

20   January 21st and January 29, 2020.

21         After Solove's arrest, Homeland Security Investigations

22   became aware of a similar U.C. investigation by another HSI

23   agent in Detroit, Michigan, herein know as "U.C. two."

24         U.C. two observed KIK user, again, RSolove99 -- later

25   identified as Solove -- on January 29th, 2020, in a KIK group

1    chatroom utilized to trade child sexual abuse material.  This

2    is roughly two weeks before the original investigation.

3            Beginning at 12:46 a.m. and continuing into the late

4    afternoon, Solove, and other members, communicated about their

5    images in CSAM posted in the group and their sexual attraction

6    to children.

7            Solove posted two videos of a teenage female -- later

8    identified as Minor Victim Two, who will be discussed about

9    shortly.

10           At 1:30 p.m., Solove posted two images of a different

11   nude pre-teen girl.  U.C. two private-messaged Solove,

12   inquiring about that particular girl.  U.C. two asked if Solove

13   had children, to which Solove replied, "yes," and sent a

14   clothed photograph of Minor Victim One.

15           At 4:57 p.m., Solove posted a video of an unknown adult

16   penis touching a female's rectum, the age is unknown.  Solove

17   inquired of the group as to the age group of the child that had

18   been posted, stating that he believed that that child in that

19   photograph was four or five years old.

20           That child's identity is unknown.

21           Group members commented that she was six or seven years

22   old.  Solove continued to distribute and comment on other users

23   distribution of child sexual abuse material.

24           The next morning, U.C. two sent a private message to

25   Solove, asking if he was quote, "active," unquote, with Minor

1    Victim One.  Solove responded, when U.C. asked, quote, "I mean,

2    do you do stuff with her"?  End quote, with a smiley face.

3         Solove refused to answer and inquired about what U.C.

4    two did with his daughter.  Solove ended the conversation

5    saying, quote, "I'll show you more of my daughter as well when

6    you do."  End quote.

7         That evening, at 9:56 p.m., back in the group chatroom,

8    as others continued to post CSAM and comment on the same,

9    Solove posted the video of Minor Victim One where she

10   manipulated his penis, as he ended up doing two weeks later

11   with U.C. one.

12        On Solove's Galaxy S9 cellular phone agents discovered

13   WhatsApp video messages between Solove and a victim later

14   identified as a 14-year-old girl, herein identified as Minor

15   Victim Two, from January to February of 2020.

16        Minor victim two was listed as a contact in Solove's

17   phone.  HSI identified her and found that she lived in

18   Oklahoma.  In at least five of the shared videos Minor Victim

19   Two recorded herself masturbating.

20        Solove did the same in at least ten.  The five Minor

21   Victim Two videos were created on January 12th, January 21st,

22   and February 8th and sent to Solove, per his request.

23        Agent extracted communication between Solove and Minor

24   Victim Two from Solove's Galaxy S9 phone, including "Text Now"

25   communication in late December 2019 and WhatsApp communication

1   from January 4th to January 16th, 2020.

2          The conversation includes Solove's requests of videos

3   of Minor Victim Two.  On January 21st, for example, after

4   receiving a masturbatory video from Minor Victim Two, Solove

5   said, quote, "More babe, that was so" -- F'in -- and used the

6   real term -- "hot.  You were so wet, I wish I could lick you

7   up."  End quote.

8          Followed by, quote, "More, babe, please."  End quote.

9          And then, "I'm going to ejaculate" -- but he used

10  another word -- "after your next video."  End quote.

11         After receiving another video, per this request, Solove

12  said, "Wow, babe, you are squirting so much, I honestly can't

13  wait to make you squirt with my fingers.  I also want to lick

14  your" -- he used a word to describe her genitalia -- "so bad!"

15  Exclamation point.

16         During their conversation Minor Victim Two expressed

17  her uncomfortableness with her body and fear of disappointing

18  Solove when they have sex in person.  Solove promised to take

19  care of her and do things to her that she could not, like

20  running the washing machine, for example.

21         Minor Victim Two stated her age and that she was in

22  middle school during these chats as well.

23         On Solove's Galaxy S7 {sic} Star cellular phone, the

24  examination recovered Minor Victim Two's name and birthday in

25  the calendar application, 48 phone calls and text messages

1  between a phone number belonging to Minor Victim Two from

2  November 2019 through December 2019.

3         The examination also revealed the text messages from

4  Minor Victim One's mother, in which she forwarded seven

5  screenshots of a December 2019 e-mail exchange between Solove

6  and Minor Victim Two to Solove's phone.

7         She had found those messages, those e-mails, and

8  screenshotted them and sent them to Solove.  In those series of

9  e-mails, Minor Victim Two's (inaudible) and Gmail account were

10 revealed, and Solove discussed what happened when Minor Victim

11 Two's parents called Solove after finding out she was talking

12 to a stranger.

13        Pursuant to a federal search warrant for both e-mail

14 and Text Now accounts -- which is how Solove and Minor Victim

15 Two communicated -- more than 18,000 messages were exchanged

16 concerning Solove's production of child sexual abuse material

17 of Minor Victim Two.

18        Minor Victim Two was identified and interviewed.

19 She confirmed the online applications used in their

20 relationship and Solove's request for masturbatory videos and

21 the victim's (inaudible) at his request.

22        Both of Solove's two cellular phones contained child

23 sexual abuse material, or child pornography, of Minor Victim

24 One, Minor Victim Two, that was different than those

25 distributed in KIK, as well as child sexual abuse material of

1    other children.

2           Several of them have been identified by the National

3    Center of Missing and Exploited Children, all of which did

4    occur in the Southern District of Florida and would have been

5    proven regarding Counts 1 through 5 had this case gone to

6    trial.

7           Judge, while I have the opportunity, just for the

8    record, I want to note that the guardian ad litems, who

9    represent both Minor Victim Two and Minor Victim One -- they're

10   Court-appointed -- are both here, at the hearing, appearing by

11   Zoom.  Thank you.

12          THE COURT:  All right.  Thank you.

13          Mr. Solove, you heard the prosecutor, what he would

14   prove at trial.  Did you do those things?

15          THE DEFENDANT:  (Response unintelligible.)

16          THE COURT:  It was muffled.  Did you say yes?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  So you possessed this child

19   pornography, you produced child pornography, of at least Minor

20   Victim One and Two, and you distributed that pornography on the

21   internet?

22          THE DEFENDANT:  Yes.

23          THE COURT:  How do you plead to the charges, guilty or

24   not guilty?

25          THE DEFENDANT:  Guilty.

```
 1              THE COURT:  Mr. Schiller, is there anything else you
 2    believe I should cover?
 3              MR. SCHILLER:  Just one moment, Your Honor.  I'm just
 4    going down my list.
 5              (Brief pause in the proceedings.)
 6              MR. SCHILLER:  No.  I believe -- just to confirm, I
 7    believe you've already asked the defendant's satisfaction with
 8    defense counsel?
 9              THE COURT:  I did, when we talked in terms of the
10    arraignment issue.
11              But Mr. Solove, you are satisfied with Mr. Berry's
12    representation?
13              THE DEFENDANT:  Yes.
14              MR. SCHILLER:  Thank you, Judge.
15              THE COURT:  Mr. Berry, do you have anything further you
16    believe I should cover?
17              MR. BERRY:  No, Your Honor.  Thank you.
18              MR. SCHILLER:  Oh, Judge, I'm sorry, if I may, the one
19    thing we haven't gone over are the -- oh, no, I'm sorry, never
20    mind, you did -- and I apologize -- unless you want me to
21    produce the elements of the charges, which that's the one thing
22    you haven't done.
23              THE COURT:  Well, I thought I largely did, but go
24    ahead, let's cover those.
25              MR. SCHILLER:  Thank you, Judge.
```

1      As to Counts 1 and 2 for production of child

2   pornography, the elements the Government would have to prove at

3   trial as evidence and the facts outlined for the Court are

4   that:

5      One, an actual minor, that is a real person who is less

6   than 18 years old, was depicted;

7      Two, the defendant used, persuaded, induced, enticed,

8   or coerced the minor to engage in sexually explicit conduct for

9   the purpose of producing a visual depiction, for example, a

10   photograph or video of the conduct;

11      And three, that the visual depiction was mailed or

12   actually transported across state lines or in foreign commerce.

13      As to Counts 3 and 4, distribution of child

14   pornography, the elements the Government would have to prove at

15   trial, as evidenced in the facts outlined for the Court are:

16      First, that the defendant knowingly distributed a

17   visual depiction in interstate or foreign commerce, by any

18   means, including a computer or phone;

19      Producing the visual depiction involved using a minor

20   engaged in sexually explicit conduct;

21      Three, the depiction shows the minor engaged in

22   sexually explicit conduct;

23      And four, the defendant knew that at least one

24   performer in the visual depiction was a minor and knew that the

25   depiction showed the minor engaged in sexually explicit

1    conduct.

2         Finally, as to Count 5, possession of child

3    pornography.  The elements the Government would prove at trial,

4    as evidenced in the facts outlined for the Court, are as

5    follows:

6         First, the defendant knowingly possessed one or more

7    matters which contained any visual depiction of a minor engaged

8    in sexually explicit conduct;

9         Second, the items of child pornography had been

10   transported in interstate or foreign commerce, including by

11   computer;

12        Three, the production of the visual depiction involved

13   the use of a minor engaged in sexually explicit conduct and a

14   visual depiction was of such conduct;

15        Four, the defendant knew that the visual depiction

16   involved the use of a minor engaging in sexually explicit

17   conduct -- and because of the way the information charges --

18   that at least one of the children depicted was under the age of

19   12 years.  Thank you, Judge.

20        THE COURT:  All right.  And, Mr. Solove, you discussed

21   with your lawyer the elements of those crimes?

22        THE DEFENDANT:  Yes.

23        THE COURT:  And you understand that?

24        Do you have any question about any one of them?

25        THE DEFENDANT:  No.

1          THE COURT:  All right.  How do you plead to the charges

2     in this case, guilty or not guilty?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  It's then the finding of the Court in the

5     case of the United States versus Robert Daniel Solove that the

6     defendant is fully competent and capable of entering an

7     informed plea; that he's aware of the nature of the charges and

8     the consequences of the plea; and that the plea of guilty is a

9     knowing and voluntary plea supported by an independent basis in

10    fact, containing each of the essential elements of the offense.

11         The plea is, therefore, accepted and the defendant is

12    adjudged guilty of these offenses.

13         It is also the finding of the Court that the defendant

14    has discussed with counsel the appellate waiver contained

15    within the plea agreement and that waiver is also knowing and

16    voluntary.

17         Mr. Solove, the probation office will ask to speak to

18    you.  You have a right to have your lawyer present when you

19    talk to them.

20         They will prepare a written report which will describe

21    these crimes, and they will recommend how the sentencing

22    guidelines ought to be applied.

23         If there's anything you believe to be incorrect in the

24    report, you and your lawyer can file written objections.

25         If those are not worked out with the Government, we

 1   will decide those at the sentencing hearing, and you'll have a

 2   right to address the Court with respect to the sentence.

 3          Do you understand?

 4          THE DEFENDANT:  Yes.

 5          THE COURT:  When can we have sentencing?

 6          COURTROOM DEPUTY:  May --

 7          MR. BERRY:  I'm sorry, Judge.

 8          COURTROOM DEPUTY:  -- go ahead.

 9          MR. BERRY:  Your Honor, Mr. Solove alluded to this

10   earlier.  Our intent is to request the sentencing in person,

11   rather than by video conference.

12          At this time, I expect to call at least one witness to

13   testify, so it may take longer than 30 minutes, maybe more

14   like -- maybe an hour, hour-and-a-half.  I just want to make

15   the Court aware of that.  I'm not sure how that affects when

16   his sentencing will be.

17          THE COURT:  Okay.  I think we'll probably be able to do

18   it in person; if not, and he wants it in person, we'll delay

19   it.  Go ahead and give us the date.

20          COURTROOM DEPUTY:  Thursday, May 20th, at 10 a.m.

21          THE COURT:  Thursday, May 20th, at 10.

22          Does that work for everyone?

23          MR. SCHILLER:  Fine for the United States, Judge, yes.

24          THE COURT:  Okay.  And Mr. Berry?

25          MR. BERRY:  Yes, Your Honor, that should be fine.

1          THE COURT:  Okay.  Hopefully, we'll be back doing it in

2    person; if we aren't, we'll have to delay it further, but it's

3    my belief that we'll be back.

4          Apparently, GSA's upgrading all the filtration

5    equipment at the courthouse in the first week of April, and

6    given the trends, I think we'll be all right by May.

7          But I guess that's a hope at this point.

8          MR. SCHILLER:  Judge, if I may, just two things -- or,

9    actually, one thing.  One of the victims, as you know, is in

10   Oklahoma.  If we are back in person, will we still have the

11   video capability available so that she might be able to appear,

12   if she so choses, by video capability?

13         Actually, the Court may not know, but I just wanted to

14   kind of put that on the radar.

15         THE COURT:  I think we've -- we should be able to have

16   it available.  I expect we'll use Zoom a lot more than we ever

17   did before, so, as we go forward.

18         But the equipment, at least, is at the courthouse.

19         MR. BERRY:  Thank you, Judge.

20         THE COURT:  Okay.  And, Genny, you're going to try to

21   send to the Marshals these documents for Mr. Solove?

22         COURTROOM DEPUTY:  I've already sent them.  They

23   printed them out, he signed them, and they scanned them back

24   and sent them to me, and I've e-mailed them to Mr. Schiller and

25   Mr. Berry.

```
 1              MR. BERRY:  We received them.

 2              THE COURT:  Okay.  Anything else today then?

 3              MR. SCHILLER:  No, Judge.  The Government, at this

 4   point, we just ask that the defendant remain on remand status

 5   pending sentencing.  He was held in pretrial detention.

 6              We'd ask that that just continue until sentencing.

 7              THE COURT:  All right, so that condition will remain in

 8   effect.

 9              MR. SCHILLER:  Thank you, Judge.

10              MR. BERRY:  Thank you, sir.

11              THE COURT:  Okay.  Have a good day, everyone.

12              MR. SCHILLER:  Thank you, Judge, you, too.

13              COURTROOM DEPUTY:  See you again, Mr. Berry, later.

14              (Proceedings concluded at 10:42 a.m.)

15

16                    C E R T I F I C A T E

17

18        I hereby certify that the foregoing is an

          accurate transcription of the excerpt of the
19
          proceedings in the above-entitled matter via
20
          "Zoom" during Covid-19.
21

22

23   April 7th, 2021      Glenda M. Powers
                          GLENDA M. POWERS, RPR, CRR, FPR
                          United States District Court
24                        400 North Miami Avenue
                          Miami, Florida  33128
25
```

**$**

**$1,250,000** [1] - 13:21
**$100** [1] - 14:1
**$250,000** [1] - 13:20
**$5,000** [1] - 14:4
**$500** [1] - 14:2

**1**

**1** [11] - 1:9, 7:16,
10:24, 10:25, 13:4,
14:5, 15:20, 15:21,
18:19, 27:5, 29:1
**10** [3] - 14:14, 32:20,
32:21
**10:00** [1] - 1:8
**10:42** [2] - 1:8, 34:14
**11** [1] - 7:21
**11:29** [1] - 19:10
**12** [3] - 7:22, 14:21,
30:19
**120** [1] - 13:18
**12:46** [1] - 23:3
**12th** [1] - 24:21
**13** [1] - 7:22
**14** [4] - 7:23, 15:6,
15:7, 15:19
**14-year-old** [1] - 24:14
**14th** [5] - 18:23, 19:10,
20:16, 22:13, 22:16
**15** [2] - 7:25, 13:5
**16** [3] - 8:1, 12:1, 16:1
**16th** [1] - 25:1
**17** [2] - 8:1, 12:12
**18** [2] - 16:19, 29:6
**18,000** [1] - 26:15
**19** [2] - 12:5, 21:3
**19th** [1] - 20:20
**1:30** [1] - 23:10

**2**

**2** [7] - 7:17, 10:24,
10:25, 13:4, 14:5,
18:19, 29:1
**20** [3] - 10:6, 13:11,
13:14
**20-80025** [1] - 2:3
**2019** [4] - 24:25, 26:2,
26:5
**2020** [9] - 18:23,
20:16, 20:20, 22:13,
22:16, 22:20, 22:25,
24:15, 25:1
**2021** [2] - 1:6, 34:22
**20th** [2] - 32:20, 32:21
**21st** [3] - 22:20, 24:21,
25:3
**29** [1] - 22:20

**29th** [1] - 22:25

**3**

**3** [7] - 7:18, 10:24,
11:2, 13:9, 14:5,
18:20, 29:13
**30** [2] - 13:6, 32:13
**33128** [2] - 1:25, 34:24
**33401** [2] - 1:18, 1:21

**4**

**4** [8] - 1:6, 7:18, 10:24,
11:2, 13:9, 14:5,
18:20, 29:13
**400** [3] - 1:17, 1:25,
34:24
**41** [1] - 1:9
**450** [1] - 1:20
**48** [1] - 25:25
**4:57** [1] - 23:15
**4th** [1] - 25:1

**5**

**5** [9] - 7:19, 10:24,
11:4, 13:13, 14:5,
15:21, 18:20, 27:5,
30:2
**500** [2] - 1:17, 1:21

**6**

**6** [3] - 7:20, 12:12,
15:20

**7**

**7** [1] - 7:21
**7th** [1] - 34:22

**8**

**8th** [1] - 24:22

**9**

**9:20-CR-80025-DMM
-1** [1] - 1:3
**9:56** [1] - 24:7
**9:58** [1] - 1:8

**A**

**a.m** [7] - 1:8, 1:8,
19:10, 23:3, 32:20,
34:14
**ability** [3] - 9:25,
11:11, 11:15
**able** [6] - 3:4, 7:2,

11:17, 32:17, 33:11,
33:15
**above-entitled** [1] -
34:19
**abuse** [9] - 14:6, 19:5,
19:17, 22:9, 23:1,
23:23, 26:16, 26:23,
26:25
**acceptance** [1] - 14:23
**accepted** [2] - 18:3,
31:11
**accessible** [1] - 21:15
**account** [5] - 12:18,
21:19, 21:20, 22:4,
26:9
**accounts** [2] - 21:18,
26:14
**accurate** [2] - 15:18,
34:18
**accused** [1] - 6:10
**active** [1] - 29:5
**activity** [1] - 7:24
**actual** [1] - 29:5
**ad** [1] - 27:8
**addition** [1] - 13:19
**address** [1] - 32:2
**addresses** [2] - 20:15,
20:18
**adjudged** [1] - 18:3,
31:12
**administer** [1] - 4:11
**admitted** [2] - 22:12,
22:15
**adult** [1] - 23:15
**advised** [1] - 6:13
**affects** [1] - 32:15
**affirm** [1] - 4:13
**AFPD** [1] - 1:19
**afternoon** [1] - 23:4
**age** [5] - 22:6, 23:16,
23:17, 25:21, 30:18
**Agent** [2] - 2:7
**agent** [3] - 18:23,
22:23, 24:23
**AGENT** [1] - 2:11
**agents** [3] - 20:21,
21:17, 24:12
**ago** [1] - 9:16
**agreeing** [5] - 10:23,
11:6, 15:7, 15:10,
21:10
**agreement** [19] - 2:19,
3:1, 3:17, 10:14,
10:15, 11:9, 11:14,
11:16, 12:5, 15:3,
15:4, 16:2, 16:4,
17:2, 17:3, 18:19,
31:15
**agrees** [2] - 12:10,
14:21

**ahead** [4] - 4:10,
28:24, 32:8, 32:19
**alcohol** [1] - 10:11
**allow** [1] - 3:10
**allowed** [1] - 19:1
**alluded** [1] - 32:9
**AMERICA** [1] - 1:4
**anal** [1] - 21:6
**answer** [3] - 4:25, 5:5,
24:3
**answers** [1] - 5:1
**anxiety** [2] - 9:13, 9:22
**apologize** [2] - 15:17,
28:20
**appeal** [10] - 11:12,
11:15, 11:17, 12:3,
12:4, 16:3, 16:5,
16:6, 16:12, 16:13
**appear** [1] - 33:11
**APPEARANCES** [1] -
1:14
**appearances** [1] - 2:4
**appearing** [3] - 2:8,
2:13, 27:10
**appellate** [6] - 11:21,
11:23, 11:25, 12:1,
12:8, 31:14
**application** [6] -
18:25, 20:5, 20:6,
21:17, 21:19, 25:25
**applications** [1] -
26:19
**applied** [1] - 31:22
**appointed** [1] - 27:10
**April** [3] - 33:5, 34:22
**arraignment** [4] -
2:23, 4:7, 4:8, 28:10
**arrest** [1] - 22:21
**aspects** [1] - 10:20
**assessed** [1] - 14:17
**assessment** [3] - 14:1,
14:4, 14:7
**assessments** [1] -
14:11
**assigned** [1] - 20:18
**assistance** [1] - 17:17
**AT&T** [1] - 20:17
**attempted** [1] - 17:7
**Attorney** [1] - 6:4
**Attorney's** [1] - 1:16
**attraction** [1] - 23:5
**attributable** [1] - 21:9
**AUSA** [1] - 1:16
**Australian** [2] - 1:17,
1:20
**authorize** [1] - 7:4
**available** [2] - 33:11,
33:16
**Avenue** [4] - 1:17,

1:20, 1:25, 34:24
**aware** [4] - 9:3, 22:22,
31:7, 32:15
**awry** [1] - 8:17

**B**

**babe** [3] - 25:5, 25:8,
25:12
**bad** [1] - 25:14
**basis** [1] - 31:9
**BEACH** [1] - 1:2
**Beach** [4] - 1:18, 1:21,
20:22, 22:11
**became** [1] - 22:22
**BEFORE** [1] - 1:12
**beginning** [1] - 23:3
**behalf** [5] - 2:6, 2:13,
3:3, 3:11, 17:19
**BEHALF** [2] - 1:16,
1:19
**belief** [1] - 33:3
**belonging** [1] - 26:1
**below** [3] - 12:20,
12:22, 12:23
**BERRY** [16] - 1:19,
2:12, 2:25, 3:16, 4:4,
4:8, 8:10, 8:14, 8:21,
28:17, 32:7, 32:9,
32:25, 33:19, 34:1,
34:10
**Berry** [10] - 2:12, 2:17,
7:8, 7:12, 8:8, 9:7,
28:15, 32:24, 33:25,
34:13
**Berry's** [1] - 28:11
**between** [6] - 6:10,
22:19, 24:13, 24:23,
26:1, 26:5
**beyond** [3] - 17:3,
17:16, 18:21
**birthday** [1] - 25:24
**Boca** [1] - 20:19
**body** [1] - 25:17
**Brian** [1] - 2:7
**Brief** [1] - 28:5
**BY** [1] - 1:23

**C**

**calculate** [1] - 12:15
**calendar** [1] - 25:25
**camera** [2] - 19:13,
20:4
**cannot** [4] - 4:15,
12:20, 12:23
**capability** [2] - 33:11,
33:12
**capable** [1] - 31:6
**car** [1] - 22:1

**care** [2] - 9:18, 25:19
**carefully** [2] - 9:1, 18:14
**carve** [1] - 11:22
**carve-out** [1] - 11:22
**carved** [1] - 11:21
**CASE** [1] - 1:3
**case** [19] - 2:2, 4:19, 5:25, 8:16, 9:2, 9:25, 10:1, 11:16, 12:13, 13:2, 14:15, 16:3, 16:14, 18:9, 18:13, 18:18, 27:5, 31:2, 31:5
**Case** [2] - 2:3, 2:7
**cell** [1] - 8:3
**cellular** [8] - 15:9, 21:8, 21:13, 21:22, 24:12, 25:23, 26:22
**Center** [1] - 27:3
**certainly** [1] - 3:2
**certify** [1] - 34:17
**CHANGE** [1] - 1:11
**change** [3] - 8:15, 8:20, 8:23
**charge** [2] - 10:25, 11:2
**charges** [15] - 5:23, 6:2, 6:3, 6:4, 6:8, 7:15, 11:4, 11:7, 14:5, 18:18, 27:23, 28:21, 30:17, 31:1, 31:7
**chat** [4] - 19:1, 19:10, 20:13, 22:13
**chatroom** [3] - 19:2, 23:1, 24:7
**chats** [1] - 25:22
**Chattanooga** [1] - 18:24
**check** [1] - 3:23
**child** [30] - 7:16, 7:17, 7:18, 7:19, 7:20, 7:21, 7:22, 8:1, 10:25, 11:2, 11:4, 19:3, 19:4, 19:8, 19:20, 22:9, 23:1, 23:17, 23:18, 23:23, 26:16, 26:22, 26:23, 26:25, 27:18, 27:19, 29:1, 29:13, 30:2, 30:9
**child's** [4] - 20:2, 20:24, 20:25, 23:20
**children** [5] - 14:6, 23:6, 23:13, 27:1, 30:18
**Children** [1] - 27:3
**chose** [2] - 17:20
**choses** [1] - 33:12

**circumstance** [1] - 9:24
**circumstances** [1] - 15:1
**citizens** [1] - 6:12
**civil** [1] - 18:4
**client** [2] - 2:20, 8:8
**client's** [1] - 3:2
**clothed** [1] - 23:14
**clothes** [1] - 21:3
**coerced** [2] - 29:8
**comment** [2] - 23:22, 24:8
**commented** [1] - 23:21
**commerce** [3] - 29:12, 29:17, 30:10
**commission** [1] - 8:5
**commit** [1] - 15:3
**communicate** [1] - 20:16
**communicated** [4] - 23:4, 26:15
**communication** [4] - 20:21, 24:23, 24:25
**compensation** [2] - 14:9, 14:17
**competent** [2] - 9:2, 31:6
**computer** [2] - 29:18, 30:11
**concerned** [1] - 3:1
**concerning** [1] - 26:16
**concluded** [1] - 34:14
**condition** [1] - 34:7
**conditional** [1] - 11:10
**conditioning** [1] - 11:14
**conduct** [9] - 29:8, 29:10, 29:20, 29:22, 30:1, 30:8, 30:13, 30:14, 30:17
**conference** [4] - 2:8, 2:13, 5:7, 32:11
**confirm** [1] - 28:6
**confirmed** [1] - 26:19
**Congress** [2] - 12:19, 12:21
**connection** [1] - 17:4
**consecutively** [1] - 13:17
**consequences** [1] - 31:8
**consideration** [1] - 12:14
**considered** [1] - 9:1
**Constitution** [1] - 5:22
**contact** [1] - 24:16
**contained** [3] - 26:22, 30:7, 31:14

**containing** [1] - 31:10
**continue** [1] - 34:6
**continued** [2] - 23:22, 24:8
**continuing** [1] - 23:3
**conversation** [3] - 24:4, 25:2, 25:16
**cooperation** [1] - 12:22
**copy** [4] - 2:20, 3:6, 3:16, 10:13
**Corona** [2] - 5:8, 6:16
**correct** [4] - 5:20, 11:24, 15:21, 15:24
**counsel** [4] - 7:8, 17:17, 28:8, 31:14
**Count** [10] - 7:16, 7:17, 7:19, 7:20, 7:21, 7:23, 8:1, 11:4, 13:13, 30:2
**count** [7] - 7:25, 8:2, 13:8, 13:12, 13:16, 13:20, 15:7
**counts** [2] - 7:15, 12:11
**Counts** [13] - 7:18, 7:22, 10:24, 10:25, 11:2, 13:4, 13:9, 14:5, 15:20, 18:19, 27:5, 29:1, 29:13
**County** [2] - 20:22, 22:11
**Court** [15] - 1:24, 1:24, 2:1, 3:10, 18:19, 27:10, 29:3, 29:15, 30:4, 31:4, 31:13, 32:2, 32:15, 33:13, 34:23
**court** [2] - 5:6, 14:8
**COURT** [79] - 1:1, 2:2, 2:10, 2:15, 3:12, 4:7, 4:10, 4:17, 4:24, 5:5, 5:15, 5:17, 5:21, 6:22, 6:25, 7:7, 7:11, 7:14, 8:12, 8:19, 8:22, 9:9, 9:11, 9:14, 9:16, 9:18, 9:21, 9:24, 10:3, 10:5, 10:7, 10:10, 10:13, 10:18, 10:20, 11:9, 11:20, 12:6, 12:8, 13:1, 13:25, 14:13, 14:21, 15:6, 15:13, 15:22, 15:25, 16:16, 16:19, 17:1, 17:7, 17:10, 17:13, 17:24, 18:2, 18:8, 18:12, 27:12, 27:16, 27:18, 27:23, 28:1, 28:9, 28:15, 28:23, 30:20,

30:23, 31:1, 31:4, 32:5, 32:17, 32:21, 32:24, 33:1, 33:15, 33:20, 34:2, 34:7, 34:11
**Court-appointed** [1] - 27:10
**courthouse** [3] - 3:13, 33:5, 33:18
**COURTROOM** [10] - 3:20, 4:1, 4:3, 4:12, 15:15, 32:6, 32:8, 32:20, 33:22, 34:13
**cover** [3] - 28:2, 28:16, 28:24
**Covid-19** [1] - 34:20
**created** [2] - 20:5, 24:21
**crime** [2] - 6:12, 16:21
**crime's** [1] - 18:2
**crimes** [4] - 3:13, 13:23, 30:21, 31:21
**cross** [1] - 17:18
**cross-examine** [1] - 17:18
**CRR** [2] - 1:23, 34:23
**CSAM** [5] - 19:5, 19:16, 22:6, 23:5, 24:8
**Cymbalta** [1] - 10:6

**D**

**Daniel** [2] - 2:3, 31:5
**DANIEL** [1] - 1:7
**date** [1] - 32:19
**daughter** [7] - 19:8, 19:25, 20:1, 22:13, 22:16, 24:4, 24:5
**Davie** [1] - 1:5
**days** [1] - 20:20
**deal** [1] - 14:14
**deals** [1] - 15:6
**dealt** [1] - 8:22
**December** [3] - 24:25, 26:2, 26:5
**decide** [5] - 5:24, 6:6, 32:1
**decides** [1] - 6:7
**decision** [6] - 5:18, 6:22, 9:1, 9:2, 16:17, 17:4
**decisions** [1] - 9:25
**DEFENDANT** [52] - 1:19, 4:16, 4:23, 5:4, 5:14, 5:16, 5:20, 6:21, 6:24, 7:6, 7:10, 7:13, 9:8, 9:10, 9:13, 9:15, 9:17, 9:20, 9:23, 10:2, 10:4,

10:6, 10:9, 10:12, 10:17, 10:19, 11:8, 11:19, 12:25, 13:24, 14:12, 14:20, 15:5, 15:12, 16:15, 16:18, 16:25, 17:6, 17:9, 17:12, 17:23, 18:1, 18:7, 27:15, 27:17, 27:22, 27:25, 28:13, 30:22, 30:25, 31:3, 32:4
**defendant** [11] - 12:3, 19:7, 29:7, 29:16, 29:23, 30:6, 30:15, 31:6, 31:11, 31:13, 34:4
**defendant's** [2] - 12:2, 28:7
**defendants** [1] - 6:11
**Defender's** [1] - 1:20
**defense** [1] - 28:8
**delay** [2] - 32:18, 33:2
**denial** [1] - 16:12
**denied** [2] - 11:16, 20:8
**denying** [1] - 12:4
**departure** [1] - 16:8
**depicted** [2] - 29:6, 30:18
**depiction** [11] - 29:9, 29:11, 29:17, 29:19, 29:21, 29:24, 29:25, 30:7, 30:12, 30:14, 30:15
**depictions** [1] - 8:3
**depression** [2] - 9:13, 9:22
**DEPUTY** [10] - 3:20, 4:1, 4:3, 4:12, 15:15, 32:6, 32:8, 32:20, 33:22, 34:13
**describe** [3] - 18:13, 25:14, 31:20
**detention** [1] - 34:5
**determine** [1] - 9:2
**determined** [1] - 14:17
**Detroit** [1] - 22:23
**diaper** [1] - 21:4
**different** [2] - 23:10, 26:24
**directly** [1] - 6:3
**disappointing** [1] - 25:17
**disclosure** [1] - 14:25
**discovered** [3] - 21:3, 21:17, 24:12
**discovery** [1] - 8:18
**discretion** [1] - 12:17
**discuss** [4] - 3:12, 5:22, 8:9, 9:25

discussed [6] - 6:18, 8:11, 23:8, 26:10, 30:20, 31:14
dismissal [1] - 12:10
Disney [2] - 19:13, 21:8
distribute [2] - 19:7, 23:22
distributed [4] - 19:21, 26:25, 27:20, 29:16
distribution [5] - 7:18, 7:21, 11:2, 23:23, 29:13
District [3] - 1:24, 27:4, 34:23
DISTRICT [3] - 1:1, 1:1, 1:13
DIVISION [1] - 1:2
Docket [1] - 12:5
document [3] - 3:6, 7:1, 7:3
documents [7] - 2:17, 2:25, 3:5, 3:8, 3:11, 3:14, 33:21
DONALD [1] - 1:12
done [2] - 20:9, 28:22
doubt [2] - 17:16, 18:22
down [5] - 5:6, 6:17, 12:18, 19:12, 28:4
Dropbox [1] - 22:8
drug [1] - 10:10
during [4] - 22:12, 25:16, 25:22, 34:20

E

e-mail [5] - 3:20, 4:5, 21:18, 26:5, 26:13
e-mailed [1] - 33:24
e-mails [2] - 26:7, 26:9
education [1] - 9:10
effect [1] - 34:8
eight [2] - 14:13, 22:6
either [1] - 17:19
ejaculate [1] - 25:9
elements [6] - 28:21, 29:2, 29:14, 30:3, 30:21, 31:10
emergency [2] - 20:14, 20:17
EMS [1] - 21:4
end [7] - 20:9, 21:23, 24:2, 24:6, 25:7, 25:8, 25:10
ended [2] - 24:4, 24:10
enforcement [6] - 6:12, 21:7, 21:15,

21:22, 22:10
engage [2] - 7:23, 29:8
engaged [5] - 29:20, 29:21, 29:25, 30:7, 30:13
engaging [1] - 30:16
enter [2] - 8:12, 8:16
entered [1] - 13:20
entering [4] - 15:2, 15:4, 21:2, 31:6
enterprise [1] - 7:20
enticed [1] - 29:7
enticement [1] - 7:23
entitled [1] - 34:19
Entry [1] - 12:5
equipment [2] - 33:5, 33:18
erect [1] - 19:23
error [1] - 15:20
essential [1] - 31:10
established [1] - 16:9
evening [1] - 24:7
evidence [1] - 29:3
evidenced [2] - 29:15, 30:4
exact [1] - 22:3
examination [4] - 21:12, 22:5, 25:24, 26:3
examine [1] - 17:18
example [3] - 25:3, 25:20, 29:9
exceed [1] - 16:7
exception [1] - 16:10
excerpt [1] - 34:18
exchange [1] - 26:5
exchanged [1] - 26:15
exclamation [1] - 25:15
exclusively [1] - 21:14
executed [2] - 2:23, 20:22
expect [2] - 32:12, 33:16
explicit [7] - 29:8, 29:20, 29:22, 29:25, 30:8, 30:13, 30:16
exploitation [2] - 7:20, 14:6
Exploited [1] - 27:3
exposed [1] - 19:12
expressed [1] - 25:16
extend [3] - 13:7, 13:15, 16:23
extracted [1] - 24:23

F

F'in [1] - 25:5

face [1] - 24:2
facility [1] - 3:14
facing [1] - 20:4
fact [5] - 17:21, 19:20, 19:25, 22:16, 31:10
facts [5] - 15:2, 18:21, 29:3, 29:15, 30:4
factual [2] - 18:9, 18:11
falls [1] - 12:16
false [1] - 5:2
falsely [1] - 4:25
far [2] - 2:25, 9:9
father [1] - 20:2
fear [1] - 25:17
February [8] - 18:23, 19:10, 20:16, 20:20, 22:13, 22:16, 24:15, 24:22
Federal [2] - 1:20, 12:14
federal [5] - 11:5, 16:2, 16:22, 20:22, 26:13
felony [2] - 18:2, 18:3
female [1] - 23:7
female's [1] - 23:16
few [1] - 20:9
figure [1] - 2:18
file [1] - 31:24
filed [2] - 6:3, 12:23
filtration [1] - 33:4
finally [1] - 30:2
fine [4] - 13:20, 13:21, 32:23, 32:25
fines [1] - 14:8
fingers [1] - 25:13
finishes [1] - 18:15
firearm [1] - 18:6
first [9] - 5:7, 5:11, 6:18, 9:9, 19:24, 20:1, 29:16, 30:6, 33:5
fish [1] - 21:24
five [9] - 13:7, 13:10, 13:12, 13:15, 20:20, 22:6, 23:19, 24:18, 24:20
FLORIDA [1] - 1:1
Florida [7] - 1:5, 1:18, 1:21, 1:25, 20:19, 27:4, 34:24
followed [4] - 13:6, 13:11, 13:14, 25:8
following [1] - 18:21
follows [2] - 13:3, 30:5
force [1] - 17:7
foregoing [1] - 34:17
foreign [3] - 29:12, 29:17, 30:10

forensic [1] - 21:12
forfeit [4] - 8:3, 15:8, 15:10, 21:10
forfeiture [5] - 8:2, 15:6, 15:13, 15:18, 15:22
form [1] - 3:7
formal [1] - 8:10
forward [4] - 4:5, 4:24, 5:12, 6:2, 6:7, 6:13, 6:19, 6:23, 33:17
forwarded [1] - 26:4
four [2] - 23:19, 29:23
Four [1] - 30:15
FPR [2] - 1:23, 34:23
free [1] - 17:10
frequently [1] - 22:8
front [1] - 20:4
front-facing [1] - 20:4
full [1] - 14:25
fully [2] - 21:15, 31:6
functions [1] - 6:9
furthermore [1] - 14:13

G

Galaxy [9] - 15:9, 21:10, 21:11, 21:12, 21:22, 24:12, 24:24, 25:23
gaming [1] - 21:23
generalized [1] - 9:13
genitalia [1] - 25:14
genitals [1] - 19:12
Genny [5] - 3:16, 3:24, 4:5, 4:11, 33:20
girl [3] - 23:11, 23:12, 24:14
given [3] - 2:17, 2:19, 13:6
Glenda [1] - 34:22
GLENDA [2] - 1:23, 34:23
Gmail [2] - 22:3, 26:9
GOVERNMENT [1] - 1:16
Government [18] - 6:10, 9:4, 12:10, 12:23, 14:21, 14:24, 15:2, 15:11, 17:3, 17:15, 17:19, 18:15, 18:20, 29:2, 29:14, 30:3, 31:25, 34:3
Grand [4] - 5:23, 6:1, 6:6, 6:15
grand [2] - 6:5, 6:8
grandmother [2] - 20:19, 20:25
grandmother's [1] -

21:1
Great [1] - 12:6
Greg [1] - 2:6
GREGORY [1] - 1:16
group [9] - 19:2, 19:10, 19:15, 22:25, 23:5, 23:17, 23:21, 24:7
groups [1] - 19:1
GSA's [1] - 33:4
guardian [1] - 27:8
guess [4] - 4:20, 33:7
guideline [2] - 12:15, 16:9
guidelines [2] - 14:22, 31:22
Guidelines [1] - 12:14
guilt [2] - 6:6, 17:15
guilty [24] - 8:15, 8:16, 9:1, 9:4, 10:23, 11:6, 11:11, 16:20, 17:5, 17:8, 17:10, 17:11, 17:14, 17:24, 18:3, 27:23, 27:24, 27:25, 31:2, 31:3, 31:8, 31:12

H

half [1] - 32:14
hand [2] - 4:12, 19:22
hear [1] - 4:15
heard [2] - 15:16, 27:13
hearing [3] - 5:13, 27:10, 32:1
hearings [1] - 5:9
held [1] - 34:5
hereby [1] - 34:17
herein [1] - 22:23, 24:14
herself [1] - 24:19
high [1] - 9:10
himself [1] - 20:3
hold [2] - 3:22, 18:5
home [2] - 3:18, 21:24
Homeland [4] - 2:7, 20:14, 20:21, 22:21
honestly [1] - 25:12
Honor [10] - 2:5, 2:12, 2:25, 8:14, 8:21, 19:4, 28:3, 28:17, 32:9, 32:25
HONORABLE [1] - 1:12
hope [1] - 33:7
hopefully [1] - 33:1
Hospital [1] - 21:5
hospitalized [1] - 9:14
hot [1] - 25:6

**hour** [2] - 32:14
**hour-and-a-half** [1] - 32:14
**house** [1] - 21:2
**HSI** [3] - 18:23, 22:22, 24:17
**hundreds** [1] - 22:5
**husband** [1] - 21:1

## I

**idea** [1] - 4:21
**identified** [9] - 19:7, 19:8, 22:25, 23:8, 24:14, 24:17, 26:18, 27:2
**identity** [1] - 23:20
**illness** [1] - 9:12
**image** [3] - 19:11, 20:5, 22:15
**images** [5] - 19:2, 22:5, 22:12, 23:5, 23:10
**important** [1] - 16:1
**importantly** [1] - 19:4
**imposed** [5] - 12:3, 12:13, 14:4, 16:3, 16:7
**imprisonment** [7] - 13:5, 13:10, 13:14, 13:18, 13:19
**in-person** [1] - 5:13
**inaudible** [3] - 19:16, 26:9, 26:21
**included** [1] - 21:20
**includes** [1] - 25:2
**including** [4] - 16:5, 24:24, 29:18, 30:10
**incorrect** [1] - 31:23
**independent** [1] - 31:9
**indicted** [1] - 5:25
**indictment** [10] - 2:22, 2:24, 3:2, 4:4, 5:24, 6:1, 6:14, 6:20, 7:4, 12:11
**indigent** [1] - 14:5
**induced** [1] - 29:7
**influence** [1] - 10:10
**information** [14] - 2:21, 6:3, 6:14, 6:19, 6:23, 7:7, 7:15, 8:7, 8:13, 8:20, 10:24, 18:20, 20:16, 30:17
**informed** [1] - 31:7
**innocence** [1] - 6:6
**inquired** [2] - 23:17, 24:3
**inquiring** [1] - 23:12
**instances** [1] - 6:4
**instead** [1] - 4:9

**intend** [1] - 8:14
**intended** [1] - 8:4
**intent** [1] - 32:10
**interest** [1] - 15:8
**interfered** [1] - 9:24
**internet** [2] - 21:19, 27:21
**interstate** [1] - 29:17, 30:10
**interview** [3] - 22:3, 22:11, 22:12
**interviewed** [1] - 26:18
**investigation** [3] - 22:18, 22:22, 23:2
**Investigations** [2] - 20:15, 22:21
**investigative** [1] - 20:21
**involved** [4] - 15:14, 29:19, 30:12, 30:16
**involves** [1] - 6:11
**IP** [2] - 20:15, 20:18
**issue** [4] - 8:23, 11:17, 15:14, 28:10
**issues** [4] - 8:23, 11:11, 11:12
**items** [1] - 30:9

## J

**J7** [3] - 15:9, 21:10, 21:12
**jail** [3] - 3:5, 3:6, 7:2
**January** [9] - 22:20, 22:25, 24:15, 24:21, 25:1, 25:3
**Jim** [1] - 4:1
**JUDGE** [1] - 1:13
**Judge** [17] - 2:11, 11:24, 15:18, 15:24, 18:10, 18:17, 27:7, 28:14, 28:18, 28:25, 30:19, 32:7, 32:23, 33:19, 34:3, 34:9, 34:12
**judge** [2] - 4:4, 33:8
**Jury** [4] - 5:23, 6:1, 6:6, 6:15
**jury** [4] - 6:5, 6:8, 8:17, 17:15

## K

**K-I-K** [1] - 18:25
**keep** [1] - 4:22
**KIK** [12] - 18:25, 19:1, 19:6, 20:5, 20:15, 21:17, 22:8, 22:13, 22:14, 22:24, 22:25,

26:25
**kind** [1] - 33:14
**knowing** [2] - 31:9, 31:15
**knowingly** [1] - 29:16, 30:6
**known** [2] - 18:23, 19:9

## L

**largely** [1] - 28:23
**last** [1] - 11:25
**late** [2] - 23:3, 24:25
**law** [8] - 6:12, 11:5, 16:2, 21:7, 21:15, 21:22, 22:10
**laws** [1] - 12:19
**lawyer** [11] - 5:18, 6:19, 7:2, 9:25, 10:16, 14:18, 16:17, 17:18, 30:21, 31:18, 31:24
**least** [8] - 22:6, 24:18, 24:20, 27:19, 29:23, 30:18, 32:12, 33:18
**leaves** [1] - 3:15
**legs** [1] - 20:12
**less** [1] - 29:5
**levels** [1] - 14:22
**lick** [2] - 25:6, 25:13
**lied** [1] - 20:1
**life** [4] - 13:8, 13:12, 13:16, 16:23
**lines** [1] - 29:12
**list** [1] - 28:4
**listed** [1] - 24:16
**listen** [1] - 18:14
**litems** [1] - 27:8
**lived** [1] - 24:17
**locked** [1] - 21:24
**look** [2] - 3:22, 11:24
**lose** [1] - 18:3
**loud** [1] - 5:5
**lying** [1] - 19:11

## M

**ma'am** [1] - 4:2
**machine** [1] - 25:20
**mail** [5] - 3:20, 4:5, 21:18, 26:5, 26:13
**mailed** [2] - 29:11, 33:24
**mails** [2] - 26:7, 26:9
**mandatory** [2] - 12:21, 12:24
**manipulate** [1] - 19:23
**manipulated** [1] - 24:10

**manner** [1] - 16:6
**March** [1] - 1:6
**marked** [1] - 22:1
**Marshal** [1] - 4:18
**MARSHAL** [2] - 3:24, 4:2
**Marshal's** [2] - 2:14, 3:14
**Marshals** [3] - 3:21, 4:6, 33:21
**Mary's** [1] - 21:4
**mask** [2] - 4:20, 4:22
**masturbating** [1] - 24:19
**masturbatory** [2] - 25:4, 26:20
**material** [10] - 7:25, 19:5, 19:16, 19:17, 22:9, 23:1, 23:23, 26:16, 26:23, 26:25
**matter** [1] - 34:19
**matters** [1] - 30:7
**maximum** [5] - 13:5, 13:10, 13:13, 13:21, 16:7
**mean** [1] - 24:1
**means** [1] - 29:18
**medication** [2] - 9:21, 10:3
**medications** [1] - 10:8
**meeting** [2] - 6:15, 6:16
**mega.NZ** [2] - 21:19, 22:7
**members** [3] - 19:15, 23:4, 23:21
**mental** [1] - 9:11
**mention** [1] - 13:1
**message** [2] - 19:19, 23:24
**messaged** [2] - 19:25, 23:11
**messages** [5] - 24:13, 25:25, 26:3, 26:7, 26:15
**method** [1] - 6:2
**Miami** [5] - 1:25, 1:25, 6:17, 34:24, 34:24
**Michigan** [1] - 22:23
**Mickey** [2] - 19:13, 21:7
**middle** [1] - 25:22
**MIDDLEBROOKS** [1] - 1:12
**might** [1] - 33:11
**milligrams** [1] - 10:6
**mind** [1] - 28:20
**minimum** [4] - 12:21, 12:24, 13:4, 13:9
**Minor** [43] - 19:9,

19:11, 19:20, 19:21, 19:22, 19:24, 20:3, 20:8, 20:9, 20:11, 20:18, 20:24, 21:2, 21:5, 21:20, 22:16, 22:19, 23:8, 23:14, 23:25, 24:9, 24:14, 24:18, 24:20, 24:23, 25:3, 25:4, 25:16, 25:21, 25:24, 26:1, 26:4, 26:6, 26:9, 26:10, 26:14, 26:17, 26:18, 26:23, 26:24, 27:9, 27:19
**minor** [11] - 7:23, 24:16, 29:5, 29:8, 29:19, 29:21, 29:24, 29:25, 30:7, 30:13, 30:16
**minors** [1] - 7:25
**minutes** [2] - 19:15, 32:13
**Miranda** [2] - 22:2, 22:12
**misconduct** [1] - 15:3
**misrepresented** [1] - 15:2
**Missing** [1] - 27:3
**moment** [1] - 28:3
**momentarily** [1] - 8:15
**months** [1] - 21:3
**morning** [9] - 2:5, 2:9, 2:10, 2:11, 2:12, 2:15, 2:16, 4:9, 23:24
**most** [1] - 11:11
**mother** [4] - 20:8, 20:25, 21:4, 26:4
**motion** [3] - 11:15, 12:4, 16:12
**Mouse** [2] - 19:13, 21:7
**mouth** [2] - 19:14, 20:13
**move** [1] - 8:23
**MR** [32] - 2:5, 2:12, 2:25, 3:16, 4:4, 4:8, 8:10, 8:14, 8:21, 11:24, 12:7, 15:17, 15:24, 18:10, 18:17, 28:3, 28:6, 28:14, 28:17, 28:18, 28:25, 32:7, 32:9, 32:23, 32:25, 33:8, 33:19, 34:1, 34:3, 34:9, 34:10, 34:12
**muffled** [1] - 27:16
**mute** [1] - 15:15

## N

**naked** [1] - 19:12
**name** [3] - 21:18, 21:21, 25:24
**named** [1] - 22:7
**names** [1] - 10:5
**National** [1] - 27:2
**nature** [1] - 31:7
**need** [5] - 2:18, 4:22, 5:5, 6:25, 7:7
**networking** [2] - 18:25, 21:17
**never** [1] - 28:19
**new** [1] - 6:1
**next** [4] - 6:25, 19:13, 23:24, 25:10
**nice** [1] - 19:17
**nine** [1] - 14:13
**NO** [1] - 1:3
**North** [2] - 1:25, 34:24
**note** [2] - 15:19, 27:8
**notes** [2] - 12:1, 15:19
**nothing** [1] - 4:14
**notwithstanding** [1] - 12:2
**November** [1] - 26:2
**nude** [1] - 23:11
**Number** [1] - 2:3
**number** [2] - 2:17, 26:1

## O

**oath** [2] - 4:11, 4:25
**objections** [1] - 31:24
**obligated** [1] - 12:15
**obligation** [1] - 14:9
**obscene** [1] - 7:25
**observed** [2] - 19:6, 22:24
**obtained** [2] - 8:6, 22:7
**occasion** [1] - 6:17
**occasionally** [1] - 19:17
**occur** [1] - 27:4
**OF** [5] - 1:1, 1:4, 1:11, 1:16, 1:19
**offender** [2] - 16:21, 16:22
**offense** [3] - 8:6, 15:1, 31:10
**offenses** [2] - 8:5, 31:12
**office** [4] - 2:14, 14:25, 18:5, 31:17
**Office** [4] - 1:16, 1:20, 20:22, 22:11
**Official** [1] - 1:24

**Oklahoma** [2] - 24:18, 33:10
**old** [4] - 21:3, 23:19, 23:22, 29:6
**ON** [2] - 1:16, 1:19
**one** [25] - 3:21, 4:18, 6:10, 10:23, 11:10, 12:20, 18:9, 18:10, 18:24, 19:2, 19:6, 19:19, 19:22, 24:11, 28:3, 28:18, 28:21, 29:5, 29:23, 30:6, 30:18, 30:24, 32:12, 33:9
**One** [20] - 19:9, 19:11, 19:20, 19:21, 19:22, 19:24, 20:3, 20:9, 20:24, 21:2, 21:5, 21:20, 22:17, 22:19, 23:14, 24:1, 24:9, 26:24, 27:9, 27:20
**One's** [4] - 20:8, 20:12, 20:19, 26:4
**online** [3] - 18:24, 21:19, 26:19
**open** [1] - 20:12
**opportunity** [1] - 27:7
**option** [1] - 6:19
**oral** [1] - 18:11
**order** [3] - 2:1, 8:18, 12:4
**ordered** [1] - 14:14
**orders** [2] - 14:8, 16:6
**original** [2] - 20:20, 23:2
**originally** [1] - 20:8
**otherwise** [1] - 12:23
**ought** [1] - 31:22
**outlined** [4] - 18:18, 29:3, 29:15, 30:4
**outstanding** [2] - 8:17, 14:8
**own** [2] - 17:10, 18:6

## P

**p.m** [3] - 23:10, 23:15, 24:7
**pacifier** [3] - 19:13, 20:13, 21:8
**Pages** [1] - 1:9
**PALM** [1] - 1:2
**Palm** [4] - 1:18, 1:21, 20:22, 22:11
**paragraph** [13] - 10:23, 11:9, 12:1, 12:5, 12:10, 13:25, 14:3, 14:21, 15:6, 15:7, 15:19, 16:1, 16:19

**paragraphs** [2] - 14:13, 14:16
**parents** [1] - 26:11
**part** [3] - 10:21, 16:1, 16:4
**particular** [1] - 23:12
**passed** [1] - 12:19
**password** [3] - 21:25, 22:2, 22:3
**patrol** [1] - 22:1
**pause** [1] - 28:5
**pay** [1] - 14:14
**payable** [2] - 14:1, 14:7
**penalties** [2] - 13:3, 13:22
**pending** [1] - 34:5
**penis** [3] - 19:23, 23:16, 24:10
**Pennsylvania** [1] - 20:7
**per** [2] - 24:22, 25:11
**performer** [1] - 29:24
**performs** [1] - 6:8
**perjury** [1] - 5:2
**permit** [1] - 3:3
**permitted** [1] - 16:7
**person** [10] - 5:9, 5:13, 21:13, 25:18, 29:5, 32:10, 32:18, 33:2, 33:10
**persuaded** [1] - 29:7
**phone** [19] - 8:3, 15:9, 15:10, 20:4, 20:6, 21:13, 21:14, 21:23, 21:24, 22:5, 24:12, 24:17, 24:24, 25:23, 25:25, 26:1, 26:6, 29:18
**phones** [4] - 15:23, 21:8, 21:9, 26:22
**photo** [1] - 21:8
**photograph** [3] - 23:14, 23:19, 29:10
**photographs** [1] - 22:18
**physician** [1] - 9:18
**picture** [3] - 19:7, 20:3, 20:11
**pillow** [2] - 19:13, 21:7
**pink** [1] - 3:7
**plea** [26] - 2:19, 3:1, 3:16, 8:12, 8:15, 8:16, 8:20, 8:23, 10:13, 10:15, 11:10, 11:11, 11:14, 11:15, 11:16, 16:2, 16:4, 17:2, 18:2, 18:19, 31:7, 31:8, 31:9, 31:11, 31:15

**PLEA** [1] - 1:11
**plead** [10] - 9:1, 9:4, 10:23, 11:6, 17:4, 17:7, 17:13, 17:14, 27:23, 31:1
**pleading** [3] - 16:20, 17:10, 17:24
**point** [5] - 6:14, 9:6, 25:15, 33:7, 34:4
**points** [1] - 13:25
**pornography** [19] - 7:16, 7:17, 7:18, 7:19, 7:21, 7:22, 8:1, 11:1, 11:3, 11:4, 19:3, 26:23, 27:19, 27:20, 29:2, 29:14, 30:3, 30:9
**possessed** [2] - 27:18, 30:6
**possession** [3] - 7:19, 11:4, 30:2
**possible** [3] - 3:23, 13:3, 13:22
**possibly** [1] - 3:20
**post** [5] - 19:7, 19:16, 22:2, 22:12, 24:8
**post-Miranda** [2] - 22:2, 22:12
**posted** [8] - 19:15, 20:11, 23:5, 23:7, 23:10, 23:15, 23:18, 24:9
**postings** [1] - 19:18
**potential** [1] - 13:21
**Powers** [1] - 34:22
**POWERS** [2] - 1:23, 34:23
**pre** [1] - 23:11
**pre-teen** [1] - 23:11
**predicated** [1] - 19:4
**prefer** [2] - 4:18, 5:12
**prepare** [1] - 31:20
**prepared** [5] - 5:11, 6:13, 6:23, 7:14, 8:19
**prepubescent** [2] - 19:8, 19:16
**present** [5] - 2:7, 10:3, 17:19, 20:24, 31:18
**presented** [2] - 5:23, 6:4
**pretrial** [1] - 34:5
**print** [2] - 3:21, 3:24
**printed** [1] - 33:23
**private** [4] - 19:19, 20:13, 23:11, 23:24
**private-messaged** [1] - 23:11
**privately** [1] - 19:1
**probable** [1] - 6:7

**probation** [2] - 14:25, 31:17
**procedures** [1] - 3:5
**proceed** [3] - 7:7, 8:19, 18:16
**proceedings** [2] - 28:5, 34:19
**Proceedings** [1] - 34:14
**proceeds** [1] - 8:6
**produce** [1] - 28:21
**produced** [2] - 22:19, 27:19
**producing** [2] - 29:9, 29:19
**production** [8] - 7:16, 7:17, 7:22, 8:1, 10:25, 26:16, 29:1, 30:12
**proffer** [2] - 18:9, 18:11
**profits** [1] - 8:5
**promise** [1] - 17:4
**promised** [1] - 25:18
**promote** [1] - 8:4
**property** [1] - 8:4
**prosecution** [2] - 5:2, 6:12
**prosecutor** [2] - 18:12, 27:13
**protected** [1] - 21:25
**protection** [2] - 5:10, 6:11
**prove** [6] - 17:15, 20:2, 27:14, 29:2, 29:14, 30:3
**proven** [3] - 18:13, 18:21, 27:5
**provided** [6] - 7:12, 10:13, 20:15, 20:18, 22:2, 22:3
**provision** [1] - 16:10
**provisions** [2] - 14:18, 17:1
**Public** [1] - 1:20
**purpose** [2] - 8:25, 29:9
**pursuant** [5] - 5:25, 12:5, 26:13
**put** [1] - 33:14

## Q

**quarantine** [3] - 4:9, 7:2, 10:15
**questions** [4] - 5:1, 8:24, 8:25, 9:5
**quite** [1] - 22:8
**quote** [14] - 20:9, 20:10, 21:23, 21:24,

23:25, 24:1, 24:2, 24:5, 24:6, 25:5, 25:7, 25:8, 25:10

## R

**radar** [1] - 33:14
**raise** [2] - 4:12, 11:12
**range** [4] - 12:15, 12:16, 12:17, 16:9
**rather** [3] - 6:14, 6:19, 32:11
**Raton** [1] - 20:19
**read** [2] - 7:14, 8:8
**reading** [1] - 8:10
**real** [2] - 25:6, 29:5
**reason** [2] - 9:3, 13:1
**reasonable** [2] - 17:16, 18:21
**received** [1] - 34:1
**receiving** [2] - 25:4, 25:11
**recently** [1] - 6:15
**recommend** [2] - 14:22, 31:21
**record** [1] - 27:8
**recorded** [2] - 22:11, 24:19
**recovered** [1] - 25:24
**rectum** [1] - 23:16
**reduced** [1] - 14:22
**refused** [1] - 24:3
**regard** [1] - 6:22
**regarding** [1] - 27:5
**registered** [1] - 16:21
**registration** [1] - 16:22
**relate** [1] - 14:6
**related** [2] - 12:19, 14:9
**relating** [1] - 14:19
**relationship** [1] - 26:20
**release** [4] - 13:7, 13:12, 13:15, 13:19
**remain** [2] - 34:4, 34:7
**remaining** [1] - 12:11
**remand** [1] - 34:4
**remove** [1] - 4:20
**replied** [1] - 23:13
**report** [2] - 31:20, 31:24
**REPORTED** [1] - 1:23
**reporter** [1] - 5:6
**Reporter** [1] - 1:24
**represent** [1] - 27:9
**representation** [2] - 7:11, 28:12
**represented** [1] - 7:8
**request** [8] - 8:17,

20:14, 20:17, 24:22, 25:11, 26:20, 26:21, 32:10
**requests** [1] - 25:2
**required** [3] - 14:24, 16:20, 21:5
**requirements** [1] - 16:23
**reserves** [1] - 12:3
**reserving** [1] - 16:11
**residence** [1] - 20:23
**respect** [9] - 9:19, 10:1, 11:10, 13:4, 13:9, 13:13, 14:10, 16:17, 32:2
**responded** [3] - 19:17, 20:17, 24:1
**response** [2] - 20:14, 27:15
**responsibility** [1] - 14:23
**restitution** [5] - 14:8, 14:14, 14:15, 14:19, 16:6
**result** [3] - 5:8, 16:8, 16:20
**return** [1] - 5:24
**revealed** [6] - 19:11, 21:13, 22:5, 22:18, 26:3, 26:10
**review** [1] - 10:20
**reviewed** [3] - 10:15, 14:18, 17:1
**rights** [6] - 9:3, 16:5, 16:13, 17:22, 17:25, 18:4
**Robert** [3] - 2:3, 2:13, 31:5
**ROBERT** [1] - 1:7
**room** [2] - 4:19, 19:3
**roughly** [1] - 23:2
**RPR** [1] - 1:23, 34:23
**RSolove99** [2] - 19:6, 22:24
**run** [1] - 13:17
**running** [1] - 25:20

## S

**S7** [1] - 25:23
**S9** [5] - 15:9, 21:11, 21:22, 24:12, 24:24
**Samsung** [2] - 15:8, 15:9
**satisfaction** [1] - 28:7
**satisfied** [5] - 5:18, 7:11, 14:9, 16:17, 28:11
**scanned** [1] - 33:23
**scene** [2] - 21:9, 22:1

**Scheduled** [1] - 1:8
**scheduled** [1] - 4:8
**Schiller** [8] - 2:6, 3:17, 11:20, 15:13, 15:15, 18:8, 28:1, 33:24
**SCHILLER** [18] - 1:16, 2:5, 11:24, 12:7, 15:17, 15:24, 18:10, 18:17, 28:3, 28:6, 28:14, 28:18, 28:25, 32:23, 33:8, 34:3, 34:9, 34:12
**school** [3] - 9:9, 9:10, 25:22
**SCOTT** [1] - 1:19
**Scott** [1] - 2:12
**screenshots** [1] - 26:5
**screenshotted** [1] - 26:8
**scrivener's** [1] - 15:20
**search** [2] - 20:23, 26:13
**second** [2] - 5:21, 30:9
**section** [1] - 11:25
**Security** [4] - 2:7, 20:15, 20:21, 22:21
**see** [2] - 11:21, 34:13
**seeing** [1] - 19:19
**seeks** [1] - 8:2
**seem** [1] - 11:21
**seized** [1] - 21:16
**send** [5] - 3:5, 3:7, 3:24, 4:3, 33:21
**sent** [10] - 19:19, 20:2, 22:14, 22:15, 23:13, 23:24, 24:22, 26:8, 33:22, 33:24
**sentence** [13] - 11:25, 12:3, 12:13, 12:16, 12:21, 12:24, 13:17, 13:18, 16:3, 16:5, 16:6, 16:14, 32:2
**sentencing** [5] - 5:14, 11:13, 12:12, 12:15, 12:19, 14:1, 16:9, 31:21, 32:1, 32:5, 32:10, 32:16, 34:5, 34:6
**Sentencing** [1] - 12:14
**series** [1] - 26:8
**set** [1] - 12:21
**seven** [4] - 14:3, 16:19, 23:21, 26:4
**several** [4] - 7:15, 8:24, 19:15, 27:2
**sex** [3] - 16:21, 16:22, 25:18
**sexual** [10] - 7:23, 19:5, 19:16, 22:9,

23:1, 23:5, 23:23, 26:16, 26:23, 26:25
**sexually** [9] - 19:23, 20:10, 29:8, 29:20, 29:22, 29:25, 30:8, 30:13, 30:16
**shall** [1] - 14:7
**share** [2] - 19:2, 22:9
**shared** [1] - 24:18
**Sheriff's** [2] - 20:22, 22:11
**shortly** [1] - 23:9
**show** [1] - 24:5
**showed** [1] - 29:25
**showing** [1] - 20:12
**shows** [1] - 29:21
**sic** [1] - 25:23
**side** [1] - 20:3
**side-by-side** [1] - 20:3
**sign** [8] - 3:2, 3:4, 3:10, 3:22, 4:4, 4:6, 7:3, 7:4
**signed** [6] - 2:20, 3:9, 3:17, 7:1, 10:14, 33:23
**signing** [1] - 2:25
**similar** [2] - 22:8, 22:22
**similarly** [1] - 7:17
**six** [2] - 13:25, 23:21
**smiley** [1] - 24:2
**social** [2] - 18:25, 21:17
**Solove** [57] - 2:3, 2:13, 2:16, 3:3, 3:22, 4:11, 4:17, 8:22, 16:1, 18:12, 19:17, 19:20, 19:21, 19:24, 20:2, 20:7, 20:11, 20:16, 20:24, 21:9, 22:2, 22:3, 22:10, 22:12, 22:25, 23:4, 23:7, 23:10, 23:11, 23:12, 23:13, 23:15, 23:16, 23:22, 23:25, 24:1, 24:3, 24:9, 24:13, 24:20, 24:22, 24:23, 25:4, 25:11, 25:18, 26:5, 26:8, 26:10, 26:11, 26:14, 27:13, 28:11, 30:20, 31:5, 31:17, 32:9, 33:21
**SOLOVE** [1] - 1:7
**solove** [3] - 22:15, 24:4, 25:18
**Solove's** [15] - 19:8, 19:20, 19:23, 21:12, 21:22, 22:21, 24:12, 24:16, 24:24, 25:2, 25:23, 26:6, 26:16,

26:20, 26:22
**someone** [1] - 4:20
**sometime** [1] - 22:19
**somewhere** [1] - 3:15
**sorry** [4] - 15:17, 28:18, 28:19, 32:7
**sort** [1] - 3:7
**Southern** [1] - 27:4
**SOUTHERN** [1] - 1:1
**Special** [1] - 2:7
**special** [4] - 14:1, 14:3, 14:7, 14:10
**SPECIAL** [1] - 2:11
**specific** [1] - 21:18
**specific-name** [1] - 21:18
**specifically** [1] - 22:15
**spread** [1] - 20:12
**squirt** [1] - 25:13
**squirting** [1] - 25:12
**St** [1] - 21:4
**Stafford** [1] - 2:8
**STAFFORD** [1] - 2:11
**stand** [1] - 2:23
**stands** [1] - 6:10
**Star** [4] - 21:10, 21:12, 25:23
**start** [1] - 4:10
**state** [2] - 16:22, 29:12
**statement** [1] - 5:2
**STATES** [3] - 1:1, 1:4, 1:13
**States** [8] - 1:16, 1:24, 2:2, 2:6, 5:22, 31:5, 32:23, 34:23
**stating** [1] - 23:18
**status** [1] - 34:4
**statute** [1] - 16:8
**STENOGRAPHICAL LY** [1] - 1:23
**step** [1] - 6:25
**still** [3] - 9:18, 11:17, 33:10
**stitch** [1] - 21:5
**stop** [1] - 9:6
**storage** [1] - 21:19
**stranger** [1] - 26:12
**stuff** [1] - 24:2
**subject** [1] - 16:22
**submit** [1] - 3:11
**Suite** [2] - 1:17, 1:21
**summary** [1] - 8:7
**superseding** [8] - 2:21, 7:14, 8:7, 8:13, 8:20, 10:24, 12:11, 18:20
**supervised** [4] - 13:7, 13:12, 13:15, 13:19
**supported** [1] - 31:9

**suppress** [3] - 11:15, 12:4, 16:12
**surgery** [1] - 21:5
**surrounding** [1] - 15:1
**swear** [1] - 4:13

## T

**tank** [1] - 21:24
**tears** [1] - 21:6
**teen** [1] - 23:11
**teenage** [1] - 23:7
**ten** [1] - 24:20
**Tennessee** [1] - 18:24
**term** [9] - 13:4, 13:5, 13:6, 13:9, 13:10, 13:11, 13:13, 13:14, 25:6
**terms** [1] - 28:9
**testify** [4] - 17:20, 17:21, 32:13
**testimony** [1] - 4:13
**text** [2] - 25:25, 26:3
**Text** [2] - 24:24, 26:14
**THE** [132] - 1:12, 2:2, 2:10, 2:15, 3:12, 3:24, 4:2, 4:7, 4:10, 4:16, 4:17, 4:23, 4:24, 5:4, 5:5, 5:14, 5:15, 5:16, 5:17, 5:20, 5:21, 6:21, 6:22, 6:24, 6:25, 7:6, 7:7, 7:10, 7:11, 7:13, 7:14, 8:12, 8:19, 8:22, 9:8, 9:9, 9:10, 9:11, 9:13, 9:14, 9:15, 9:16, 9:17, 9:18, 9:20, 9:21, 9:23, 9:24, 10:2, 10:3, 10:4, 10:5, 10:6, 10:7, 10:9, 10:10, 10:12, 10:13, 10:17, 10:18, 10:19, 10:20, 11:8, 11:9, 11:19, 11:20, 12:6, 12:8, 12:25, 13:1, 13:24, 13:25, 14:12, 14:13, 14:20, 14:21, 15:5, 15:6, 15:12, 15:13, 15:22, 15:25, 16:15, 16:16, 16:18, 16:19, 16:25, 17:1, 17:6, 17:7, 17:9, 17:10, 17:12, 17:13, 17:23, 17:24, 18:1, 18:2, 18:7, 18:8, 18:12, 27:12, 27:15, 27:16, 27:17, 27:18, 27:22, 27:23, 27:25, 28:1, 28:9, 28:13,

28:15, 28:23, 30:20, 30:22, 30:23, 30:25, 31:1, 31:3, 31:4, 32:4, 32:5, 32:17, 32:21, 32:24, 33:1, 33:15, 33:20, 34:2, 34:7, 34:11
**therefore** [1] - 31:11
**three** [5] - 12:10, 14:22, 29:11, 29:21, 30:12
**throughout** [1] - 16:23
**Thursday** [2] - 32:20, 32:21
**title** [1] - 15:8
**today** [3] - 2:18, 3:13, 34:2
**total** [3] - 13:17, 13:21, 14:2
**touching** [1] - 23:16
**traceable** [1] - 8:5
**trade** [2] - 19:3, 23:1
**transcription** [1] - 34:18
**transferred** [1] - 22:10
**transferring** [1] - 7:25
**transported** [3] - 21:4, 29:12, 30:10
**treated** [1] - 9:11
**trends** [1] - 33:6
**trial** [12] - 8:17, 17:15, 17:21, 17:25, 18:13, 18:14, 18:18, 27:6, 27:14, 29:3, 29:15, 30:3
**truth** [3] - 4:14
**try** [1] - 33:20
**Tuesday** [1] - 1:6
**two** [21] - 6:8, 9:17, 11:9, 12:5, 19:21, 21:8, 21:9, 22:23, 22:24, 23:2, 23:7, 23:10, 23:11, 23:12, 23:24, 24:4, 24:10, 24:16, 26:22, 29:7, 33:8
**Two** [17] - 23:8, 24:15, 24:19, 24:21, 24:24, 25:3, 25:4, 25:16, 25:21, 26:1, 26:6, 26:16, 26:17, 26:18, 26:24, 27:9, 27:20
**Two's** [3] - 25:24, 26:9, 26:11

## U

**U.C** [14] - 18:24, 19:2, 19:6, 19:19, 19:22, 22:22, 22:23, 22:24,

23:11, 23:12, 23:24, 24:1, 24:3, 24:11
**U.S** [1] - 6:3
**uncomfortableness** [1] - 25:17
**under** [8] - 4:25, 5:22, 9:18, 10:10, 11:16, 16:2, 22:6, 30:18
**undercover** [1] - 18:23
**underneath** [1] - 15:19
**understood** [1] - 11:22
**unintelligible** [1] - 27:15
**UNITED** [3] - 1:1, 1:4, 1:13
**united** [1] - 1:24
**United** [7] - 1:16, 2:2, 2:6, 5:22, 31:5, 32:23, 34:23
**unknown** [3] - 23:15, 23:16, 23:20
**unless** [3] - 14:25, 16:7, 28:20
**unlocked** [1] - 21:14
**unquote** [1] - 23:25
**up** [12] - 4:22, 12:17, 13:6, 13:11, 13:12, 13:14, 13:20, 16:5, 16:13, 17:24, 24:10, 25:7
**upgrading** [1] - 33:4
**upward** [1] - 16:8
**user** [2] - 19:6, 20:15, 22:24
**users** [4] - 19:1, 22:9, 22:14, 23:22
**utilized** [1] - 19:3, 23:1

## V

**vagina** [1] - 20:12
**vaginal** [1] - 21:6
**valuable** [1] - 18:4
**variance** [1] - 16:9
**vary** [2] - 12:17, 12:20
**versus** [2] - 2:3, 31:5
**VIA** [1] - 1:14
**via** [1] - 34:19
**Victim** [43] - 19:9, 19:11, 19:20, 19:21, 19:22, 19:24, 20:3, 20:8, 20:9, 20:11, 20:18, 20:24, 21:2, 21:5, 21:20, 22:17, 22:19, 23:8, 23:14, 24:1, 24:9, 24:15, 24:18, 24:21, 24:24, 25:3, 25:4, 25:16,

25:21, 25:24, 26:1, 26:4, 26:6, 26:9, 26:10, 26:14, 26:17, 26:18, 26:23, 26:24, 27:9, 27:20
**victim** [4] - 14:9, 14:16, 24:13, 24:16
**victim's** [1] - 26:21
**victims** [2] - 14:15, 33:9
**video** [13] - 2:8, 2:13, 5:7, 23:15, 24:9, 24:13, 25:4, 25:10, 25:11, 29:10, 32:11, 33:11, 33:12
**videos** [11] - 19:2, 19:21, 19:22, 22:6, 22:15, 22:19, 23:7, 24:18, 24:21, 25:2, 26:20
**violation** [1] - 11:5
**virus** [2] - 5:8, 6:16
**visual** [10] - 8:3, 29:9, 29:11, 29:17, 29:19, 29:24, 30:7, 30:12, 30:14, 30:15
**voluntary** [2] - 31:9, 31:16
**vote** [1] - 18:5
**vs** [1] - 1:6

## W

**waist** [1] - 19:12
**wait** [2] - 5:12, 25:13
**waiting** [1] - 22:1
**waive** [1] - 8:10
**waiver** [13] - 2:22, 2:23, 3:2, 4:4, 7:4, 11:21, 11:23, 11:25, 12:1, 12:2, 12:8, 31:14, 31:15
**waives** [1] - 11:11
**wants** [1] - 32:18
**warrant** [2] - 20:23, 26:13
**washing** [1] - 25:20
**website** [1] - 22:7
**week** [1] - 33:5
**weeks** [2] - 23:2, 24:10
**welcome** [1] - 12:7
**WEST** [1] - 1:2
**West** [2] - 1:18, 1:21
**wet** [1] - 25:6
**WhatsApp** [3] - 21:18, 24:13, 24:25
**whole** [1] - 4:14
**wish** [2] - 8:8, 25:6
**witness** [1] - 32:12

**witnesses** [2] - 17:18, 17:19
**word** [2] - 25:10, 25:14
**Wow** [1] - 25:12
**written** [4] - 17:2, 18:8, 31:20, 31:24

## X

**Xbox** [1] - 21:20

## Y

**years** [14] - 9:17, 13:5, 13:6, 13:7, 13:10, 13:11, 13:12, 13:14, 13:15, 13:18, 23:19, 23:21, 29:6, 30:19

## Z

**ZOOM** [1] - 1:14
**Zoom** [6] - 5:9, 5:12, 5:19, 27:11, 33:16, 34:20

**DE - 68**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § **JUDGMENT IN A CRIMINAL CASE** |
| | § |
| v. | § |
| | § Case Number: **9:20-CR-80025-DMM(1)** |
| **ROBERT DANIEL SOLOVE** | § USM Number: **26203-104** |
| | § |
| | § Counsel for Defendant: **Scott G. Berry** |
| | § Counsel for United States: **Gregory Schiller** |

## THE DEFENDANT:

| | | |
|---|---|---|
| ☒ | pleaded guilty to count(s) | **One through Five of the Superseding Information** |
| ☐ | pleaded guilty to count(s) before a U.S. Magistrate Judge, which was accepted by the court. | |
| ☐ | pleaded nolo contendere to count(s) which was accepted by the court | |
| ☐ | was found guilty on count(s) after a plea of not guilty | |

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 18:2251(A) and (E) - Selling Or Buying Of Children | 01/29/2020 | 1s |
| 18:2251(A) and (E) - Selling Or Buying Of Children | 01/21/2020 | 2s |
| 18:2252(A)(2) and (B)(1) - Activities Re Material Constituting/Containing Child Porno | 01/30/2020 | 3s |
| 18:2252(A)(2) and (B)(1) - Activities Re Material Constituting/Containing Child Porno | 02/14/2020 | 4s |
| 18:2252(A)(4)(B) & (B)(2) - Activities Re Material Constituting/Containing Child Porno | 02/19/2020 | 5s |

The defendant is sentenced as provided in pages 2 through 8 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐  The defendant has been found not guilty on count(s)

☒  Remaining Count(s)   ☐ is   ☒ are dismissed on the motion of the United States

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

**May 20, 2021**
Date of Imposition of Judgment

Signature of Judge

**DONALD M. MIDDLEBROOKS**
**UNITED STATES DISTRICT JUDGE**
Name and Title of Judge

**May 20, 2021**
Date

AO 245B (Rev. FLSD 2/20) Judgment in a Criminal Case                                              Judgment -- Page 2 of 8

DEFENDANT:        ROBERT DANIEL SOLOVE
CASE NUMBER:      9:20-CR-80025-DMM(1)

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

**SIX HUNDRED (600) MONTHS. This term consists of 360 months as to Count 1s and 2s to run concurrently with each other and 240 months as to Count 3s, 4s and 5s, to run concurrently with each other and consecutively to Counts 1s and 2s.**

☒   The court makes the following recommendations to the Bureau of Prisons:
   The Defendant be placed in a facility that offers Sex Offender Treatment.
   The Defendant be designated to a facility in or as close to Pennsylvania as possible.
   Due to the nature of Defendant's crimes, it is recommended to the Bureau of Prisons that they take the necessary steps to
   secure his safety.


☐   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

      ☐   at                         ☐   a.m.   ☐   p.m.   on

      ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

      ☐   before 2 p.m. on
      ☐   as notified by the United States Marshal.
      ☐   as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

      Defendant delivered on _____ to

at _____, with a certified copy of this judgment.


                                                   UNITED STATES MARSHAL

                                                            By
                                                   DEPUTY UNITED STATES MARSHAL

Case 9:20-cr-80025-DMM   Document 68   Entered on FLSD Docket 05/21/2021   Page 3 of 8
USCA11 Case: 21-11747   Document: 22   Date Filed: 08/12/2021   Page: 128 of 137
AO 245B (Rev. FLSD 2/20) Judgment in a Criminal Case                                Judgment -- Page 3 of 8

DEFENDANT:          ROBERT DANIEL SOLOVE
CASE NUMBER:        9:20-CR-80025-DMM(1)

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of: **LIFE.**

# MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.

2.  You must not unlawfully possess a controlled substance.

3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

    ☐   The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. (*check if applicable*)

4.  ☐   You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*

5.  ☒   You must cooperate in the collection of DNA as directed by the probation officer. (*check if applicable*)

6.  ☐   You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. (*check if applicable*)

7.  ☐   You must participate in an approved program for domestic violence. (*check if applicable*)

You must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

AO 245B (Rev. FLSD 2/20) Judgment in a Criminal Case                                    Judgment -- Page 4 of 8

DEFENDANT:          ROBERT DANIEL SOLOVE
CASE NUMBER:        9:20-CR-80025-DMM(1)

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. I understand additional information regarding these conditions is available at www.flsp.uscourts.gov.

Defendant's Signature  _____        Date  _____

Case 9:20-cr-80025-DMM  Document 68  Entered on FLSD Docket 05/21/2021  Page 5 of 8
USCA11 Case: 21-11747  Document: 22  Date Filed: 08/12/2021  Page: 130 of 137
AO 245B (Rev. FLSD 2/20) Judgment in a Criminal Case                                    Judgment -- Page 5 of 8

DEFENDANT:          ROBERT DANIEL SOLOVE
CASE NUMBER:        9:20-CR-80025-DMM(1)

## SPECIAL CONDITIONS OF SUPERVISION

**Adam Walsh Act Search Condition:** The defendant shall submit to the U.S. Probation Officer conducting periodic unannounced searches of the defendant's person, property, house, residence, vehicles, papers, computer(s), other electronic communication or data storage devices or media, include retrieval and copying of all data from the computer(s) and any internal or external peripherals and effects at any time, with or without warrant by any law enforcement or probation officer with reasonable suspicion concerning unlawful conduct or a violation of a condition of probation or supervised release. The search may include the retrieval and copying of all data from the computer(s) and any internal or external peripherals to ensure compliance with other supervision conditions and/or removal of such equipment for the purpose of conducting a more thorough inspection; and to have installed on the defendant's computer(s), at the defendant's expense, any hardware or software systems to monitor the defendant's computer use.

**Computer Modem Restriction:** The defendant shall not possess or use a computer that contains an internal, external or wireless modem without the prior approval of the Court.

**Computer Possession Restriction:** The defendant shall not possess or use any computer; except that the defendant may, with the prior approval of the Court, use a computer in connection with authorized employment.

**Data Encryption Restriction:** The defendant shall not possess or use any data encryption technique or program.

**Mental Health Treatment:** The defendant shall participate in an approved inpatient/outpatient mental health treatment program. The defendant will contribute to the costs of services rendered (co-payment) based on ability to pay or availability of third party payment.

**No Contact with Minors:** The defendant shall have no personal, mail, telephone, or computer contact with children/minors under the age of 18 or with the victim.

**No Involvement in Youth Organizations:** The defendant shall not be involved in any children's or youth organization.

**Permissible Computer Examination:** The defendant shall submit to the U.S. Probation Officer conducting periodic unannounced examinations of the defendant's computer(s) equipment which may include retrieval and copying of all data from the computer(s) and any internal or external peripherals to ensure compliance with this condition and/or removal of such equipment for the purpose of conducting a more thorough inspection; and to have installed on the defendant's computer(s), at the defendant's expense, any hardware or software systems to monitor the defendant's computer use.

**Restricted from Possession of Sexual Materials:** The defendant shall not buy, sell, exchange, possess, trade, or produce visual depictions of minors or adults engaged in sexually explicit conduct. The defendant shall not correspond or communicate in person, by mail, telephone, or computer, with individuals or companies offering to buy, sell, trade, exchange, or produce visual depictions of minors or adults engaged in sexually explicit conduct.

Case 9:20-cr-80025-DMM  Document 68  Entered on FLSD Docket 05/21/2021  Page 6 of 8
USCA11 Case: 21-11747  Document: 22  Date Filed: 08/12/2021  Page: 131 of 137
AO 245B (Rev. FLSD 2/20) Judgment in a Criminal Case  Judgment -- Page 6 of 8

DEFENDANT:  ROBERT DANIEL SOLOVE
CASE NUMBER:  9:20-CR-80025-DMM(1)

**Sex Offender Registration:** The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense.

**Sex Offender Treatment:** The defendant shall participate in a sex offender treatment program to include psychological testing and polygraph examination. Participation may include inpatient/outpatient treatment, if deemed necessary by the treatment provider. The defendant will contribute to the costs of services rendered (co-payment) based on ability to pay or availability of third party payment.

**Unpaid Restitution, Fines, or Special Assessments:** If the defendant has any unpaid amount of restitution, fines, or special assessments, the defendant shall notify the probation officer of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay.

Case 9:20-cr-80025-DMM   Document 68   Entered on FLSD Docket 05/21/2021   Page 7 of 8
USCA11 Case: 21-11747   Document: 22   Date Filed: 08/12/2021   Page: 132 of 137
AO 245B (Rev. FLSD 2/20) Judgment in a Criminal Case                                         Judgment -- Page 7 of 8

DEFENDANT:         ROBERT DANIEL SOLOVE
CASE NUMBER:       9:20-CR-80025-DMM(1)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments page.

|        | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|--------|-----------|-------------|------|------------------|-------------------|
| TOTALS | $500.00 | $1,337,800.00 | $.00 | | |

☐ The determination of restitution is deferred until    An *Amended Judgment in a Criminal Case (AO245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

$1,287,800.00 to Minor Victim 1
$50,000.00 to Minor Victim 2

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

☒ Restitution amount ordered pursuant to the Stipulation Regarding Restitution $      1,337,800.00

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on the schedule of payments page may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

 ☒ the interest requirement is waived for the  ☐ fine   ☒ restitution

 ☐ the interest requirement for the    ☐ fine   ☐ restitution is modified as follows:

Restitution with Imprisonment - It is further ordered that the defendant shall pay restitution in the amount of **$1,337,800.00**. During the period of incarceration, payment shall be made as follows: (1) if the defendant earns wages in a Federal Prison Industries (UNICOR) job, then the defendant must pay 50% of wages earned toward the financial obligations imposed by this Judgment in a Criminal Case; (2) if the defendant does not work in a UNICOR job, then the defendant must pay a minimum of $25.00 per quarter toward the financial obligations imposed in this order.

Upon release of incarceration, the defendant shall pay restitution at the rate of 10% of monthly gross earnings, until such time as the court may alter that payment schedule in the interests of justice. The U.S. Bureau of Prisons, U.S. Probation Office and U.S. Attorney's Office shall monitor the payment of restitution and report to the court any material change in the defendant's ability to pay. These payments do not preclude the government from using other assets or income of the defendant to satisfy the restitution obligations.

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, 18 U.S.C. §2259.
\*\* Justice for Victims of Trafficking Act of 2015, 18 U.S.C. §3014.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. FLSD 2/20) Judgment in a Criminal Case

Judgment -- Page 8 of 8

DEFENDANT:         ROBERT DANIEL SOLOVE
CASE NUMBER:       9:20-CR-80025-DMM(1)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**   ☒   Lump sum payments of $500.00 due immediately, balance due

**It is ordered that the Defendant shall pay to the United States a special assessment of $500.00 for Counts 1s, 2s, 3s, 4s and 5s , which shall be due immediately.  Said special assessment shall be paid to the Clerk, U.S. District Court. Payment is to be addressed to:**

> **U.S. CLERK'S OFFICE**
> **ATTN: FINANCIAL SECTION**
> **400 NORTH MIAMI AVENUE, ROOM 8N09**
> **MIAMI, FLORIDA 33128-7716**

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several
    See above for Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☒   The defendant shall forfeit the defendant's interest in the following property to the United States:
    **FORFEITURE of the defendant's right, title and interest in certain property is hereby ordered consistent with the plea agreement.  The United States shall submit a proposed Order of Forfeiture within three days of this proceeding.**

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

**DE - 69**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   20-80025-CR-MIDDLEBROOKS

UNITED STATES OF AMERICA,
     Plaintiff,

vs.

ROBERT DANIEL SOLOVE,
     Defendant.
_____:

**<u>NOTICE OF APPEAL</u>**

     Notice is hereby given that Robert Daniel Solove, defendant in the above named case, hereby appeals to the United States Court of Appeals for the Eleventh Circuit from the final judgment and sentence entered in this action on the 21ST day of May, 2021.

                               Respectfully submitted,

                               MICHAEL CARUSO
                               FEDERAL PUBLIC DEFENDER

                               <u>s/ *Scott Berry*</u>
                               Scott Berry
                               Assistant Federal Public Defender
                               Attorney for the Defendant
                               Florida Bar No. 0525561
                               450 South Australian Avenue, Suite 500
                               West Palm Beach, Florida 33401
                               (561) 833-6288 - Telephone
                               Scott_Berry@FD.org

1

## CERTIFICATE OF SERVICE

I HEREBY certify that on May 21, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *s/Scott Berry*
Scott Berry

## CERTIFICATE OF SERVICE

I HEREBY certify that on the 12th day of August, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and sent two copies to the Clerk of the Court via third party commercial carrier for delivery within three days.  I also certify that the foregoing document is being served this day via CM/ECF on Emily Smachetti, Chief, Appellate Division, United States Attorney's Office, 99 N.E. 4th Street, Miami, Florida 33132.

*s/Bonnie Phillips-Williams*
Bonnie Phillips-Williams