IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **21-11747-EE**

United States of America,

Appellee,

- versus -

Robert Daniel Solove,

Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

BRIEF FOR THE UNITED STATES

Juan Antonio Gonzalez
Acting United States Attorney
Attorney for Appellee
99 N.E. 4th Street
Miami, Florida 33132-2111
(305) 961-9226

Emily M. Smachetti
Chief, Appellate Division

Lisa Tobin Rubio
Deputy Chief, Appellate Division

Jason Wu
Assistant United States Attorney

Of Counsel

## United States v. Robert Daniel Solove, Case No. 21-11747-EE

## Certificate of Interested Persons

In compliance with Fed. R. App. P. 26.1 and 11th Circuit Rules 26.1 and 28-1, the undersigned certifies that the list set forth below is a complete list of the persons and entities previously included in the CIP included in the appellant's initial brief, and also includes additional persons and entities (designated in bold face) who have an interest in the outcome of this case and were omitted from the appellant's CIP.

Adler, Robert

Berry, Scott G.

Brannon, Hon. Dave Lee

Caruso, Michael

Cave, Christine

Colan, Jonathan D.

Croke, Danielle Nicole

Fajardo Orshan, Ariana

Gonzalez, Juan Antonio

LaCosta, Anthony W.

Martens, Elaine

Matthewman, Hon. William

**United States v. Robert Daniel Solove, Case No. 21-11747-EE**

**Certificate of Interested Persons (Cont'd)**

Middlebrooks, Hon. Donald M.

MV1

MV2

**Phillips-Williams, Bonnie**

Reinhart, Hon. Bruce E.

**Rubio, Lisa Tobin**

Schiller, Gregory

Smachetti, Emily M.

Solove, Robert Daniel

United States of America

**Wu, Jason**

Counsel certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

s/ *Jason Wu*
Jason Wu
Assistant United States Attorney

**Statement Regarding Oral Argument**

The United States of America respectfully suggests that the facts and legal arguments are adequately presented in the briefs and record before this Court and that the decisional process would not be significantly aided by oral argument.

# Table of Contents

**Page**:

Certificate of Interested Persons  ............................................................. c-1

Statement Regarding Oral Argument  ........................................................  i

Table of Contents  .................................................................................  iii

Table of Citations  .................................................................................iii

Statement of Jurisdiction  ........................................................................vi

Statement of the Issue..............................................................................1

Statement of the Case:

     1.     Course of Proceedings and Disposition in the Court Below  ......1

     2.     Statement of the Facts  ...............................................................5

     3.     Standards of Review  .................................................................7

Summary of the Argument  .......................................................................7

Argument and Citations of Authority:

This Court's Decision in *United States v. Trader*, 981 F.3d 961

(11th Cir. 2020), Establishes that the District Court Correctly

Denied Solove's Motion To Suppress ........................................................ 9

Conclusion ............................................................................................ 17

Certificate of Compliance ...................................................................... 18

Certificate of Service ............................................................................. 18

# Table of Citations

**<u>Cases</u>:** <span style="float:right">**<u>Page</u>:**</span>

*Carpenter v. United States,*

    138 S. Ct. 2206 (2018) ........................................................................2, *passim*

*Lawrence v. Chater,*

    516 U.S. 163 (1996) ................................................................................ 15

*Rutherford v. Crosby,*

    438 F.3d 1087 (11th Cir. 2006) ............................................................. 15

*Smith v. GTE Corp.,*

    236 F.3d 1292 (11th Cir. 2001) ............................................................. 13

*Smith v. Maryland,*

    442 U.S. 735 (1979) ............................................................................ 4, 10

*Thomas v. Wainwright,*

    788 F.2d 684 (11th Cir. 1986) ............................................................... 15

*Tippitt v. Reliance Standard Life Ins. Co.,*

    457 F.3d 1227 (11th Cir. 2006) ............................................................. 14

*United States v. Bazantes,*

    978 F.3d 1227 (11th Cir. 2020) ............................................................. 13

*United States v. Beckett,*

    369 F. App'x 52 (11th Cir. 2010) ............................................................ 3

# Table of Citations

## (continued)

**Cases:**                                                                **Page:**

*United States v. Miller,*

    425 U.S. 435 (1976)..................................................................... 10

*United States v. Steele,*

    147 F.3d 1316 (11th Cir. 1998)................................................. 13

*United States v. Trader,*

    981 F.3d 961 (11th Cir. 2020)...........................................1, *passim*

**Statutes & Other Authorities:**                                         **Page:**

18 U.S.C. § 1470 ............................................................................ 2

18 U.S.C. § 2251 ............................................................................ 1

18 U.S.C. § 2252 ............................................................................ 1

18 U.S.C. § 2422 ............................................................................ 2

18 U.S.C. § 2510 ............................................................................ 3

18 U.S.C. § 3231 ............................................................................ v

28 U.S.C. § 1291 ............................................................................ v

Fed. R. App. P. 4 ........................................................................... v

Fed. R. App. P. 26.1....................................................................... 3

Fed. R. App. P. 32 ........................................................................ 18

## Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Southern District of Florida in a criminal case. The district court entered judgment against Robert Daniel Solove on May 21, 2021 (DE68). The district court had jurisdiction to enter the judgment pursuant to 18 U.S.C. § 3231. Solove filed a timely notice of appeal on the same day (DE69); *see* Fed. R. App. P. 4(b). This Court has jurisdiction over the defendant's appeal pursuant to 28 U.S.C. § 1291.

## Statement of the Issue

Whether *United States v. Trader*, 981 F.3d 961 (11th Cir. 2020), which rejected an identically situated defendant's argument, forecloses Solove's contention that the government needed a search warrant to obtain information held by third-party companies, Kik and AT&T, pertaining to his voluntary use of those companies' services.

## Statement of the Case

### 1.   Course of Proceedings and Disposition in the Court Below

In March 2020, a Southern District of Florida grand jury returned an indictment charging Solove with five offenses related to his production and dissemination of child pornography (DE8). Subsequently, after Solove waived his right to a grand jury indictment, the United States filed a superseding information that charged Solove with the following offenses:

- Six counts of producing child pornography of minor victim 1 ("MV1") and minor victim 2 ("MV2"), in violation of 18 U.S.C. § 2251(a) and (e) (Counts 1, 2, 12, 13, 16, and 17);

- Seven counts of distributing child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) (Counts 3, 4, 7-11);

- Possession of child pornography featuring a minor under the age of 12, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Count 5);

- Knowingly engaging in a child exploitation enterprise, in violation of 18 U.S.C. § 2252A(g) (Count 6);

- Enticement of a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b) (Count 14); and

- Transferring obscene material to a minor, in violation of 18 U.S.C. § 1470 (Count 15) (DE38).

Solove moved to suppress the electronic evidence of his offenses, which derived from law enforcement's warrantless acquisition of the Internet Protocol ("IP") address through which a user named "RSolove99" or "Rob_s" accessed a third-party phone application, Kik, and distributed child pornography (DE15). The investigating agent obtained the IP address through an emergency disclosure request served upon Medialab Inc. (Kik's parent company) and then located the physical address associated with that IP address by subpoenaing the internet provider AT&T (DE15:2-3 & n.1). Solove contended that the court should extend *Carpenter v. United States*, 138 S. Ct. 2206 (2018),[1] to this situation

---

[1] *Carpenter* held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through" at least seven days of historical cell-site location information. 138 S. Ct. at 2217 & n.3. Cell-site location information consists of location records automatically generated several times a minute by a cell phone accessing its data network through cell towers. *See id.* at 2211-212. Post-*Carpenter*, law enforcement must obtain a warrant to access such information.

and hold that the authorities must obtain a warrant before obtaining an application user's IP address from the third-party application company (DE15:5; DE18).

The United States opposed the motion (DE17). It explained that its queries to Medialab and AT&T followed the well-established procedures of the Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2510 *et seq.*, which authorized the use of subpoenas to obtain subscriber information (DE17:3-4). Furthermore, a defendant in Solove's position lacked any legitimate expectation of privacy in his IP address or subscriber information because he voluntarily shared that information with third parties, i.e., Kik and AT&T (DE17:5-6 (citing *United States v. Beckett*, 369 F. App'x 52, 54-55 (11th Cir. 2010))).

The government also distinguished *Carpenter*, reasoning that *Carpenter* applied to "cell site data, which is used to target the location of an individual" and which conveyed "a detailed and comprehensive record of a person's movements" (DE17:7 (quoting *Carpenter*, 138 S. Ct. at 2217)). Multiple federal appellate courts agreed with the proposition that subscriber information fell within the third-party doctrine and, therefore, was subject to disclosure without a warrant (DE17:8-9).[2]

---

[2] The third-party doctrine provides that a person typically "has no legitimate

The district court denied Solove's motion (DE19). Addressing the core legal dispute, the court determined that "the key distinction between *Carpenter* and the present case is that here Defendant *affirmatively chose* to utilize the Kik application" (DE19:5 (emphasis in original)). In *Carpenter*, the use of a cell phone automatically logged the user's location data "without any action on his part" (*id.*). There was no way to avoid this form of tracking without foregoing the use of cell phones altogether, which the Supreme Court observed were "indispensable to participation in modern society" (*id.* (quoting *Carpenter*, 138 S. Ct. at 2220)). Here, in contrast, Solove "specifically chose to engage in activity on the Kik platform, a platform which certainly is not indispensable to participation in daily life" (*id.*).

In addition, the district judge noted that an IP address merely associates a device with a particular internet network and "does not itself convey any information about Defendant's location" (DE19:6). The court further relied upon this Court's unpublished decision in *Beckett* and other circuits' persuasive published decisions reaching the same conclusion: that law enforcement did not need a warrant to access subscriber information held by third parties (*id.*).

---

expectation of privacy in information he voluntarily turns over to third parties." *Carpenter*, 138 S. Ct. at 2216 (quoting *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979)).

Following that decision, Solove entered into a conditional plea agreement in which he agreed to plead guilty to Counts 1 through 5 but reserved the right to appeal the district court's denial of his motion to suppress (DE46:1).

The district court sentenced Solove to a total imprisonment term of 600 months, consisting of 360 months' imprisonment as to Counts 1 and 2, followed by a consecutive term of 240 months as to Counts 3, 4, and 5 (DE68).

This timely appeal followed (DE69).

## 2.   <u>Statement of the Facts</u>

Solove confirmed the accuracy of the following factual recitation at his change of plea hearing (DE50:27).

In February 2020, an undercover agent used the phone application Kik to correspond with a user named "RSolove99," who was Solove (DE50:18-19). Solove posted and distributed a picture of the exposed genitals of a prepubescent child—later identified as his own daughter, also known as MV1 (DE50:19). In subsequent communications, Solove shared two videos with the agent in which MV1 "used her hand to sexually manipulate Solove's erect penis" (*id.*).

The agent submitted an emergency request to Kik's parent company, which provided the IP addresses and user information for the RSolove99 account (DE50:20). AT&T responded to a follow-up emergency request and

identified the physical address associated with that IP address, which belonged to MV1's grandmother in Boca Raton, Florida (*id.*).

The authorities executed a search warrant at that residence, where Solove, MV1, the child's mother, and the child's grandmother and grandfather resided (*id.*). MV1 was 19 months old (DE50:21). The officers found her in the house "without clothes or a diaper on," and Emergency Medical Services transported her to a hospital (*id.*). MV1 "required surgery to stitch her vaginal and anal tears" (*id.*).

The search warrant yielded voluminous evidence of Solove's offenses, including two cellular phones that he used to access the Kik application (DE50:21-22). The phones contained "hundreds of images and at least eight videos" depicting the sexual abuse of children, "some under the age of five" (DE50:22, 26-27). During a post-*Miranda* interview, Solove admitted that the images he exchanged on Kik were of his daughter and that he had sent them to other users (*id.*). The investigation revealed that he had produced the shared material in January 2020 (*id.*).

In a separate investigation, which also began with observation of Solove's activities on Kik, a different law enforcement agent caught Solove distributing two videos of a teenage female, later identified as MV2 (DE50:22-23). One of Solove's seized cell phones contained communications between Solove and

MV2 between January and February 2020 (DE50:24). At least five of the videos that MV2 sent to Solove depicted her masturbating, and Solove sent her at least ten videos of himself doing the same (DE50:24-25). Their communications demonstrated that Solove expressly asked MV2 to produce those videos (DE50:25). He and MV2 engaged in explicit discussion of meeting and having sex; during those conversations, MV2 "stated her age and that she was in middle school" (*id.*). MV2 confirmed in an interview that she communicated with Solove and that he requested the masturbation videos that she sent to him (DE50:26). A subsequent federal search warrant for email and other communication accounts revealed that he exchanged "more than 18,000 messages" with her, much of which "concern[ed] Solove's production of child sexual abuse material of Minor Victim Two" (DE50:26).

**3.    Standards of Review**

In an appeal of the denial of a motion to suppress, this Court reviews findings of fact for clear error and the application of the law *de novo*. *United States v. Trader*, 981 F.3d 961, 966 (11th Cir. 2020).

**Summary of the Argument**

Binding precedent resolves the issue presented here in the government's favor.

In *United States v. Trader*, this Court held that individuals lack "a reasonable expectation of privacy in email addresses or Internet Protocol addresses" shared with third-party application companies and internet service providers. 981 F.3d at 967. Thus, authorities did not require a warrant to obtain that information from those third parties. *Trader* is indistinguishable from the present appeal. In that prosecution, much like this one, authorities discovered that a Kik user was distributing child pornography. They obtained the user's IP and email addresses through an emergency disclosure request to Kik and then obtained the subscriber records for that IP address from Comcast, the internet service provider. Trader sought, and failed, to suppress the evidence of his child sexual abuse for the exact same reasons raised in this prosecution.

In short, *Trader* is indistinguishable from this case—which Solove tacitly acknowledges in his brief. He contends only that this Court reached the wrong decision in *Trader*. Because *Trader* is a binding precedent, it dictates the outcome here. This Court should affirm the denial of Solove's motion to suppress and his well-deserved convictions.

Nor should this Court stay this case pending the resolution of the petition for writ of certiorari in *Trader*. As this Court has explained in the past, it is usually better to apply this Court's existing precedents while awaiting the

outcome of Supreme Court review. Deciding the case now will preserve Solove's ability to seek further review in the Supreme Court.

## Argument

### This Court's Decision in *United States v. Trader*, 981 F.3d 961 (11th Cir. 2020), Establishes that the District Court Correctly Denied Solove's Motion To Suppress.

Solove maintains that law enforcement needed search warrants to obtain his IP and email addresses from a cellular phone application company, Kik, and then the physical address associated with that IP address from the internet service provider AT&T. Binding precedent establishes that his position is meritless.

The facts of *United States v. Trader*, 981 F.3d 961, are strikingly similar to the circumstances presented in this appeal. Trader, like Solove, sexually abused his daughters and distributed videos of that reprehensible behavior on the Internet. *Id.* at 964. He also used messaging applications to send child pornography to other children and to solicit nude photographs and videos from them. *Id.* The authorities learned of his conduct when a parent of one of Trader's attempted victims discovered that he was attempting to induce that nine-year-old child to send him nude photographs. *Id.*

Law enforcement sent Kik—the same messaging company used here by Solove—an emergency disclosure request to learn the email address and IP

address associated with a user who turned out to be Trader. *Id.* Kik identified that information, and a follow-up request to Comcast yielded the physical address associated with that IP address. *Id.* The subscriber for that account was Shelly Trader, Trader's mother, and the address was her home. *Id.* at 964-65. Authorities obtained a search warrant for the residence, which yielded voluminous evidence of Trader's offenses. *See id.* at 965.

Trader contended that the acquisition of his email address and IP address from Kik, without a warrant, violated the Fourth Amendment. However, this Court rejected this claim because Trader lacked a reasonable expectation of privacy—and hence no protected Fourth Amendment interest—in that information. *See id.* at 967-68. "Ordinarily," under a doctrine known as "the third-party doctrine," "a person lacks a reasonable expectation of privacy in information he has voluntarily disclosed to a third party." *Id.* at 967 (citing *Smith v. Maryland*, 442 U.S. 735 (1979); *United States v. Miller*, 425 U.S. 435 (1976)). Taken at face value, this principle was fatal to Trader's claims. Law enforcement did not obtain his IP address through any physical intrusion into his property or even a virtual intrusion into his electronic devices. Instead, they asked a third party—Kik—for information in *Kik's* possession about the IP address associated with one of its voluntary users. *See id.* ("Trader affirmatively and voluntarily acted to download Kik . . . and to create an account on the app. He conveyed

10

his internet protocol address and email address to a third party when he logged into Kik. And he did so voluntarily, affirmatively acting to open the app and log in . . . .").

Trader, however, insisted that *Carpenter v. United States*, 138 S. Ct. 2206 (2018), dictated a different outcome. In *Carpenter*, "the Supreme Court held that the third-party doctrine does not apply to retrospective collection of cell-site location information for periods of at least seven days." *Trader*, 981 F.3d at 967. "Cell-site location information is the record created every time a cell phone transmits or receives data through a cell tower," which generates data that effectively traces a cell phone user's movements. *Id.* Importantly, "cell phone users do not share their cell-site location information voluntarily: Carrying a cell phone is 'indispensable to participation in modern society,' cell phones generate cell-site location information 'without any affirmative act on the part of the user,' and users have no way to stop data collection other than making the phone useless by disconnecting it from the network." *Id.* (quoting *Carpenter*, 138 S. Ct. at 2220).

This Court reasoned that "[t]he third-party doctrine controls here because *Carpenter*'s narrow exception applies only to some cell-site location information, not to ordinary business records like email addresses and internet protocol addresses." *Id.* at 967-68 (cleaned up). The panel found support in the *Carpenter*

majority's varied and repeated assurances that its holding applied only to a significant volume (at least seven days) of historical cell-site information, and the Supreme Court's explanation that it was not "address[ing] 'other business records that might incidentally reveal location information.'" *Id.* at 968 (quoting *Carpenter*, 138 S. Ct. at 2220). Furthermore, as this Court noted, "every circuit to consider this issue" both before and after *Carpenter* had held "that subscriber information disclosed during ordinary use of the internet, including internet protocol addresses and email addresses, falls within the third-party doctrine." *Id.* (collecting cases).

Finally, the panel rebutted Trader's counterarguments. Trader, like Solove here, asserted that an IP address was tantamount to location tracking. But "email addresses and internet protocol addresses are neither location records nor cell phone records" because "[n]either kind of information directly records an individual's location." *Id.* "Internet protocol addresses can be translated into location information only indirectly, by examining the internet business company's business records to determine the physical address where the network is registered." *Id.* "This kind of 'business record[] that might incidentally reveal location information' falls outside *Carpenter*'s narrow exception to the third-party doctrine." *Id.* at 968-69 (quoting *Carpenter*, 138 S. Ct. at 2220). Furthermore, contrary to Trader's attempt to characterize these

records as cell phone data—and therefore subject to *Carpenter*'s rule—"[n]either kind of information is more than incidentally associated with cell phones" because IP addresses "are a feature of every electronic device that connects to the internet." *Id.* at 969.

Based on *Trader*, this Court should affirm Solove's convictions and reject his baseless Fourth Amendment challenge, which rests on the same arguments and authorities raised in that earlier appeal. Indeed, Solove tacitly acknowledges that *Trader* is controlling here. Rather than distinguishing that decision, which he cannot do, he claims that decision "was in error" (Br.:7).

Regardless of Solove's view of the merits of that opinion, the prior panel precedent rule bars a future panel from revisiting an earlier decision "unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court." *United States v. Bazantes*, 978 F.3d 1227, 1243-44 (11th Cir. 2020) (quoting *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001)). There is no "exception to the prior panel precedent rule based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time." *Smith*, 236 F.3d at 1303; *see also United States v. Steele*, 147 F.3d 1316, 1317-18 (11th Cir. 1998) (en banc) ("Under our prior precedent rule, a panel cannot overrule a prior one's holding even though convinced it is wrong."). Even if a party presents new arguments or theories not argued in the

earlier case, "a prior panel precedent cannot be circumvented or ignored on the basis of arguments not made to or considered by the prior panel." *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1234 (11th Cir. 2006).[3]

In passing, Solove notes that Trader has filed a petition for a writ of certiorari in that earlier appeal (Br.:9). He suggests that this Court could stay this appeal while awaiting the Supreme Court's decision granting or denying certiorari in *Trader* (Br.:18). This Court has rejected similar invitations in the past—even when the high Court already has granted certiorari on a particular issue.

The better practice is to apply *Trader* and affirm Solove's convictions, which respects this Court's existing precedent while still leaving Solove with

---

[3] In any event, Trader asserted the exact same arguments—that IP addresses reveal location information; that they constitute an invasion of the home, which has heightened protection under the Fourth Amendment; and that the *Carpenter* exception applies—which Solove does here. *Compare* Appellant's Initial Brief, *United States v. Trader*, Case No. 17-15611-BB, 2018 WL 4470243, at *14-21 (11th Cir. Sept. 10, 2018), *with* (Br.:8-19). Large portions of the briefs track each other verbatim. *Compare, e.g.*, Appellant's Initial Brief, *United States v. Trader*, 2018 WL 4470243, at *18 ("By monitoring when Mr. Trader signed onto KiK through the modem in his home, law enforcement was conducting its search within the confines of his home without a warrant. Such a search is more intrusive than CSLI gathered from public locations."), *with* (Br.:10 ("By monitoring when Mr. Solove signed onto KiK through the modem in his home, law enforcement was conducting its search within the confines of his home without a warrant. Such a search is more intrusive than CSLI gathered from public locations.")).

recourse to the Supreme Court. As this Court has explained, "[a] grant of certiorari . . . is not a decision and does not affect our obligation, or the obligation of district courts in this circuit, to follow prior decisions of this Court." *Rutherford v. Crosby*, 438 F.3d 1087, 1089 (11th Cir.), *vacated by Rutherford v. McDonough*, 126 S. Ct. 2915 (2006). "[A]ny implications to be drawn [from the grant of certiorari in another case] may be discerned by application to the Supreme Court." *Thomas v. Wainwright*, 788 F.2d 684, 689 (11th Cir. 1986) (internal quotation marks omitted). When this Court affirms Solove's convictions, he can file a certiorari petition of his own; and, if the Supreme Court takes up *Trader* and rules in the defendant's favor, Solove would receive a GVR (grant, vacate, and remand) order returning his appeal to this Court for further consideration. *See Lawrence v. Chater*, 516 U.S. 163, 165-67 (1996) (explaining the Court's customary practice of GVRing cases "in light of a wide range of developments, including our own decisions" or other significant intervening legal changes).

Notably, in the decisions cited above such as *Rutherford*, this Court discussed the prospect of staying proceedings pending a Supreme Court decision in a matter where it already had granted certiorari. Here, Solove asks this Court to take an even more unusual course of action and to stay its decision while awaiting the outcome of Trader's certiorari petition. That suggestion is

unworkable and would have damaging consequences for the efficient administration of justice. It would effectively transform any binding precedent of this Court into a tentative ruling, which becomes inoperative any time another party asks for Supreme Court review of the issue resolved in that opinion. After all, even if Trader's certiorari petition fails, another defendant in another circuit or in a later case soon will file a certiorari petition concerning this same issue. This Court cannot put its precedent on hold every time the underlying legal question is the subject of a certiorari petition—especially given the frequency with which defendants seek Supreme Court determination of certain recurring issues, and the infrequency with which the high Court grants review.

## Conclusion

For the foregoing reasons, this Court should affirm Solove's convictions.

Respectfully submitted,

Juan Antonio Gonzalez
Acting United States Attorney

By:    s/ *Jason Wu*                           
Jason Wu
Assistant United States Attorney
99 N.E. 4th Street, #500
Miami, FL 33132
(305) 961-9226
Jason.Wu@usdoj.gov

Emily M. Smachetti
Chief, Appellate Division

Lisa Tobin Rubio
Deputy Chief, Appellate Division

Of Counsel

## Certificate of Compliance

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-based typeface using Microsoft Word 2016, 14-point Calisto MT.

## Certificate of Service

I hereby certify that seven copies of the foregoing Brief for the United States were mailed to the Court of Appeals via Federal Express this 18th day of August 2021, and that, on the same day, the foregoing brief was filed using CM/ECF and served via CM/ECF on all counsel of record.

s/ *Jason Wu*
Jason Wu
Assistant United States Attorney

*ms*